**NATIONAL CENTER ON
SEXUAL EXPLOITATION**
Benjamin W. Bull*
Peter A. Gentala*
Danielle Bianculli Pinter*
Christen M. Price*
1201 F ST NW, Suite 200
Washington, D.C., 20004
Telephone: (202) 393-7245
lawcenter@ncose.com

**THE HABA LAW FIRM, P.A.**
Lisa D. Haba*
Adam A. Haba*
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com
adamhaba@habalaw.com

**THE MATIASIC FIRM, P.C.**
Paul A. Matiasic (SBN 226448)
Hannah E. Mohr (SBN 294193)
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
matiasic@mjlawoffice.com

*Pro Hac Vice Application Pending*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, A MINOR CHILD, BY AND THROUGH HIS NEXT FRIEND JANE DOE,<br><br>       Plaintiff,<br><br>vs.<br><br>TWITTER, INC.,<br><br>       Defendant. | **Case No.: 3:21-cv-00485**<br><br>**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER GRANTING MOTION** |

Jane Doe is the parent and legal guardian of Plaintiff John Doe ("Plaintiff" or "John Doe"), a minor, and in all capacities relevant to this case, is serving as his Next Friend in order to bring this action.

Plaintiff, by and through his undersigned counsel, respectfully request that this Court allow Plaintiff to bring this action anonymously and grant a protective order, pursuant to Federal

Rules of Civil Procedure 26(c), to ensure that Defendant keeps Plaintiff's identity confidential throughout the pendency of the lawsuit and thereafter.  The arguments in support of this motion are set out in the Memorandum in Support incorporated herein by this reference.

**MEMORANDUM IN SUPPORT**

## I.    SUMMARY OF THE FACTS

Plaintiff, is a survivor of sex trafficking and is bringing an action for damages against Defendant under the federal Trafficking Victims' Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591 and 1595, Failure to Report Child Sexual Abuse Material, 18 U.S.C. § 2258A, Receipt and Distribution of Child Pornography, 18 U.S.C. §§ 2252A, and related state law claims.  Plaintiff seeks a protective order and leave to proceed anonymously because the disclosure of his identity on the public docket will cause him harm that outweighs the presumption of open judicial proceedings under these special circumstances.  Likewise, Jane Doe additionally seeks a protective order and leave to proceed anonymously because the disclosure of her identity, as Plaintiff's mother, would compromise the anonymity of Plaintiff's identity.

Plaintiff is a minor. He is a student in high school. Plaintiff was groomed, lured, enticed, solicited and recruited for sex trafficking through online communications when he was 13 years old. Plaintiff eventually cut off communication with the person or persons ("Traffickers") who were extorting him, but subsequently child sex abuse material ("CSAM") depicting Plaintiff was disseminated on Twitter, where it was viewed by students in John Doe's school. As a result, he faced bullying, harassment, and became suicidal. When Plaintiff alerted Twitter to the CSAM and provided proof of John Doe's age, Twitter refused to remove the illegal material and instead continued to promote and profit from its presence and distribution on its platform. Only after

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED
ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER
GRANTING MOTION

Twitter was contacted by a federal agent did it remove the CSAM depicting Plaintiff John Doe. By that time, it had been viewed over 167,000 times. *See* Complaint, Doc. No. 1 at ¶¶ 64-101.

The graphic nature of the CSAM depicting Plaintiff, as alleged herein, is particularly degrading and sensitive. Requiring Plaintiff to disclose his identity in public court records, in order to assert his claims against Twitter for distributing and profiting from the CSAM depicting John Doe, will only serve to further re-victimize Plaintiff and compound the harm for which he seeks redress through this litigation.

Plaintiff agrees to proceed as "John Doe," and does not object to providing his true, full name to Defendant at the appropriate time in the litigation, pursuant to a protective order barring further dissemination of that information and requiring all documents containing his true name to be filed under seal. Accordingly, granting Plaintiff's motion will in no way prejudice the Defendant. Ultimately, Plaintiff's substantial privacy interests regarding this deeply personal and degrading violation outweigh the public's interest in knowing their identities, as there is a greater public interest in protecting the interests of survivors of commercial sex trafficking and ensuring that other similarly situated victims will not be deterred from reporting crimes and seeking redress.

## II.   ARGUMENT

There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980). "The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public

- 3 -

can still attend and observe a trial while the Plaintiff proceeds under a pseudonym, thus

preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is

public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

The Rules of Federal Procedure and of this Court allow for Plaintiff to proceed

pseudonymously.[1] Because John Doe is a minor, Rule 5.2 requires that filings must only include

his initials and not his name. Fed. R. Civ. Pro. 5.2. Additionally, although Rule 10(a) requires

the title of the complaint to name all the parties, courts have allowed litigation under a

pseudonym in special circumstances, "when the party's need for anonymity outweighs prejudice

to the opposing party and the public's interest in knowing the party's identity." *Does I thru XXIII*

*v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). *See also Sealed Plaintiff v.*

*Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008); *United States v. Doe (Doe II),* 488 F.3d

1154, 1156 n. 1 (9th Cir. 2007). In addressing a request by plaintiffs to proceed anonymously,

this court has previously "balance[d] the competing interests involved by weighing the party's

need for anonymity against the general presumption that parties' identities be available to the

public and the likelihood of prejudice to the opposing party." *Advanced Textile Corp.* at 1067;

*Boggs v. United States*, 143 Fed. Cl. 508, 511 (2019).

Applying the balancing test, the Ninth Circuit has set forth a list of three scenarios in

which courts may permit a plaintiff to proceed pseudonymously: (1) when there is a risk of

retaliatory physical or mental harm, *Advanced Textile Corp.* 214 F.3d at 1068 *citing Stegall,* 653

---

[1] Additionally, Plaintiff bring this action in part under Section 1708.85 of the California Civil
Code. Paragraph (f) of that Section allows for Plaintiffs to proceed using a pseudonym.

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED
ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER
GRANTING MOTION

F.2d at 186, *Southern Methodist Univ.,* 599 F.2d 707, 713 (5th Cir. 1979); (2) when anonymity is needed to preserve privacy in a matter of sensitive and highly personal nature, *id.* (*citing James,* 6 F.3d at 238); and (3) when the anonymous party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* (*citing Stegall,* 653 F.2d at 186).

In this case, the facts strongly weigh in favor of Plaintiff's motion to file this case using a pseudonym. Accordingly, the motion should be granted.

### A. Disclosure of Plaintiff's identity would reveal information that is of a highly sensitive and personal nature and cause severe psychological harm and undue embarrassment to Plaintiff.

#### i. Disclosure of Plaintiff's identity would reveal information that is of a highly sensitive and personal nature.

Plaintiff has a substantial privacy right in guarding the sensitive and highly personal information he must disclose in this sex trafficking litigation. Evaluating "the issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant … [and] privacy interests are recognized in particular circumstances to be in the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

In evaluating what information constitutes that of a highly sensitive and protected nature, it is well established that victims of rape, human trafficking, and sexual battery have a strong interest in protecting their identities, so that other victims will not be deterred from reporting such crimes. *See, e.g., Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) (fictitious names are allowed when necessary to protect the privacy of rape victims, and other particularly vulnerable parties or witnesses); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1054 (N.D. Cal. 2020) (cases involving sexual abuse or human trafficking

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER GRANTING MOTION

appropriately favor allowing a plaintiff to proceed using a pseudonym, as opposed to a video-game habit); *Jane Doe v. Uber Technologies, Inc*., 17-CV-00950-WHO, Doc. No. 27 (N.D. Cal. Oct. 15, 2015) (the right for privacy for sexual assault, physical assault, and human trafficking survivors overcomes the right for the public interest to know their identities); *Doe v. Penzato,* No. CV10-5154 MEJ (N.D. Cal. 2011) (holding that the highly personal and sensitive nature of being a human trafficking and sexual battery survivor allowed the plaintiff to proceed anonymously); *Fla. Abolitionist, Inc. v. Backpage.com LLC,* No. 17 Civ. 218, Doc. 46 at 2-4 (M.D. Fla. 2017) (multiple sex trafficking survivors' right to privacy, especially when some were minors, overcomes the right for the public interest to know their identities).  Additionally, a parent appearing as next friend of a minor plaintiff may be granted anonymity to protect the minor's identity.  *See A.B. ex rel. V.S. v. Meyer*, 2015 WL 4545872 at *1 (N.D. Ind. July 28, 2015) (granting motion to proceed anonymously for mother suing on behalf of child).

At a young age, Plaintiff was targeted as part of a sex trafficking venture. As a result of that sex trafficking venture, CSAM depicting Plaintiff was distributed broadly on Twitter and viewed by students at Plaintiff's high school.  Given that John Doe is not only a minor, but a victim of sex trafficking and is featured in illegal CSAM, disclosure of his identity will reveal information that is of a highly sensitive and personal nature, which weighs in favor of allowing Plaintiff to proceed anonymously.

> ii. **As a survivor of sex trafficking, Plaintiff is particularly vulnerable to the severe harm that would be caused by the disclosure of his identity.**

If Plaintiff is publicly identified, it will further exacerbate the ongoing psychological harm and trauma Plaintiff already suffers.  Human trafficking attacks its victims' dignity and value as a person; it erases the victim's choice and makes the victim doubt their own self-

- 6 -
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED
ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER
GRANTING MOTION

worth.[2] . This is compounded by the very public nature of widespread pornography distribution, particularly in this case, where over 167,000 people viewed the CSAM of John Doe and 2,223 retweeted it, creating exponential viewership.  *See* Complaint, Doc. No. 1 at ¶ 95.

There is a psychological vulnerability and harm to even the strongest of sex trafficking survivors that is easily exacerbated.  Survivors of sex trafficking who have been able to thrive after their ordeal and speak openly about the offenses they were subject to, explain that it takes a great deal of incredibly difficult work to reach that point.[3]  Even at the most advanced stages of healing, many survivors are not willing to go public with their stories.  Survivors struggle with "re-living the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by emotions of shame and guilt, thinking that they are living in hiding and unable to let themselves be truly seen, and experiencing fleeting feelings of dignity and respect."[4]

Plaintiff John Doe became suicidal during the time the CSAM depicting him was being distributed on Twitter.  *Id.* at ¶ 95.  He has since tried to regain the normal life he was deprived of due to Twitter's distribution and profiting from the CSAM depicting him.  Thrusting Plaintiff into the public spotlight will encourage media attention and questions focusing on him

---

[2] *See*, United Nations: Office on Drugs and Crime, *Breaking the Silence on Human Trafficking*, https://www.unodc.org/unodc/en/frontpage/breaking-the-silence-on-human-trafficking.html.

[3] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5 (This guide is written by a well-published survivor of sex trafficking and is attached hereto as "Exhibit 1.").

[4] *Id* at 3.

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER GRANTING MOTION

personally, will cause severe embarrassment to Plaintiff, will cause severe psychological harm and can be catastrophic to Plaintiff's recovery.

Additionally, victims of sex trafficking and sexual abuse are also uniquely vulnerable in this current age of technology, where every thought, whether accurate or inaccurate, gets published online in social media.  *See Cabrera*, 307 F.R.D. at *7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case.").  Sex traffickers, like those who initially recruited Plaintiff, are experts in psychological manipulation; they use degrading and dehumanizing tactics to keep their victims enslaved and in fear.  To certain segments of society, the victims are sometimes viewed as "at fault" for what happened to them.  Therefore, to subject Plaintiffs to such unsolicited feedback online through public disclosure of their identities—when what he seeks from this litigation is to come a step closer to being made whole again—will perpetuate and exacerbate the same harm that Plaintiff has already suffered.  Given the above, and that identification of Jane Doe would likely enable the public to identify John Doe, identification of both Plaintiff and his mother, Jane Doe, will likely cause additional severe mental and psychological harm, which weighs in favor of allowing Plaintiff to proceed under pseudonyms.

### B.  The public interest in the litigation is furthered by allowing Plaintiff to proceed anonymously.

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical."  *Stegall*, 653 F. 2d 180 at 185.  "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by

public presence at a trial is not lost when one party's cause is pursued under a fictitious name."
*Richmond Newspapers, Inc.*, 448 U.S. at 599-600.

The public interest is not harmed by allowing Plaintiff to proceed anonymously. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording a victimized Plaintiff, such as John Doe, their day in court without the defendants deterring them from pursuing their claims by forcing the Plaintiff's public identification.

One of the main deterrents to reporting sex crimes and crimes of human trafficking is the survivor's fear that his or her identity will become known; and, as such, the survivor's individual privacy right overcomes the public interest of knowing the survivor's identity. Society is better served by incentivizing victims of these horrific crimes to come forward, instead of enabling the perpetrator to remain unaccountable and continue to commit such crimes. *Blue Cross,* 112 F.3d. at 872; *Advanced Textile Corp.,* 214 F.3d at 1072-73.

The public has an interest in seeing cases tried on their merits, especially civil rights cases. *Advanced Textile Corp.,* 214 F.3d at 1073. In *Advanced Textile Corp.,* the Plaintiff filed claims as a class action under the Fair Labor Standards Act, based on conditions in a garment factory. The Plaintiff proceeded using pseudonyms due to the fear of severe retaliation by the Chinese government, including physical violence, deportation to China, arrest, and imprisonment. In determining whether the Plaintiff should have been allowed to proceed under pseudonyms, the Ninth Circuit evaluated several factors, including whether granting the request was in the public interest. *Id.* "[A]s the Supreme Court has recognized, fear of . . . reprisals will frequently chill [a person's] willingness to challenge . . . violations of their rights." *Id., citing Mitchell v. De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Measures that may have a chilling

- 9 -

effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id.*  In such cases, permitting the plaintiff to use pseudonyms "will serve the public's interest in this lawsuit by enabling it to go forward." *Id.*

Compelling the identification of Plaintiff will deter other sex trafficking litigation. Denying victims of sex trafficking anonymity in the appropriate circumstances—such as here— will discourage them from pursuing legal redress for their abuse, and only further allow Defendant and others participating in, benefitting, or profiting from sex trafficking to continue without detection or interference by the law.  It is in society's best interest to allow Plaintiff to proceed anonymously.

### C. Defendant will not be prejudiced by Plaintiff bringing his claim using a pseudonym because Defendants will know the names of Plaintiff, subject to a protective order.

As a general rule, courts nationwide have determined that while a plaintiff's identity may be protected from the general public, it will prejudice the defendant to not know whom to investigate and will frustrate the defendant's ability to participate meaningfully in discovery without knowing the identity of the accuser(s).  It is well established that when balancing the different interests involved in cases such as these, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Advanced Textile Corp.,* 214 F.3d at 1069.

Anonymity in this case, would be limited to the pseudonym that Plaintiff uses, not to who the Plaintiff is in every other respect. *James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993).  As previously mentioned, Plaintiff is willing to provide his full name to Defendant, subject to a protective order that prohibits disclosure to any third parties.  Plaintiff also seeks redaction of his

- 10 -

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER GRANTING MOTION

personally identifying information from the public docket and assurances that Defendant will not use or publish Plaintiff's identity pursuant to the protective order. Furthermore, there is no alternative mechanism for protecting the identity of Plaintiff. With this concession in place, Defendant will not be prejudiced if Plaintiff's motion is granted and, therefore, this factor weighs in favor of allowing Plaintiff to proceed under a pseudonym.

**III.     CONCLUSION**

The balancing test clearly demonstrates that Plaintiff's need for anonymity outweighs the countervailing public interest of disclosure.  Further, there is little to no prejudice to Defendant.

For the foregoing reasons, the Court should grant Plaintiff's motion to proceed in this litigation under the pseudonym of John Doe and allow his parent and next friend to appear as Jane Doe. The Court should further order that all materials filed in this action, all judgments, and any other documents relating to this action shall refer to Plaintiff as John Doe, and his parent/next friend as Jane Doe, without additional identifying information.   Plaintiff further requests that this Court order that any release or deliberate disclosure of Plaintiff's identity by Defendant, to anyone outside of the terms ordered in the protective order, be sanctionable and accountable to the fullest extent of the law.

Respectfully submitted,

Dated: January 20, 2021          By:        /s/ *Paul A. Matiasic*
                                                      Paul A. Matiasic
                                                      Hannah E. Mohr
                                                      **THE MATIASIC FIRM, P.C.**
                                                      4 Embarcadero Center, Suite 1400
                                                      San Francisco, CA 94111
                                                      Telephone: (415) 675-1089
                                                      *matiasic@mjlawoffice.com*

- 11 -
PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED
ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER
GRANTING MOTION

Lisa D. Haba*
Adam A. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
*lisahaba@habalaw.com*
*adamhaba@habalaw.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
**NATIONAL CENTER ON SEXUAL
EXPLOITATION**
440 First Street, NW, Suite 840
Washington, D.C. 20001
Telephone:  (352) 266-7989
*lawcenter@ncose.com*

*Attorneys for Plaintiff*

**Pro Hac Vice Application Pending*

PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED
ANONYMOUSLY WITH MEMORANDUM IN SUPPORT; [PROPOSED] ORDER
GRANTING MOTION



**EXHIBIT 1**

As I conduct anti-human trafficking work, I look back on my own recovery from sex trafficking and I notice that advocates and victims/survivors may not quite understand what it takes to recover, as well as, how long it takes to truly be set free. I'd like to address both advocates and victims/survivors, to help them better understand each other. Ninety percent of the work that was done to set them free came from the victim/survivor. The other ten percent came from a community of people who were willing to do their part. They were used as commodities to increase their traffickers' and/or employers' income and status. They must not be used as commodities to promote an organization's status or increase its income. Value what they have to offer because others can learn from their valuable insight.

*To Organizers/Advocates:* Understanding these four stages will give you an idea of what you need to consider before requesting a human trafficking (HT) victim/survivor to tell their story at your event or organization.

Some key items to remember are below:

■ Revisiting their past is not easy, especially at first, but empowering them to tell their stories is key to setting them free.

■ Telling their stories for the first time must be done with a qualified professional.

■ Telling their stories can be healing for them, however, not handled with care, can re-traumatize them.

■ Discussions with groups is done as a service to educate and also as a way to heal from their traumas.

■ If they are in the beginning stages of recovery, revisiting their past can trigger them and cause them to regress, back into a dark place and/or relapse back into silence. If this occurs, it may require counseling from a qualified therapist before they are ready to tell their story to groups (if ever).

■ If they are in advanced stages of recovery, revisiting their past evokes feelings of great pride for overcoming everything they've been through, and feelings of gratefulness for surviving it all.

■ The more they tell their stories, (whether privately or publicly) the easier it becomes. Eventually it becomes only a story to them, one that doesn't haunt them anymore.

■ Keep in mind that despite them reaching advanced stages in recovery, they may not be willing to go public with their story. Follow their lead and don't pressure them.

© 2017 All rights reserved, Ruth Rondon.

1

14



## The more victims/survivors we empower to break the silence, the more perpetrators will be sent running.

- ■ They must be given space to decipher what feels safe to them, regarding their anonymity.
- ■ It is very important that if you intend to record or photograph them, you need their full consent.
- ■ They need to know if the media was invited to the event and if it's open to the public. Include them in any emails and notices that go out announcing the event.
- ■ Respect their time and efforts.
- ■ Don't take credit away from them by introducing them as someone who has been "rescued" or "saved" from human trafficking. You can save a victim from a dangerous situation, but no one can save or rescue anyone from human trafficking. Understand it is very offensive and demeaning to victims/survivors when others claim credit for all the work THEY did to overcome.
- ■ They should be treated like any other professional speaker and offered a stipend to show respect for their time. They should be reimbursed for expenses.
- ■ Even though some may be willing to donate their time, don't expect them to work for free. Let them make that decision. They worked for free while being trafficked. They didn't have the freedom to make decisions or use their own judgment. We need to do the opposite of that.
- ■ Give them the freedom they need and deserve to voice their concerns and use their own judgment. Answer all of their questions.
- ■ Give them the time they need to prepare for the event and understand that they have the freedom, and the right, to change their minds, even at the last minute.

To *Victims/Survivors:* This article may help you recognize your own victimization, signaling the work you need to do to recover and also what you can look forward to at the end of the tunnel. If you think you may be a victim/survivor and/or if this article brings up topics or concerns, bring this to your counselor/therapist to get the necessary conversations started.

Some key items to remember are below:

- ■ Before you accept an invitation to tell your story at an event or when you sit down with a counselor/therapist, remember people will not always be empathetic, including trained professionals
- ■ Human trafficking is a dark subject and hearing the stories can evoke personal emotions in your listeners. However, empathy does not come naturally, it's acquired. If some can't empathize, it can feel hurtful, but don't take it personally. Understand it's their lack of training or capacity that keeps them from being able to respond to you in the needed way. It has nothing to do with you. It has everything to do with them.
- ■ When considering opening up publicly, make sure you are strong enough to handle it if some persons cannot relate to your struggles. Make sure you have the support you need before, during, and after your speech.

© 2017 All rights reserved, Ruth Rondon.

2



- Speaking out about your experience is only one way you can help fight human trafficking. If you don't want to tell your story to groups, there are other ways you can offer your gifts and insights.
- Don't let others pressure you into doing something you don't feel comfortable doing. You can give back by volunteering as a mentor, organizer (of events), advocate for victims/survivors and/or help with clerical work at human trafficking organizations.

**1.** *Victim/Outcast*

First, they are victims and then they become outcasts. They were probably abused/and or neglected as children which made them easy prey for traffickers and were recruited into sex trafficking. They may have never been abused but were recruited by trusting a boyfriend, husband or a potential employer. They are subjected to on-going trauma, which may include one, some, or all of the following below.

These unaddressed traumas cause any victim to be fearful and to hang their heads in shame. They live in survival mode.

- physical, psychological and emotional abuse
- beatings
- degradation
- humiliation
- torture
- rapes
- gang rapes
- their healthcare needs are probably going unmet

While being trafficked, they navigate through life with the victim mindset. They have blinders on and they can't see that they're victims; all the while their trafficker is exploiting and abusing them. Their reality is distorted and they believe the empty promises given to them by their trafficker. They become dependent on their trafficker as their protector, provider and/or employer; all the while they're looking forward to a false, bright future. They find excuses for why their trafficker beats them and belittles them as a way to deny the abuse and to remain hopeful about their future. They become accustomed to managing their traffickers' moods and emotions to avoid beatings and/or retaliation. They don't see this as out of the ordinary and they justify their traffickers' bad behavior. They believe in their trafficker and they do everything their trafficker tells them to do. They cooperate with the trafficker when he/she isolates them from family and resources. They don't know how to stand up for themselves and many times they don't see the need to. They remain loyal to their trafficker. They have a disproportionate need for approval from their abusers because to them their approvals mean "they are safe for now". They believe their trafficker will protect them from the police and/or immigration. Traffickers threaten to call police or immigration if their victims don't comply with their demands or "keep them happy". Victims may acquire a criminal record as a result of trusting their trafficker and/or trying to keep him/her happy. They may become drug addicted and are supplied drugs by their

© 2017 All rights reserved, Ruth Rondon.

3



trafficker (to keep them more controllable). They may have dropped out of school. They believe they don't fit in anywhere which sets them apart from society and they suffer from relational poverty. They have no sense of belonging.

To family and society, they are a disgrace. Some are even trafficked by their own families. They are slut-shamed and outcast. The strong stigma keeps them in their place. They are victimized by authority figures and come to believe there is no hope for them. They've come to know, all too well, the potential corruption and abuse of power that exists in every profession. This adds to their dependency on their trafficker and contributes to their relational poverty. They may come to view those with degrees and titles as better than them and more believable. They learn to trust no one except their trafficker. They live on the margins of society and their addiction becomes a coping mechanism.

They haven't yet considered escaping from their trafficking situation or their abusers, nor have they considered asking for help because they believe that staying with their trafficker is the safest choice they have.

**2.** *Survivor*

In this stage, they've already asked for help because they believe there may be a chance to escape. They are beginning to doubt their trafficker's seemingly good intentions; that he/she is not concerned about their future and welfare. They are living in a safe place. They are no longer being victimized or traumatized. They may be experiencing withdrawals but are working on overcoming their addiction. They have a circle of supporters surrounding them but in their minds, they are still just surviving because they may be struggling with the following::

- ■ Reluctant to fall asleep because of nightmares
- ■ Relive the traumas over and over through flashbacks
- ■ Intrusive and negative thoughts are overwhelming to them
- ■ Shame, guilt, and fear overwhelm them
- ■ They don't understand their own thoughts and feelings
- ■ May feel like they are "living in hiding" and they won't allow themselves to "truly be seen"
- ■ They have severe abandonment and trust issues  are present and need to be addressed
- ■ Built up anger is confusing to them
- ■ Experience fleeting feelings of dignity and respect and they don't quite know what to make of it because they may never have felt dignified or respected before and/or they feel they don't deserve it
- ■ Minds are spinning with questions about their lives and their mere existence

BUT now, at least they are looking for work or going to school, or both, and they're safe. Medical and legal needs are being addressed. They are learning life skills - how to budget money, balance a checkbook, cook and/or drive. Perhaps they are perfecting their English. They may be continuing their education in school.

© 2017 All rights reserved, Ruth Rondon.

4

17



From time to time they're tempted to go back to their trafficker and "the life", to what's familiar, because they doubt their abilities to make it in society. They have thoughts of using drugs again to escape the flashbacks, to help them sleep, or to just feel better. They receive counseling and start the process of getting acquainted. But they must feel safe with him/her, before counseling will be beneficial. They may need to find another counselor and start the getting-acquainted-process all over again, several times because they didn't "click" with the previous counselor. They have to "click" before it will be a fruitful relationship. Finding just the right counselor takes time. Victims and survivors have a hard time recognizing a mutually satisfying relationship even after they've escaped "the life". They are still vulnerable to falling prey to someone who doesn't have their best interests in mind.

Also, it's a reality that some counselors:

■ find it too difficult to resist the temptation and they take advantage of their clients' naivety, vulnerabilities and a disproportionate need for approval and they re-exploit them

■ They don't understand what sex trafficking victims need therapeutically and they unknowingly re-exploit them

■ Pass judgement on them

## Finding just the right counselor is the hardest part of recovering from sex trafficking

**3.** *Thriver*

Work is secured and they are taxpayers and contributing members of society. They have their own place and are living more independently and out of survival mode. They look forward to a promising future and continuing their education and/or have graduated. They are now a subordinate at work and learning the dynamics of, and the difference between, professional and personal relationships. They know their traffickers' true, malicious intentions. They're determined to never go back to "the life" or their trafficker.

Through counseling they're doing the difficult, inner work to understand:

■ How they fell prey to traffickers

■ What fears are holding them back in life and where they stem from

■ What their children need from them; how to be a good parent

■ The push and pull dynamics between them and their trafficker, boss, co-workers, family, and friends What it took for them to escape and survive trafficking

■ Why they survived

■ That some consequences of their past are permanent

■ They are facing their fears with the help of their counselor and they are processing their traumas

■ Their childhood traumas

■ Their adult traumas

© 2017 All rights reserved, Ruth Rondon.

5

18



During this phase, they are really learning a whole new way of communicating - a whole new language. Trauma escapes language and causes memory loss; so they need help in finding the words to express themselves so they can tell their stories and also so they can process their traumas. Finding the right words helps them turn the flashbacks (triggers of bad memories) into just memories that don't haunt them anymore, so they can move forward.

They are learning how to:

- Be patient with themselves and others
- Label their emotions
- Go within, listen to their gut feelings and that voice inside of them
- Express themselves in a respectful way
- Set boundaries without being too aggressive or too passive

- Recognize and mend past, healthy relationships
- Maintain healthy, present relationship
- Develop new, healthy relationships
- Recognize and let go of unhealthy relationships
- stand up for themselves and recognize when it's necessary

### Victims of human trafficking carry an untold story inside them that even they can't make sense of or put into words. Articulating their stories occurs only in advanced stages of recovery.

**4.** *Victor/ Leader*

The blinders are off and they've reached "the other side". They are leaders in their own lives. They've faced their fears, processed their traumas and came to understand and accept themselves and others. They know they've been victimized and they understand how they fell prey. They've acquired good communication skills and they know how to set boundaries. They are careful whom they allow into their lives and they navigate through life with their eyes and ears open. They don't take people only at face value. They look beneath the surface of good and bad behavior, positive and negative labels, prestigious titles and degrees. They are no longer easy prey. Others have forgiven them for their wrongs and they've come to forgive themselves and others. They take responsibility for their past choices. The shame has been released and they walk with their heads held high. They're excited about life. They are embracing their survival and are grateful they survived everything they've been through. They want to pass what they've learned on to others. They want to make a difference in the lives of others.

They don't have to be leaders in anti-human trafficking work, to be viewed as leaders. They can be leaders in many ways; such as mothers/fathers leading their children; a leadership position at work; start their own business; and/or be leaders in sales of a product or service.

© 2017 All rights reserved, Ruth Rondon.                                                                                          6



They've discovered their potential and they know what their talents are. They know where their strengths and weaknesses lie and they feel comfortable in their own skin. They live boldly and with less fear. They face life's crises with discernment and by reaching out to their supporters and resources. They aren't afraid to ask for help when they know they need it. They understand that crises and hard times are only temporary, just as much as good times are. They look at the big picture and they see hope in everything they set out to accomplish or overcome.

They may still have bad dreams, but they wake up knowing they are safe. The bad memories that used to trigger them into becoming fearful again, are now just memories that no longer haunt them. They know what they like and don't like and they have found the words to accurately express it.

The fear of public speaking (stage fright) subsides only with experience. During this stage, they may have already had public speaking training and/or experience.

*I was stuck in stage three for over 20 years. Now, I stay in stage four most of the time, but I toggle back and forth from stages 3-4 because I am still learning.*

Keep in mind:

**Prevention is going to be a lot easier than intervention.**
Once a victim gets lost in the life they don't see themselves as victims, so they don't ask for help; and they have to ask for help before they will be open to anything positive. Plus, once lost in the life, there's already a lot of psychology damage done. It takes a long time to heal from the traumas they've been subjected to.

### No short-term individual intervention will save a victim from sex trafficking. A short-term prevention measure CAN prevent a victim from falling prey.

- We do not all fall prey to traffickers in the same way nor do we escape in the same way. All of our stories are unique.
- For many victims, experience with corrupt authority fosters mistrust of anyone who inquires about their trafficking situation.
- Some (in all stages of recovery) may have court cases pending and are not at liberty to talk about them and therefore cannot tell the whole story
- Some may have their legal issues and trigger/trauma issues addressed and can now tell the whole story and even change the way their story ends.

© 2017 All rights reserved, Ruth Rondon.



**About the Author**

Ruth Rondon is a member of the Michigan Human Trafficking Health Advisory Board appointed by Governor Rick Snyder in 2016. She wrote her autobiography, The Realities of Human Trafficking: From the Inside Out to Freedom. and is a human trafficking subject matter expert and professional speaker.



Ms. Rondon has co-authored two cutting-edge Human Trafficking eLearning programs, that are trauma-informed and victim-centered, based in part on Ruth's personal experience (it covers sex and labor trafficking). The curriculum provides 20 micro-learning lessons that include a victim story, lesson (based on research), and 1-2 actions to take that day. The Learning Aid, which is unique to each program, provides ways to interact with and identify victims. If you have 3 minutes, check out one of the lessons:

Human Trafficking Awareness for First Responders/Safety Officers (Law Enforcement): W.A.R. on Slavery
Human Trafficking Awareness for Healthcare: W.A.R. on Slavery
Our Education program will be released in 2018

You may contact with Ruth Rondon several ways:
1.  Email: Ruth@HumanTraffickingElearning.com
2.  Our website: www.HumanTraffickingElearning.com/Ruth-Rondon
3.  Twitter: #WARonSlavery
4.  Facebook: Ruth Rondon on Human Trafficking
5.  LinkedIn: Ruth Rondon
6.  For HT stats, check out: Pinterest

To learn more: Human Trafficking eLearning Program Previews and Descriptions
www.humantraffickingelearning.com/training

https://app.avanoo.com/spa/corp/?qq=first3/662#/first3/662



© 2017 All rights reserved, Ruth Rondon.

8

**[PROPOSED] ORDER**

THE COURT FINDS that it is reasonable and necessary that Plaintiff's identity remain confidential throughout the pendency of the lawsuit and thereafter.

THE COURT ORDERS that Plaintiff be permitted to proceed in this litigation under the pseudonym of John Doe and his parent and next friend shall be permitted to appear as Jane Doe.

THE COURT FURTHER ORDERS that all materials filed in this action, all judgments, and any other documents relating to this action shall refer to Plaintiff as John Doe, and his parent/next friend as Jane Doe, without additional identifying information.

THE COURT FURTHER ORDERS that any release or deliberate disclosure of Plaintiff's identity by Defendant, to anyone outside of the terms ordered in the protective order, be sanctionable and accountable to the fullest extent of the law.


Dated: _____


_____
Judge of the United States District Court

[PROPOSED] ORDER GRANTING MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email address denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of January, 2021.


   /s/ *Hannah E. Mohr*
Paul A. Matiasic
Hannah E. Mohr
**THE MATIASIC FIRM, P.C.**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
*matiasic@mjlawoffice.com*