1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    KYLE C. WONG (224021)
3   (kwong@cooley.com)
    101 California Street, 5th Floor
4   San Francisco, CA 94111-5800
    Telephone:    (415) 693-2000
5   Facsimile:    (415) 693-2222

6   LINH K. NGUYEN (305737)
    (lknguyen@cooley.com)
7   JAMIE D. ROBERTSON (326003)
    (jdrobertson@cooley.com)
8   4401 Eastgate Mall
    San Diego, California  92121
9   Telephone:    (858) 550-6000
    Facsimile:    (858) 550-6420

10

11  Attorneys for Defendant
    TWITTER, INC.

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15              SAN FRANCISCO DIVISION

16

17  JOHN DOE, A MINOR CHILD, BY AND        Case No. 3:21-cv-00485-JCS
    THROUGH HIS NEXT FRIEND JANE DOE,
18                                         **DEFENDANT TWITTER, INC.'S NOTICE OF
             Plaintiff,                    MOTION AND MOTION TO DISMISS
19                                         PLAINTIFF'S COMPLAINT; MEMORANDUM
         v.                                OF POINTS AND AUTHORITIES IN SUPPORT
20                                         THEREOF**
    TWITTER, INC.,
21                                         Hearing Date:    June 4, 2021
             Defendants.                   Hearing Time:    9:30 a.m.
22                                         Judge:    Honorable Joseph C. Spero

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 3

    A.    CDA § 230 .................................................................................................... 3

        1.    Under CDA § 230, internet platforms are immune from suit based on the failure to remove offensive third-party content ............................... 3

        2.    FOSTA creates a very limited exception to Section 230's broad grant of immunity in specific cases of criminal misconduct ...................... 4

    B.    Twitter's Commitment to Fight CSE and Sex Trafficking ...................... 5

    C.    Plaintiff's Allegations ................................................................................ 7

III.  LEGAL STANDARD .............................................................................................. 8

IV.   PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW ................................... 8

    A.    Twitter Is Immune Under CDA § 230 ..................................................... 8

        1.    Twitter is an interactive computer service provider ................................... 9

        2.    Plaintiff seeks to hold Twitter liable as the publisher of content supplied by third parties ................................................................................ 9

    B.    The Complaint Does Not Allege Any Actionable Exemption to CDA § 230's Broad Grant of Immunity ............................................................. 12

        1.    Twitter did not participate in any type of venture with the Perpetrators. ....................................................................................................... 13

        2.    Twitter did not knowingly receive any benefits because of a sex trafficking venture. ........................................................................................... 15

        3.    Twitter did not know of the alleged sex trafficking. ................................ 17

    C.    The Complaint Does Not State a Claim Under Section 1595. .............. 18

        1.    Twitter did not participate in a venture with the Perpetrators ................ 19

        2.    There are no facts suggesting Twitter should have known of Plaintiff's alleged sex trafficking. ............................................................... 20

    D.    Plaintiff's Remaining Claims are barred by CDA § 230. ..................... 21

    E.    Even if not barred by the CDA, Plaintiff's claims fail ......................... 22

        1.    Plaintiff fails to state a claim under 18 U.S.C. § 2258A. ...................... 22

        2.    Plaintiff fails to state a California products liability claim. ................... 22

        3.    Plaintiff fails to state a claim under any negligence theory. .................. 23

        4.    Plaintiff fails to state a claim under Cal. Civ. Code § 1708.85 .............. 24

V.    CONCLUSION ....................................................................................................... 25

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A.B. v. Hilton Worldwide Holdings Inc.*,

5

2020 WL 5371459 (D. Or. Sept. 8, 2020)................................................................. 18

6

*A.B. v. Marriott Int'l, Inc.*,

455 F. Supp. 3d 171 (E.D. Pa. 2020) ...................................................................... 20

7

*Abcarian v. Levine*,

8

972 F.3d 1019 (9th Cir. 2020)................................................................................. 21

9

*AF Holdings, LLC v. Doe*,

2012 WL 4747170 (N.D. Cal. Oct. 3, 2012)........................................................... 24

10

*Ashcroft v. Iqbal*,

11

556 U.S. 662 (2009) ............................................................................................ 8, 24

12

*B.M. v. Wyndham Hotels & Resorts, Inc.*,

13

2020 WL 4368214 (N.D. Cal. July 30, 2020) ........................................................ 12

14

*Barnes v. Yahoo!, Inc.*,

570 F.3d 1096 (9th Cir. 2009).................................................................................. 9

15

*Bell Atl. Corp. v. Twombly*,

16

550 U.S. 544 (2007) ............................................................................................ 8, 16

17

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,

18

727 F.3d 917 (9th Cir. 2013).................................................................................... 9

19

*Brooks v. Eugene Burger Management Corp.*,

215 Cal. App. 3d 1611 (1989)................................................................................. 23

20

*Caraccioli v. Facebook, Inc.*,

21

700 Fed. Appx. 588 (9th Cir. 2017) ........................................................................ 21

22

*Carafano v. Metrosplash.com, Inc.*,

23

339 F.3d 1119 (9th Cir. 2003).................................................................................. 21

24

*David v. Weinstein Co. LLC*,

431 F. Supp. 3d 290 (S.D.N.Y. 2019)...................................................................... 15

25

*Doe 3 v. Red Roof Inns, Inc.*,

26

2020 WL 1872333 (N.D. Ga. Apr. 13, 2020) ......................................................... 14

27

*Doe II v. MySpace Inc.*,

28

175 Cal. App. 4th 561 (2009)................................................................................. 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Doe v. Bates*,

4
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ................................................................. 10, 21

*Doe v. Kik Interactive, Inc.*,
5
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ........................................................................... *passim*

6

*Doe v. MySpace*,

7
    474 F. Supp. 2d 843 (W.D. Tex. 2007)................................................................................... 24

8

*Dyroff v. Ultimate Software Grp., Inc.*,
    2017 WL 5665670 (N.D. Cal. Nov. 26, 2017) ................................................................. 11, 24
9

10

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)....................................................................................... *passim*

11

*Force v. Facebook, Inc.*,
12
    934 F.3d 53 (2d Cir. 2019)..................................................................................................... 9

13

*Geiss v. Weinstein Co. Holdings LLC*,
    383 F. Supp. 3d 156 (S.D.N.Y. 2019)................................................................ 12, 14, 15, 16
14

15

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ................................................................................. 0

16

*Gonzalez v. Google, Inc.*,
17
    282 F. Supp. 3d 1150 (N.D. Cal. 2017) .......................................................................... 10, 11

18

*Griff v. Woejeckloski*,
    2017 WL 8185857 (C.D. Cal. March 20, 2017) .................................................................... 22
19

20

*Hernandez v. Avis Budget Grp., Inc.*,
    2017 WL 6406838 (E.D. Cal. Dec. 15, 2017)....................................................................... 22

21

*Holomaxx Techs. v. Microsoft Corp.*,
22
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ................................................................................. 9

23

*Igbonwa v. Facebook, Inc.*,
    2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) *aff'd*, 786 F. App'x 104 (9th Cir.
24
    2019) .......................................................................................................................... 3, 8, 9. 10

25

*Intellect Art Multimedia Inc. v. Milewski*,
    899 N.Y.S.2d 60 (2009)......................................................................................................... 23
26

27

*J.B. v. G6 Hosp., LLC*,
    2020 WL 4901196 (N.D. Cal. Aug. 20, 2020).................................................................. *passim*

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*J.L. v. Best W. Int'l, Inc.*,
    2021 WL 719853 (D. Colo. Feb. 24, 2021) ............................................................ 18

4

*Jabagat v. Lombardi*,
    2015 WL 11004900 (S.D. Miss. Jan. 30, 2015)....................................................... 16

5

6

*James v. Meow Media, Inc.*,
    90 F.Supp.2d 798 (W.D.Ky.2000) ........................................................................... 23

7

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014)..................................................................................... 8

8

9

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
    2013 WL 6816174 (W.D. Ark. Dec. 24, 2013)................................................. 15, 17

10

11

*Lawson v. Rubin*,
    2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .......................................................... 17

12

13

*Lunsford v. Hornbeak*,
    2014 WL 4243772 (N.D. Cal. Aug. 26, 2014)......................................................... 14

14

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
    425 F. Supp. 3d 959 (S.D. Ohio 2019)............................................. 13, 19, 20, 21

15

16

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018)....................................................... 13, 14, 17

17

18

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. 2017) ..................................................... 8, 9, 10, 11

19

*Riggs v. MySpace, Inc.*,
    2009 WL 10671689 (C.D. Cal. Sept. 17, 2009)................................................... 9, 21

20

21

*Sinclair for Tucker v. Twitter, Inc.*,
    2019 WL 10252752 (N.D. Cal. March 20, 2019) ..................................................... 23

22

23

*Soule v. Gen. Motors Corp.*,
    8 Cal. 4th 548 (1994) ............................................................................................... 22

24

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) .................................................. 12, 13, 14, 15

25

26

*Washington v. Deleon*,
    2019 WL 11691424 (N.D. Cal. July 9, 2019)........................................................... 13

27

*Wilson v. Midway Games, Inc.*,
    198 F. Supp. 2d 167 (D. Conn. 2002) ...................................................................... 23

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Winter v. G.P. Putnam's Sons,*
   938 F.2d 1033 (9th Cir. 1991) .............................................................................. 23

*Woodhull Freedom Found. v. United States,*
   334 F. Supp. 3d 185 (D.D.C. 2018) ...................................................................... 18

*Worldwide Media, Inc. v. Twitter, Inc.,*
   2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ....................................................... 23

*Zeran v. Am. Online, Inc.,*
   129 F.3d 327 (4th Cir. 1997) .................................................................................. 3

**Statutes**

18 U.S.C.
   § 1591 ............................................................................................................. *passim*
   §1595 .............................................................................................................. *passim*

47 U.S.C.
   § 230(b)(4) ............................................................................................................. 3
   § 230(c)(1) ......................................................................................................... 3, 9
   § 230(e)(3) ............................................................................................................. 3
   § 230(e)(5)(A) ............................................................................................. 4, 12, 21

Pub. L. No. 115-164, 132 Stat. 1253 ............................................................................ 4

Cal. Civ. Code
   § 1708.85(c)(6) .................................................................................................... 25
   § 1708.85(h) ......................................................................................................... 21

**Other Authorities**

164 Cong. Rec S1849–62 (daily ed. Mar. 21, 2018) ............................................ 4, 5, 18

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on June 4, 2021, at 9:30 a.m., or as soon thereafter as the motion may be heard in Courtroom F, 15th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Twitter, Inc. ("Twitter") will and hereby does move to dismiss the causes of action in Plaintiff John Doe's ("Plaintiff") Complaint filed on January 20, 2021 (ECF No. 1) (the "Complaint").  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the motion.

## STATEMENT OF RELIEF SOUGHT

Twitter respectfully seeks an order dismissing the Complaint's causes of action with prejudice for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Twitter is entitled to immunity from all of Plaintiff's claims under Section 230 of the Communications Decency Act ("CDA § 230"), 47 U.S.C. § 230.

2. Whether the Complaint fails to state a claim for violation of 18 U.S.C. §1595, 18 U.S.C. § 2258A, California products liability, negligence, gross negligence, negligence per se, and negligent infliction of emotional distress, and under Cal. Civ. Code § 1708.85.

Cooley LLP
Attorneys at Law
San Francisco

vi

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

# I.     INTRODUCTION

Plaintiff John Doe appears to have suffered appallingly at the hands of unknown individuals ("Perpetrators"), who tricked and manipulated him into making and sharing explicit pictures and videos of himself and another individual in 2017 when he was a minor.  But this case ultimately does not seek to hold those Perpetrators accountable for the suffering they inflicted on Plaintiff.  Rather, this case seeks to hold Twitter liable because a compilation of that explicit video content (the "Videos") was—years later—posted by others on Twitter's platform and although Twitter did remove the content, it allegedly did not act quickly enough.  Twitter recognizes that, regrettably, Plaintiff is not alone in suffering this kind of exploitation by such perpetrators on the Internet. For this reason, Twitter is deeply committed to combating child sexual exploitation ("CSE") content on its platform.  And while Twitter strives to prevent the proliferation of CSE, it is not infallible. But, mistakes or delays do not make Twitter a knowing participant in a sex trafficking venture as Plaintiff here has alleged.  Plaintiff does not (and cannot) allege, as he must, that Twitter ever had any actual connection to these Perpetrators or took any part in their crimes.  Thus, even accepting all of Plaintiff's allegations as true, there is no legal basis for holding Twitter liable for the Perpetrators' despicable acts.

Twitter has zero tolerance for CSE content on its platform.  Twitter vigorously combats CSE through a combination of methods, including review of user reports and the use of proprietary technology to proactively identify and remove such material.  During the six-month period from January to June 2020, Twitter suspended 438,809 accounts for violating its policies prohibiting CSE material, and proactively identified approximately 399,316 of those accounts using its own technological means.  However, given the sheer volume of Tweets posted every day on Twitter's platform (hundreds of millions of Tweets posted by over 190 million daily users), it is simply not possible for Twitter—or the humans who enforce its Rules and policies—to remove all offending content immediately or accurately in all cases.

Congress recognized the inherent challenges of large-scale, global content moderation for platforms, including the potential for liability based on a platform's alleged "knowledge" of offensive content if it chose to try to screen out that material but was unable to root out all of it.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

1  Hoping to encourage platforms to engage in moderation of offensive content without risking
2  incurring potentially ruinous legal costs, in 1996 Congress enacted Section 230 of the
3  Communications Decency Act ("CDA § 230"), granting platforms like Twitter broad immunity
4  from legal claims arising out of failure to remove content.  Given that Twitter's alleged liability
5  here rests on its failure to remove content from its platform, dismissal of the Complaint with
6  prejudice is warranted on this ground alone.

7  While Congress has provided for very narrow exceptions to its otherwise broad grant of
8  immunity under CDA § 230, Plaintiff has not alleged facts that would qualify for this limited
9  statutory exception.  In 2018, Congress passed the Fight Online Sex Trafficking Act ("FOSTA") to
10  combat several notorious websites that were designed to promote prostitution and facilitate sex
11  trafficking.  FOSTA created a narrow exception to CDA § 230 immunity that permits claims civil
12  claims under 18 U.S.C. § 1595 ("Section 1595") where the interactive computer service violates
13  18 U.S.C. § 1591 ("Section 1591"), by "knowingly . . . benefiting . . . from participation in a [sex
14  trafficking] venture." 18 U.S.C. § 1591(a)(2).  The language of the exception was carefully targeted
15  to remove immunity for the few criminal websites that, unlike Twitter here, were deliberately and
16  knowingly profiting from reprehensible crimes.  FOSTA's language, its legislative history, and the
17  pre-existing case law on Section 1591 all point to the same conclusion: civil claims can only
18  proceed against knowing and affirmative participants in a sex trafficking venture.  Congress never
19  intended for online platforms like Twitter that take action against such activity to be sued for their
20  mere failure to remove content.

21  The Complaint does not come close to meeting this specific and exacting criminal standard.
22  It does not allege any facts suggesting that Twitter knowingly participated in any kind of venture
23  with the Perpetrators, let alone a sex trafficking (i.e., commercial sex) venture.   While the
24  Complaint alleges that Plaintiff reported the Videos to Twitter, it does not allege, as required to
25  establish a violation of Section 1591, any facts establishing that Twitter knew that he was a victim
26  of sex trafficking or that the Videos were evidence of this crime.  Nor does the Complaint allege
27  any connection between the Perpetrators and Twitter.  And, most importantly, Twitter did remove

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

the Videos and suspended the accounts that had posted them.[1]  The fact that nine days transpired before the offending content was taken down does not make Twitter liable under any applicable law.  Accordingly, as the Complaint cannot show that Twitter violated Section 1591, it is immune from all Plaintiff's claims under CDA § 230.  And, even if Twitter was not immune under CDA § 230, the Complaint contains a number of other significant pleading deficiencies that mandate dismissal.  Accordingly, Twitter respectfully asks this Court to dismiss the Complaint with prejudice.

## II.    BACKGROUND

### A.    CDA § 230

#### 1.    Under CDA § 230, internet platforms are immune from suit based on the failure to remove offensive third-party content.

Congress enacted CDA § 230 to ensure that interactive computer service providers would never have to choose "between taking responsibility for all messages and deleting no messages at all," which presents such providers a "grim" and illusory choice.  *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162–63 (9th Cir. 2008); 47 U.S.C. § 230(b)(4).  To that end, CDA § 230 creates broad immunity for claims against online service providers based on content created by users: "No provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  *Id*. at § 230(c)(1).  In other words, CDA § 230 bars all causes of action that seek to hold service providers like Twitter liable for not removing content created by a third-party.  *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330–31 (4th Cir. 1997); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5-7 (N.D. Cal. Oct. 9, 2018) (Spero, J.), *aff'd,* 786 F. App'x 104 (9th Cir. 2019).  Congress also expressly preempted all state laws that are inconsistent with this immunity.  47 U.S.C. § 230(e)(3).  This broad immunity assures service providers that they can self-police their platform without fear that failing to remove offensive content would cripple their business with overwhelming liability.  *See Zeran*, 129 F.3d at 331; *Roommates.Com*, 521 F.3d at 1162-63 (9th

---

[1] Twitter understands that the fact that anyone is able to view this type of material for any length of time can impact victims of the type of crimes at issue here. Twitter agrees that the Perpetrators should be held accountable for their crimes involving Plaintiff.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

1    Cir. 2008).

2         **2.    FOSTA creates a very limited exception to Section 230's broad grant of**
         **immunity in specific cases of criminal misconduct.**
3

4         In 2018, Congress enacted FOSTA in response to reports regarding the proliferation of

5    online prostitution and sex trafficking operations allegedly using CDA § 230 to shield themselves

6    from liability for their misconduct.  Pub. L. No. 115-164, 132 Stat. 1253.  Congress found that a

7    small but growing number of malicious websites were deliberately facilitating sex trafficking on

8    their sites.  *See* H.R. Rep. No. 115-572, pt. 1, at 3–5 (2018) ("[O]nline classified sites like

9    Backpage.com, Eros, [and] Massage Troll…have gone beyond merely hosting advertisements, []

10   and have purposely created platforms designed to facilitate prostitution and sex trafficking").  Most

11   infamously, the site known as Backpage "had knowingly concealed evidence of criminality by

12   systematically editing its 'Adult' ads [by] automatically delet[ing] incriminating words [and] then

13   manually delet[ing] incriminating language that filters missed."  *Id*.  Worse still, Backpage's

14   business model relied almost entirely on advertisements "designed to sell children for sex."  *See*

15   164 Cong. Rec. S1849–08, S1852–59 (daily ed. Mar. 21, 2018).

16        To prevent sites like Backpage from misusing CDA § 230's broad grant of immunity,

17   FOSTA created a very narrow exception: CDA § 230 was amended to permit suit under 18 U.S.C.

18   § 1595, which creates a private right of action for victims of sex trafficking, ***but only*** "if the conduct

19   underlying the claim constitutes a violation of [S]ection 1591," which is the underlying criminal

20   statute prohibiting sex trafficking.  47 U.S.C. § 230(e)(5)(A); *Kik Interactive*, 482 F. Supp. 3d at

21   1251 ("FOSTA permits civil liability for websites only if the conduct underlying the claim

22   constitutes a violation of section 1591.").  This limitation is important as Section 1591 has more

23   stringent *mens rea* and required elements to meet than Section 1595.  *Compare* 18 U.S.C. § 1591

24   (prohibiting "***knowingly***… benefit[ting], financially or by receiving anything of value" while

25   "***knowingly*** assisting, supporting, or facilitating" a sex trafficking venture) *with* 18 U.S.C. § 1595

26   (applying to "whoever knowingly benefits, financially or by receiving anything of value from

27   participation in a venture which that person knew or ***should have known*** has engaged in an act in

28

**Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiff's Complaint
Case No. 3:21-cv-00485-JCS**

violation of this chapter").[2]  The FOSTA exception therefore only applies to sex traffickers and those who "knowingly. . . benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in [sex trafficking]," 18 U.S.C. § 1591(a)(1)–(2), and only limits CDA § 230 immunity for those websites that knowingly assist or facilitate a sex trafficking venture on their platforms,[3] and does not otherwise change the existing CDA § 230 framework.  *See Kik Interactive*, 482 F. Supp. 3d at 1249–51.

The legislative record is clear that Congress intended to revoke immunity only in extreme cases (like Backpage) where the online platform knowingly and affirmatively facilitated sex trafficking.  164 Cong. Rec., at S1860–62 (statement of Senator Durbin ("[FOSTA] is a narrowly crafted bill that would ensure that Section 230 . . . does not provide legal immunity to websites like Backpage"); *id.* (statement of Senator Schumer ("Key to my support is my understanding that this legislation would not allow nuisance lawsuits against technology companies.")).  Crucially, Congress made it clear that, "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim."  *See* H.R. Rep. No. 115-572, at 5.  Moreover, immunity would be lost only where "the website operators knew that the [posts] involved sex trafficking."  *Id.*; *see also* 164 Cong. Rec., at  S1853 (statement of the United States Department of Justice (the "DOJ") ("Under current [Section 1591] law prosecutors must prove that the defendant knowingly benefitted from participation in a sex trafficking venture, knew that the [post] related to commercial sex, and knew that the [post] involved a minor.").

## B.    Twitter's Commitment to Fight CSE and Sex Trafficking

Twitter operates a global communications platform that allows hundreds of millions of people around the world to join an open conversation where users view and share content about events both global and local.  (¶¶ 20–26.)  People primarily engage on the platform by reading and

---

[2] All "¶" references are to Plaintiff's Complaint, ECF No. 1 (the "Complaint"), and all "Wong Decl." references are to the Declaration of Kyle C. Wong in Support of Defendant Twitter, Inc.'s Motion to Dismiss Plaintiff's Complaint filed herewith.  Unless otherwise noted, all emphasis is added, and internal quotation marks and citations are omitted.

[3] Section 1595, on the other hand, creates civil liability (outside of the CDA § 230 context), for those who know *or should have known* that they were participating in a sex trafficking venture. FOSTA, which contains no "should have known" language, in comparison narrows the range of permissible suits against interactive computer services.

posting "Tweets," which are short messages, that can be reposted or "retweeted." (¶¶ 23–24.) Users can include hashtagged keywords (#) in their Tweets to facilitate searching for information on the same topic. (*See* ¶¶ 57–62.) Hundreds of millions of Tweets are posted each day. (¶ 20.)

Twitter's stated purpose is to serve the public conversation—it believes that violence, harassment, and other similar types of behavior discourage people from expressing themselves, and ultimately diminish the value of global public conversation. Accordingly, Twitter has established the Twitter Rules to help ensure that all people can participate in the public conversation freely and safely. (*See* ¶¶ 38–41, 48–50.) All individuals who sign up for a Twitter account agree to abide by the Twitter Rules and all incorporated policies. Twitter's Rules unequivocally prohibit CSE material on the platform, stating "[w]e have zero tolerance for child sexual exploitation on Twitter."[4] (¶ 49; Compl., Ex. A at 1.)

This "zero-tolerance" policy identifies sharing any material that "features or promotes" such CSE content as "one of the most serious violations of the Twitter Rules." (Compl., Ex. A at 1.) To ensure that the over 190 million individuals who use its platform on a daily basis comply with its prohibition against CSE, Twitter employs multiple tools, including reports by the public (a Twitter account is not required to report child sexual exploitation content, Compl., Ex. A at 2), moderators who review reports of abuse and CSE content, innovative technology and algorithms that proactively identify abusive content, and online education and information sharing to combat online abuse. (*See* ¶¶ 35–41, 48–50; Wong Decl., Exs. 1, 2.) Indeed, in the period from January to June 2020 alone, Twitter suspended 438,809 accounts for violating its Rules prohibiting CSE material. 91% of those accounts were proactively identified by employing internal proprietary tools and industry hash sharing initiatives. (Wong Decl., Ex. 3.) Twitter is also a member of the Technology Coalition, founded in 2006, which provides funding, advice, and resources to the tech industry on online safety tools for children. (*Id*. at Ex. 4.) The Coalition recently announced a new initiative, Project Protect, which includes, among other things, "establish[ing] a multi-million dollar research and innovative fund to build crucial technological tools needed to more effectively prevent and

---

[4] Twitter's Rules likewise prohibit use of the service for any unlawful purpose or in furtherance of illegal activities, including human trafficking. (Ex. 8.)

1    work to eradicate child sexual exploitation and abuse." (*Id*. at Ex. 5.)

2        **C.      Plaintiff's Allegations**

3        The Complaint alleges that in 2017, when Plaintiff was a minor, he was tricked into sending

4    nude photos of himself to the Perpetrators using Snapchat, a popular online messaging application.

5    (¶¶ 65–66.)  According to the Complaint, the Perpetrators used the photos to blackmail Plaintiff

6    into sending them explicit videos involving himself and a friend.[5] (¶ 68.)  Plaintiff subsequently

7    cut off communications with the Perpetrators.  (¶¶ 71-73.)  The Complaint alleges that one or two

8    years later, on or about January 19 or 20, 2020, Plaintiff learned that the Videos had been posted

9    on Twitter.  (¶¶ 74, 78–83.)  Plaintiff and his mother Jane Doe reported the Videos to Twitter using

10   Twitter's reporting process three times beginning on January 21, 2020.  (¶¶ 83–95.)  Plaintiff and

11   Jane Doe also sent emails about the Videos to Twitter.  (*Id*.)  On January 28, 2020, Twitter emailed

12   Plaintiff and informed him that it had reviewed the Videos, and did not find a violation.  (¶ 91.)

13   Sometime after, Jane Doe allegedly contacted an agent of the United States Department of

14   Homeland Security ("DHS"), who sent Twitter a takedown request.  (¶¶ 97-98.)  Immediately after

15   Twitter received the request, on or about January 30, 2020—*i.e.*, nine days after receiving the first

16   report from Plaintiff—Twitter removed the Videos and suspended the Twitter accounts that had

17   posted them.[6] (*Id*.)

18       The Complaint contains no allegations that Twitter played any role in the Perpetrators'

19   misconduct.  There is no allegation that Twitter was involved in creating the Videos, or that it

20   knowingly provided any assistance to the Perpetrators who tricked Plaintiff into creating the

21   Videos.  Indeed, the Complaint alleges that Plaintiff was exploited at least one year ***before*** the

22   Videos surfaced on Twitter, and the Complaint contains no facts showing any connection between

23   Twitter and the Perpetrators.   The Videos were initially published on a different platform

---

24
25   [5] Defendants assume, for the purposes of its Motion to Dismiss only, that this alleged conduct
     qualifies as a primary sex trafficking violation.  *See* 18 U.S.C. § 1591(a)(1).
26   [6] While the Complaint implies that Twitter did not suspend the accounts until after January 30,
     2020 (¶¶97–98), that is not accurate.  The @StraightBross account was banned on January 28, 2020
27   because of a different report.  Twitter also blocked the @BrossStraight account, which appears to
     be a reconstitution of the @StraightBross account, one of the accounts that posted the Videos.
28   (Wong Decl., Ex. 6.)  Twitter's Rules include a prohibition on creating a new account in order to
     evade permanent suspension, and, when this activity is detected, Twitter bans accounts that attempt
     to circumvent its enforcement actions.  (*Id*. at Ex. 7.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

(Snapchat) and Twitter is not alleged to have taken any affirmative step to disseminate the Videos. No facts are alleged showing that any Twitter employee had actual knowledge that an adult had manipulated Plaintiff into creating the Videos.  And, finally, the Complaint does not allege that the Perpetrators were the Twitter users who posted the Videos.  There is simply no allegation that Twitter took any affirmative act to facilitate the conduct of the Perpetrators in any way.  At most, Plaintiff alleges only that Twitter knew of the Videos themselves, that the Videos violated Twitter's Rules, and that Twitter failed to take action to remove the Videos when it first became aware of them.  But Plaintiff has not asserted—and cannot assert—any non-conclusory allegation that Twitter's failure to remove the Videos was a knowing and affirmative act to aid a sex trafficking venture, rather than mere error.

## III.   LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to satisfy Rule 8's pleading requirements.  *Id*.  And although the court accepts factual allegations as true, this tenet is "inapplicable to legal conclusions."  *Id*.  When stripped of "conclusory statement[s]," the complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007) (alterations omitted).  Otherwise, the complaint must be dismissed.  *Id*.

## IV.   PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

### A.   Twitter Is Immune Under CDA § 230

CDA § 230 shields online service providers like Twitter from liability for lawsuits based on decisions to publish or remove third-party content.  The law confers immunity where three elements are met: (1) the defendant is an online service provider; (2) the cause of action treats the defendant as the publisher or speaker of the content in question; and (3) someone other than the defendant provided or created the content at issue in the action.  *Igbonwa*, 2018 WL 4907632, at *5. Consistent with Congress's intention to broadly protect online platforms from suit, "close cases . .

. must be resolved in favor of immunity." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014).  Courts regularly dismiss complaints with prejudice when the allegations show that the defendant is immune under CDA § 230.  *See, e.g.*, *Igbonwa*, 2018 WL 4907632, at *7-*8 (dismissing plaintiff's claims with prejudice); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 892 (N.D. Cal. 2017) (same) (Spero, J.).

### 1.      Twitter is an interactive computer service provider.

Twitter is a "provider . . . of an interactive computer service" within the meaning of Section 230(c)(1).  *See, e.g.*, *Pennie*, 281 F. Supp. 3d at 888.  The Complaint does not allege otherwise.

### 2.      Plaintiff seeks to hold Twitter liable as the publisher of content supplied by third parties.

There is no question that third parties created the Videos, and posted them to Twitter.  (¶¶ 66–74.)  The Complaint does not suggest that Twitter is anything other than an online platform through which third parties can post information.[7]  *See Igbonwa*, 2018 WL 4907632, at *6 (noting that websites that merely provide a "means by which third parties can post information" are not content developers).

It is similarly apparent that Plaintiff's suit seeks to hold Twitter responsible "as the 'publisher or speaker'" of the Videos.  *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–03 (9th Cir. 2009) ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."); 47 U.S.C. § 230(c)(1).  All of Plaintiff's claims are premised on the allegation that Twitter took too long to remove the Videos after Plaintiff reported it.  (¶¶ 74–98.)  But merely failing to remove third-party content, even if abhorrent, is precisely what CDA § 230 immunizes.  *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019)

---

[7] The Complaint declares, based solely "on information and belief," that "Twitter selectively removes or prevents" some content that violates its policies while allowing other such content to remain.  (¶ 43.)  But "[c]onclusory allegation such as these are insufficient to state a claim against [Twitter]."  *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (rejecting plaintiff's bare "information and belief" pleading as "naked assertions"); *Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (rejecting as "conclusory" plaintiff's allegations "based on information and belief" where plaintiff "offer[ed] no factual support for these allegations").  And, Regardless, "selective" removal of content would not transform Twitter into an information content provider.  *Riggs v. MySpace, Inc.*, 444 Fed. Appx. 986, 987 (9th Cir. 2011) (claims "arising from MySpace's decisions to delete…user profiles on its social networking website yet not delete other profiles…were precluded by section 230(c)(1) of the Communications Decency Act").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

("Facebook's alleged failure to delete content from Hamas members' Facebook pages" falls "within the heartland of what it means to be the publisher of information under Section 230(c)(1)."); *Roommates.Com*, 521 F.3d at 1170–71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230.").[8]  Accordingly, the second and third elements of CDA § 230 immunity are met and this suit is barred.

Plaintiff cannot revive his claim by contending that Twitter is a content provider because it gives users a search engine tool, which allows users to search for posts using hashtags, suggests searches to users, and displays search results next to targeted advertisements.  (¶¶ 28–31, 57–63.)  The Complaint fails to connect these platform tools to the harm suffered by Plaintiff; there are no allegations that, for instance, the megalinks hashtag was used on any post involving the Videos or that searches suggested users to view the Videos.  Courts have, moreover, uniformly held that such neutral tools are protected by CDA § 230 immunity.

***Hashtag Searching.***  Courts routinely hold that online service providers' "provision of neutral tools to carry out what may be unlawful or illicit searches" by a user is within the protection afforded to publishers under CDA § 230.  *E.g.*, *Pennie*, 281 F. Supp. 3d at 882; *Roommates.Com*, 521 F.3d at 1169–72.  This is the case even where "a particular tool facilitate[s] the expression of information" and the "service provider *knows* that third parties are using such tools to create illegal content."  *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1197–98 (N.D. Cal. 2009).  Indeed, "absent substantial affirmative conduct on the part of the website creator *promoting the use of such tools for unlawful purposes*," the provision of neutral tools "is fully protected by CDA immunity." *Roommates.com*, 521 F.3d at 1174 n.37 (emphasis added).  In *Goddard*, the court concluded that Google's keyword search tool was neutral where users could choose the keywords they searched,

---

[8] Courts regularly dismiss claims based on allegations like Plaintiff's—*i.e.*, that a service provider failed to remove certain third party content—as barred by CDA § 230.  *E.g.*, *Igbonwa*, 2018 WL 4907632, at *5–7 (barring claims against Facebook that sought to hold it liable for not removing defamatory content posted by a third party); *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1164–71 (N.D. Cal. 2017) (barring claims that sought to hold Google liable for "fail[ing] to do enough to remove [harmful] content"); *Doe v. Bates*, 2006 WL 3813758, at *18–20 (E.D. Tex. Dec. 27, 2006) (barring claims that sought "to hold Defendant liable for its alleged failure to . . . prevent[] the dissemination of the images").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

1    and there were no facts suggesting Google "require[d] advertisers to engage in illegal conduct."

2    640 F. Supp. 2d at 1197–99.  So too here.  The Complaint is devoid of facts suggesting Twitter

3    promotes or requires the use of hashtag searching for improper purposes.  Thus, Plaintiff's claims

4    as to Twitter's hashtag searching tool are barred by CDA § 230.  *See id.*

5         ***Search Suggestions.***  Similarly, "making recommendations to website users and alerting

6    them to posts are ordinary, neutral functions of social-network websites."  *E.g.*, *Dyroff v. Ultimate*

7    *Software Grp., Inc.*, 2017 WL 5665670, at *8–10 (N.D. Cal. Nov. 26, 2017) (dismissing

8    complaint), *aff'd*, 934 F.3d 1093 (9th Cir. 2019).  In *Dyroff*, the plaintiff claimed that Ultimate

9    Software contributed to illegality because it used "machine learning algorithms and tools to collect

10   [and] analyze" user data to "recommend and steer vulnerable users, like [plaintiff's] son, to forums

11   frequented by drug users and dealers."  2017 WL 5665670, at *8.  The court, however, disagreed

12   because those website functionalities—*i.e.*, "algorithmic recommendations of related groups[]"—

13   were based on "users' voluntary inputs that create[d] the content on" the website.  *Id.* at *10. Here,

14   Twitter's alleged search suggestions function in the same manner.  The Complaint claims that

15   Twitter makes suggestions based on "what the user enters into Twitter's search bar" and makes

16   "suggestions for other hashtags that are related to [what the user inputted] and users that use the

17   [same] hashtag."  (*See* ¶¶ 60–62.)  Because nothing in the Complaint indicates that Twitter's

18   algorithmic search suggestions are based on anything besides user-generated content, any claims

19   based on this functionality are also barred by CDA § 230.

20        ***Targeted Advertisements.***  A service provider's use of a targeted ad algorithm is also

21   protected when there are no facts that would "suggest that [the] ad algorithm is anything but content

22   neutral."  *See Gonzalez*, 282 F. Supp. 3d at 1168–70.  Again, the Complaint makes no allegations

23   that Twitter's displayed advertisements are based on anything other than "*user-defined* criteria."

24   *See Roommates.Com*, 521 F.3d at 1169 (emphasis original).  In fact, the Complaint acknowledges

25   that Twitter displays advertisements based on complicated algorithms that analyze user-generated

26   data.  (¶¶ 28–30, 58–62.)[9]  Thus, to the extent Plaintiff's claims are based on Twitter's use of

---

[9] *E.g.*, ¶ 28 ("Using our proprietary algorithms and understanding of the interests of each account, we can deliver Promoted Tweets that are intended to be relevant to a particular account. We enable our advertisers to target an audience based on an individual account's interest graph. . . Our

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

1    targeted ads, they are squarely within the category of claims barred by CDA § 230.  *See, e.g.*,

2    *Pennie*, 281 F. Supp. 3d at 890 (concluding that CDA § 230 barred plaintiffs' claim premised on

3    Twitter's use of targeted ads that were allegedly "based on what is known about the viewer and

4    what the viewer is looking at").

5         **B.**      **The Complaint Does Not Allege Any Actionable Exemption to CDA § 230's Broad Grant of Immunity**

6        Congress has lifted CDA § 230 immunity only in limited, narrow circumstances, including

7    where the content provider itself violates Section 1591.  47 U.S.C. § 230(e)(5)(A); *Kik Interactive*,

8    482 F. Supp. 3d at 1249–51.  Section 1591 punishes (1) primary violators who directly participate

9    in sex trafficking; and (2) secondary participants who "***knowingly*** . . . benefit[], financially or by

10    receiving anything of value, from participation in a venture" with a primary violator.  18 U.S.C. §

11    1591(a).  Section 1591 specifically defines "participation in a venture" as "knowingly assisting,

12    supporting, or facilitating [sex trafficking]."  *Id*. at § 1591(e)(4).

13        Plaintiff alleges that Twitter is a secondary participant under Section 1591, which requires

14    Plaintiff to plead that Twitter "knowingly . . . benefit[ed] . . . from participation in a venture which

15    has engaged in [sex trafficking] in violation of [Section 1591(a)(1)]."  18 U.S.C. 1591(a)(2).  The

16    statute makes clear that "participation in a venture" means "knowingly assisting, supporting, or

17    facilitating" a primary violation.  *Id*. § 1591(e)(4).  Here, the Complaint appears to contend that

18    Twitter "knowingly" participated in a venture with the Perpetrators based on either (i) Twitter's

19    initial failure to find a violation of its policies after reviewing the Video, or (ii) Twitter's nine day

20    delay in removing the Videos.  (¶¶ 83–98, 102–09.)  Regardless of the theory, such conduct does

21    not constitute a violation of Section 1591(a)(2) for three reasons.  ***First***, Plaintiff does not allege

22    the existence of any type of venture between Twitter and any party that has a common purpose,

23    much less facts suggesting "that [Twitter] actually participated in a *sex-trafficking venture*" that

24    had the common purpose of trafficking Plaintiff.  *United States v. Afyare*, 632 F. App'x 272, 283–

25    86 (6th Cir. 2016) (emphasis original); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL

26    4368214, at *3 (N.D. Cal. July 30, 2020) (analyzing the elements of a Section 1591 violation and

27

28    Promoted Tweets include objective-based features that allow advertisers to pay only for [certain] types of engagement . . . such as Tweet engagements (e.g., Retweets, replies and likes), website clicks, mobile application installs or engagements, obtaining new followers, or video views.").

following *Afyare*).  **Second**, there are no facts indicating Twitter knowingly received a benefit "because of" the alleged sex trafficking venture.  *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019).  **Third**, the Complaint does not contain any allegation that Twitter had actual knowledge that Plaintiff was a victim of sex trafficking or that it knew the Videos contained evidence of this.  (*See* ¶ 107; *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523–24 (S.D.N.Y. 2018) (quoting *Afyare* and concluding that a defendant must be aware of the specific primary violation to be liable as a secondary participant under Section 1591).)

### 1.    Twitter did not participate in any type of venture with the Perpetrators.

The Complaint fails to plausibly allege (1) the existence of any type of venture between Twitter and the Perpetrators or (2) that Twitter made a single affirmative act to further Plaintiff's alleged sex trafficking.

***No Venture.***  Plaintiff does not allege a single fact to support the existence of a venture between Twitter and the Perpetrators.  A "venture" is defined as "any group of two or more individuals ***associated in fact***."  18 U.S.C. § 1591(e)(6).[10]  Courts have interpreted this to mean in the context of Section 1595 claims—which has a lower *mens rea* standard than Section 1591—that a plaintiff must "at least" allege facts indicating a "continuous [] relationship" between each member of the venture "such that it would appear [they] have established a pattern of conduct or could be said to have a tacit agreement."  *See M.A. v. Wyndham Hotels & Resorts*, *Inc.*, 425 F. Supp. 3d 959, 970–71 (S.D. Ohio 2019).  In *M.A.*, for example, the court found a "venture" because the plaintiff alleged she saw the beneficiary defendant and her trafficker "exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again.'"  425 F. Supp. 3d at 970–71.  Yet the Complaint does not allege any facts showing a continuous relationship that would establish a pattern of conduct or a tacit agreement between Twitter and any other person.  For instance, Plaintiff does not claim that the Perpetrators Tweeted the Videos.  (¶ 74 (alleging that the Videos "surfaced" on Twitter).)  Nor does he allege that the Perpetrators used Twitter in any way

---

[10] "Associated in fact" is a term of art, and in the context of civil claims premised on violations of the Racketeering Influenced and Corrupt Organizations Act, it means a group of people who have associated together, whether "formally or informally," for a "common purpose" over a period of time.  *Washington v. Deleon*, 2019 WL 11691424, at *5–*6 (N.D. Cal. July 9, 2019).

to further their illicit behavior.  And, he does not claim that whoever posted the Videos on Twitter knew about or had anything to do with the sex trafficking that led to the creation of the Videos. The absence of any fact connecting Twitter in any way with anyone who knew about the underlying crime—which, again, is the exploitation that resulted in the creation of the Videos—is fatal to Plaintiff's ability to plead the existence of a venture involving Twitter even under the lower standard of Section 1595.  *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (rejecting Section 1595 claim where "there [was] no factual basis pled" that made it plausible that a venture existed between Craigslist and plaintiff's traffickers).  Consequently, Plaintiff has not pleaded the existence of a venture under Section 1591.

**No Active Participation.**  A defendant can only be liable as a secondary participant under Section 1591 if they "knowingly assist[], support[], or facilitate[] a [primary] violation."  18 U.S.C. § 1591(e)(4).  As the Sixth Circuit, in a seminal decision, described:

> [C]onsider a hypothetical defendant who joins a soccer team with some sex traffickers, who sponsor the team financially [] using the money they generate from sex trafficking activities. And assume that the sex traffickers do not conceal the source of this money from the rest of the team. . .  Ignoring the reprehensible amorality of our hypothetical defendant, who knowingly participates on a soccer team funded by sex trafficking money, the question is whether Congress criminalized his conduct in § 1591(a)(2). The district court thought not and. . . would require that a defendant actually participate and commit some "overt act" that furthers the sex trafficking aspect of the venture. . . We agree with the district court and find that § 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship.

*Afyare*, 632 F. App'x at 286.  Thus, the law does not punish a defendant for participation in a lawful venture with sex traffickers, or knowingly but passively receiving the financial benefits of sex trafficking.  Rather, liability arises only when a defendant makes "some ***overt act that furthers the sex trafficking aspect of the venture.***"[11]  *Afyare*, 632 F. App'x at 286; *see also Geiss*, 383 F. Supp. 3d at 169 ("participation" requires "affirmative conduct furthering the sex-trafficking venture");

---

[11] An "overt act" in the conspiracy context "is an act by one or more of the members of the conspiracy that is done to help accomplish the agreed upon crime.  The overt act must happen after the defendant has agreed to commit the crime."  *Lunsford v. Hornbeak*, 2014 WL 4243772, at *10 (N.D. Cal. Aug. 26, 2014), *aff'd*, 665 F. App'x 563 (9th Cir. 2016); *see Afyare*, 632 F. App'x at 283–84 (analyzing "participation in a venture" by "rel[ying] on the general concept of a 'venture' in a conspiracy").

*Kik Interactive*, 482 F. Supp. 3d at 1251 (Section 1591 "requires . . . active participation in sex trafficking"); *Noble*, 335 F. Supp. 3d at 524 ("Because guilt, or in this case liability, cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture"); *Doe 3 v. Red Roof Inns, Inc.*, 2020 WL 1872333, at *3 (N.D. Ga. Apr. 13, 2020) ("[K]nowledge and some participation in the sex trafficking act itself must be shown.").

The Complaint does not allege any facts suggesting that Twitter actively participated in Plaintiff's alleged exploitation or took any overt act to further it.  The only parties alleged to have affirmatively participated in Plaintiff's alleged sex trafficking are the Perpetrators.  (¶¶ 65–72.) Twitter was not involved in creating the Videos; indeed, Plaintiff concedes the Videos were created years earlier on an entirely different platform.  (¶¶ 65–74.)  There is no allegation that Twitter took any affirmative acts to disseminate the Videos.  Nor is there any allegation that Twitter helped to develop or create the Tweet that included the Videos.  Plaintiff's claim against Twitter is based solely on Twitter's alleged failure to remove those Videos.  (*E.g.*, ¶ 76 (alleging that Twitter "did not take action against the @StraightBross account"); *see also* ¶¶ 83–88, 90, 93–96.)  Indeed, Plaintiff repeatedly faults Twitter for not doing enough to remove abusive content on its platform and prevent the use of its neutral search tools for illegal purposes.  (¶¶ 35–43, 48–63.)  But such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591.  *Afyare*, 632 F. App'x at 286 (noting that to find otherwise would "create a vehicle to ensnare conduct that the statute never contemplated"); *cf. David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 307 (S.D.N.Y. 2019) (concluding that allegations that defendant "failed to act to prevent harm" were "insufficient to show that [defendant] engaged in any affirmative act").

### 2.   Twitter did not knowingly receive any benefits because of a sex trafficking venture.

Section 1591 also requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual . . . knowledge of that causal relationship".  *Geiss*, 383 F. Supp. 3d at 169); *Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).  The Complaint fails to make this requisite showing.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

**No benefit.**  There is no factual allegation that Twitter monetized or benefited from the Videos.  The Complaint does not allege that Twitter promoted the Tweet containing the Videos, posted ads next to the Videos, or licensed any data related to the Videos.  In fact, the Complaint makes no effort to connect any of the allegations regarding Twitter's revenue streams to the Videos.  Instead, the Complaint assumes that Twitter must have monetized the Videos and thereby received benefits from Plaintiff's alleged sex trafficking venture because Twitter monetizes all the content on its platform. (¶¶ 46-47.)   These conclusory and speculative allegations, however, are unsupported (and untrue).  For instance, while the Complaint acknowledges that Twitter "monetizes its platform by selling advertisements and data licensing," and purports to describe how it works (¶¶ 27–34),[12] none of those details indicates Twitter monetizes *every* Tweet on its platform, let alone the specific Tweets with the Videos.  *See Twombly*, 550 U.S. at 557 ("[N]aked assertion[s] . . . without some further factual enhancement [] stops short of the line between possibility and plausibility.").  As such, the Complaint's vague and conclusory implication that Twitter monetizes all content and therefore must have monetized the Videos fails to show Twitter received any benefit. *See Jabagat v. Lombardi*, 2015 WL 11004900, at *4 (S.D. Miss. Jan. 30, 2015) ("conclusory allegation[] that Defendants knowingly benefited financially" was a "mere recitation of the elements of the cause of action" and was "insufficient").

**No Causal Connection.**   The Complaint also fails to plausibly allege that Twitter knowingly generated revenue "*because of*" its alleged failure to remove the Videos.  *See Geiss*, 383 F. Supp. 3d at 169–70 (emphasis original) (dismissing complaint because plaintiff failed to allege a direct causal connection between the defendants' conduct and their receipt of benefits).  In *Geiss*, the court acknowledged that defendant TWC undoubtedly received benefits from Harvey Weinstein's continued employment as his films and influence generated revenue for the company.  But the "controlling question" was "whether H[arvey] Weinstein provided any of those benefits to TWC *because of* [its] facilitation of [his] sexual misconduct."  *Id.* (dismissing Section 1591 claim because the "FAC pleads no facts that would plausibly support such a conclusion").

---

[12] Plaintiff mischaracterizes how Twitter monetizes its platform, but Twitter will not dispute these alleged facts for the purposes of its Motion to Dismiss.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

The Complaint here merely references Twitter's advertising and data licensing revenues; it does not allege a single fact to establish any causal link between either of those revenue streams and Twitter's handling of the Videos, much less that Twitter was aware of that link.  (¶¶ 27–34, 45–47, 58; *Geiss*, 383 F. Supp. 3d at 169 (Section 1591 violation requires the defendant to have "actual . . . knowledge of that causal relationship").)  The Complaint does not allege, for example, that Twitter knew that the Videos were related to sex trafficking and placed them next to advertisements or allowed them to become a promoted Tweet.  Nor does it allege that the Videos showed up in any search results next to promoted texts or ads.  Likewise, there is no allegation establishing a causal link between the Videos and any of its data licensing revenue.  *See Kolbek*, 2013 WL 6816174, at *16 (dismissing Section 1591 claim where plaintiffs "offer no evidence of a causal relationship between the sex [trafficking] and the [benefits]").  Plaintiff thus fails to allege that Twitter knowingly benefitted from Plaintiff's alleged sex trafficking as Section 1591 requires.

### 3.      Twitter did not know of the alleged sex trafficking.

In enacting FOSTA, Congress acknowledged that the *mens rea* requirement of Section 1591 is "difficult to prove" when it comes to online service providers.  H.R. Rep. No. 115-572, pt. 1, at 3–6.  This is because Section 1591 expressly requires a defendant to "***knowingly*** assist[], support[], or facilitat[e]" a violation of Section 1591(a)(1), which criminalizes the exploitation of people for commercial sex.  18 U.S.C. §1591(e)(4).  Thus, Plaintiff must show that Twitter knew specifically that Plaintiff had been sex trafficked, and deliberately assisted the sex trafficking.  *Kik Interactive*, 482 F. Supp. 3d at 1251 (dismissing claim where plaintiff did not allege "facts that would plausibly establish that Defendants knowingly participated in the sex trafficking venture involving her.").

The Complaint, however, contains no facts plausibly alleging that Twitter had actual knowledge of Plaintiff's prior interactions with the Perpetrators.  While Plaintiff and Jane Doe reported the Videos to Twitter through its platform's reporting process (¶¶ 83-84, 86–88), there is no allegation that any of these submissions informed Twitter that Plaintiff was a victim of sex trafficking.  *See Noble*, 335 F. Supp. 3d  at 524 (dismissing Section 1591(a)(2) claim because there were no "specific factual allegations that plausibly allege [defendant] knew of [primary violator's] alleged violation of Section 1591 in Cannes"); *Lawson v. Rubin*, 2018 WL 2012869, at *13–14

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

(E.D.N.Y. Apr. 29, 2018) (dismissing Section 1591(a) claim because the complaint did "not allege that [defendant] was present for any of the alleged assaults, was told about them before or after they occurred, or knew that any of the plaintiffs were afraid of the [trafficker]").  Nor is there any allegation that the Videos would have, on their face, indicated to Twitter (or a reasonable viewer) that Plaintiff had been trafficked and the Videos involved commercial sex.  (*See* ¶ 85 (alleging only that the Videos depicted Plaintiff and another teenager).)

To be sure, Plaintiff alleges that he and Jane Doe wrote emails to Twitter stating that Plaintiff had been "harass[ed] and [] threatened" (¶ 85), "a victim in a sex abuse situation" (¶ 90), and "baited, harassed, and threatened" (¶ 94).  But none of those emails stated that Plaintiff was a victim of sex trafficking or indicated that the Videos related to commercial sex.[13]  *A.B. v. Hilton Worldwide Holdings Inc.*, 2020 WL 5371459, at *11 (D. Or. Sept. 8, 2020) ("The TVPRA targets *commercial sex activity* where children are victimized."); 164 Cong. Rec., at S1853 (statement of the DOJ ("Under current [Section 1591] law prosecutors must prove that the defendant . . . *knew that the [post] related to commercial sex*, and knew that the advertisement involved a minor.").[14]

Because "there are no facts in the [Complaint] supporting an inference of the *mens rea* standard necessary to peel back Section 230's protections," Plaintiff's claim against Twitter must fail.  *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 203 (D.D.C. 2018), *rev'd on other grounds,* 948 F.3d 363 (D.C. Cir. 2020).[15]

### C.    The Complaint Does Not State a Claim Under Section 1595.

---

[13] "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. 1591(e)(3).
[14] The Complaint also lacks factual allegations suggesting that any Twitter employee saw those emails.  (*See* ¶ 108.)  Plaintiff and Jane Doe concede that Twitter only responded to the reports they submitted through Twitter's platform; there is no allegation that Twitter acknowledged or provided a response to the emails.  (¶¶ 50, 83–84, 86–88, 90–91, 94–95.)  *See J.L. v. Best W. Int'l, Inc.,* 2021 WL 719853, at *14 (D. Colo. Feb. 24, 2021) (plaintiff did not allege that defendants had actual knowledge of her sex trafficking where she did "not allege that any member of the hotel staff heard and ignored her pleas [for help]").
[15] To the extent Plaintiff relies on allegations regarding Twitter's general knowledge that sex trafficking occurs on its platform, that is also unavailing.  *Kik Interactive*, 482 F. Supp. 3d at 1251 (allegation "that Defendants knew that other sex trafficking incidents occurred on Kik. . . does not satisfy FOSTA's requirement that the conduct underlying the claim violate 18 U.S.C. § 1591"); *A.B.*, 2020 WL 5371459, at *8–9 (allegations that defendants "knew or should have known of Plaintiff's trafficking because [they] were generally aware of trafficking occurring at their branded properties" was insufficient).  Furthermore, Twitter takes active steps against sex trafficking.  (¶¶ 48–50; Exs. 1, 2, 3, 5.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

Even if Twitter was not immune under CDA § 230 for alleged violations of 18 U.S.C. § 1595 (it is), that claim should still be dismissed for failing to plead all elements required by the statute. A victim of sex trafficking may sue either the primary "perpetrator" or a "benefi[ciary]" of sex trafficking. 18 U.S.C. § 1595(a). Under the "beneficiary" theory, a plaintiff must allege: (1) the defendant "knowingly" benefitted, financially or "by receiving anything of value"; (2) from "participat[ing] in a venture"; (3) that the "person [or entity] knew or should have known has engaged in an act in violation of this chapter." *M.A. v.*, 425 F. Supp. 3d at 964. Plaintiff fails to allege either that Twitter "participated in a venture" with the Perpetrators, or that Twitter "should have known" of Plaintiff's alleged sex trafficking.

## 1.    Twitter did not participate in a venture with the Perpetrators.

Twitter did not associate in any way with the Perpetrators, much less participate in a venture with them. Under a "beneficiary" theory, a plaintiff bringing a Section 1595 claim must show that the defendant "participat[ed] in a venture. . . [that] engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). "In the absence of a direct association" between the primary violators and the beneficiary, the plaintiff must "at least" allege facts indicating a "continuous [] relationship" between each member of the venture "such that it would appear [they] have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970–71. As previously discussed, there are no facts indicating that Twitter had any kind of relationship or contact with the Perpetrators that comes close to anything that might resemble a "continuous relationship" or "tacit agreement" with them. (*See supra* at 13–14.) Instead, the Complaint implies that Twitter enters into tacit agreements with all sex traffickers who use its platform. (¶¶ 45–63.) Such an allegation, however, would not be "reasonable in light of the volume of posts generated by third parties daily" on Twitter's platform. *See J.B.*, 2020 WL 4901196, at *9 (allegation that "Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website" was insufficient—"Plaintiff must allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff.").[16]

---

[16] This would also be an unreasonable conclusion in light of Twitter's public representations that it took action against over 400,000 accounts that had violated Twitter's rules prohibiting CSE material during the first six months of 2020. (Ex. 3.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

**2.    There are no facts suggesting Twitter should have known of Plaintiff's alleged sex trafficking.**

As with their failure to plead Twitter's knowledge as required under Section 1591, Plaintiff likewise cannot state a Section 1595 claim because the facts pled fail to satisfy even Section 1595's lower "should have known" standard.   While constructive knowledge is sufficient under Section 1595 (in contrast with Section 1591), a plaintiff still must allege facts showing the defendant should have known about what specifically happened to the plaintiff.  *M.A.*, 425 F. Supp. 3d at 968; *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 189–91 (E.D. Pa. 2020). Although the Complaint alleges that Plaintiff and Jane Doe provided some details about what happened between Plaintiff and the Perpetrators (*e.g.*, ¶ 85 (stating that Plaintiff had been "harass[ed] and [] threatened"); ¶¶ 90, 94), those allegations are far less clear than the allegations courts have previously found to meet Section 1595's constructive knowledge standard.

In *A.B.*, for example, the plaintiff defeated a motion to dismiss because she alleged facts that put the hotel on notice that she was a victim of sex trafficking.  *Id*. at 189–91 (among other warning signs were (1) a "constant stream of male visitors" to her room; (2) the rooms "were littered with multiple broken objects, used condoms, and other sex paraphernalia"; (3) hotel staff "observed A.B. with signs of visible injury on more than on occasion"; and (4) "attacks on A.B. by her trafficker were constant and loud enough for hotel patrons and staff to hear").  Similarly, in *M.A.*, the plaintiff stated a Section 1595 claim because she alleged, among other things, that (1) she was "routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash for the reserved room," (2) "hotel staff ignored her" "desperate pleas and screams for help" when she was "being beaten or choked" at the hotel properties, (3) the "trafficker[s] often request rooms near exit doors," and (4) the trash cans in plaintiff's rooms were "[f]requently" full of "an extraordinary number of used condoms."  425 F. Supp. 3d at 967.

Here, as with the alleged Section 1591 violation, there is no factual allegation to support that Twitter "should have known" that the Video involved sex trafficking conduct—*i.e.*, the exploitation of children for commercial sex purposes. (*See supra* at 17-18.)  There is no allegation that those viewing the Videos would perceive that they depicted commercial sex acts involving

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS

1   post-pubescent minors.  (*Id*.)  And none of the reports or emails sent to Twitter about the Videos

2   indicated that Plaintiff had been sex trafficked or that they involved commercial sex acts.  (*Id*.)  To

3   the extent Plaintiff relies on allegations that Twitter was generally aware that sex trafficking

4   occurred on its platform, they also fail to establish Twitter's constructive knowledge that the Videos

5   involved sex trafficking.  (*See supra* at 18 n.15).  Last, the mere passage of nine days between the

6   offending Tweet and the content takedown is not enough to show that Twitter "should have

7   known."  Such a delay in removing the content says nothing about what Twitter did or did not know

8   about the content of the Videos.  Without specific facts that would "have alerted [Twitter] to

9   [Plaintiff's] situation," the Complaint cannot state a Section 1595 claim.  *See M.A*., 425 F. Supp.

10  3d at 968.

11          **D.**      **Plaintiff's Remaining Claims are barred by CDA § 230.**

12          Plaintiff's remaining claims are barred by CDA § 230.  Every court that has analyzed

13  whether FOSTA limited immunity for claims other than claims under Section 1595 have found that

14  "FOSTA removes CDA immunity only for claims under [S]ection 1595."  *E.g*., *Kik Interactive*,

15  482 F. Supp. 3d at 1249.

16          2020 WL 6434845, at *9–10 ("[B]ecause Congress limited 47 U.S.C. § 230(e)(5)(A) to

17  federal causes of action under 18 U.S.C. § 1595, the presumption is that Congress intentionally

18  excluded state law claims from this provision.").  Consequently, the rest of Plaintiff's claims remain

19  barred by CDA § 230.  *See Doe v. Bates*, 2006 WL 3813758, at *18–20 (E.D. Tex. Dec. 27, 2006)

20  (concluding CDA §230 barred plaintiff's Section 2252A claim); Cal. Civ. Code § 1708.85(h)

21  ("[n]othing in this section shall be construed to alter or negate any rights, obligations, or immunities

22  of an interactive service provider under Section 230 of Title 47 of the United States Code."); *J.B.*,

23  2020 WL 4901196, at *7 (negligence and negligence per se); *Riggs v. MySpace, Inc.*, 2009 WL

24  10671689, at *3 (C.D. Cal. Sept. 17, 2009), *reversed in part on other grounds*, 444 Fed. Appx. 986

25  (9th Cir. 2011) (gross negligence); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th

26  Cir. 2003) (invasion of privacy); *Caraccioli v. Facebook, Inc.*, 700 Fed. Appx. 588, 590 (9th Cir.

27  2017) (public disclosure of private facts and intrusion upon seclusion); *Doe II v. MySpace Inc.*, 175

28  Cal. App. 4th 561, 575 (2009) (product liability).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

**E.     Even if not barred by the CDA, Plaintiff's claims fail.**

**1.     Plaintiff fails to state a claim under 18 U.S.C. § 2258A.**

Plaintiff seeks to bring a claim under 18 U.S.C. § 2258A (Count II), but that criminal statute does not provide a private cause of action.  *Id.*; *Abcarian v. Levine*, 972 F.3d 1019, 1026 (9th Cir. 2020) ("[I]f the statutory language *itself* does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one." (emphasis original)).

**2.     Plaintiff fails to state a California products liability claim.**

Plaintiff's products liability claim must be dismissed because Plaintiff fails to allege he suffered physical injury or property damage resulting from his use of a defective product.  *See Hernandez v. Avis Budget Grp., Inc.*, 2017 WL 6406838, at *5 (E.D. Cal. Dec. 15, 2017) (To state products liability claim, Plaintiff must allege "factual allegations regarding any physical injuries or property damage he sustained.")  Plaintiff alleges only that he "was harmed by these defects in Twitter's products."  (¶ 139.)   This is insufficient.  *Hernandez*, 2017 WL 6406838, at *5 ("conclusory statement" that Plaintiff "has suffered personal injury")*.*

Moreover, Plaintiff fails to clearly identify any *product* that is allegedly defective.  Plaintiff, for instance, alleges that "Twitter created *its platform, API, and related products*, and ***distributes them*** and has placed ***these products*** into commerce."  (¶ 128.)  Plaintiff then alleges that "due to the structure of the platform, including Twitter's capacity to monitor, block, or delete content on the platform, ***the product in question never left Twitter's* possession.**"  (¶ 133.)  It is unclear whether Plaintiff is alleging that one "product" or multiple "products" are defective, and whether the "product in question" is Twitter itself, Twitter's software, other "related products," the Videos themselves or some combination thereof.  (*Compare* ¶ 136 ("Twitter's products are defective) *with* ¶ 137 ("Twitter is a product . . .).)  Because Plaintiff fails to clearly identify any product that caused him injury, the claim should be dismissed.  *See Griff v. Woejeckloski*, 2017 WL 8185857, at *3 (C.D. Cal. March 20, 2017) (dismissing products liability claim where plaintiff failed to "allege that any product (for example, the handrail) is defective" and where defendant was primarily providing a service, rather than a product).

If Plaintiff is attempting to allege that the design of the Twitter platform itself is defective,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

1  this claim still fails.  To bring a defective design claim, Plaintiff must allege that: (1) Twitter

2  manufactured, distributed, or sold a product; (2) the product did not perform as safely as an ordinary

3  consumer would have expected it to perform when used or misused in an intended or reasonably

4  foreseeable way; and (3) Plaintiff was injured by the product and the product's failure to perform

5  safely was a substantial factor in causing Plaintiff's harm.  *See Soule v. Gen. Motors Corp.*, 8 Cal.

6  4th 548, 560 (1994).  As an initial matter, the "language" and "purposes served" by products

7  liability is "geared to the tangible world," not the intangible world of internet platforms that operate

8  to provide a space for the exchange of thoughts, communications, and expression.  *Winter v. G.P.*

9  *Putnam's Sons*, 938 F.2d 1033, 1034-35 (9th Cir. 1991) (harm resulting from ideas and expressions

10 in a book do not give rise to products liability claim); *Intellect Art Multimedia Inc. v. Milewski*, 899

11 N.Y.S.2d 60, at *7 (2009) (dismissing products liability claim because court "not persuaded that

12 this website" is a "product").  Rather, "[t]he basis of strict liability is the furnishing of defective

13 *goods*."  *Brooks v. Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611, 1624-25 (1989)

14 (apartment complex design that lacked a fence was not a good for purposes of products liability);

15 *see also Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 172–73 (D. Conn. 2002) (interactive

16 video game not product for products liability and collecting cases); *James v. Meow Media, Inc.*, 90

17 F.Supp.2d 798, 810 (W.D.Ky.2000) ("intangible thoughts, ideas and messages contained within

18 games, movies, and website materials are not products for the purposes of strict products liability").

19          **3.    Plaintiff fails to state a claim under any negligence theory.**

20          In Counts V-VII, Plaintiff purports to bring four species of negligence claims—negligence,

21 gross negligence, negligent infliction of emotional distress, and negligence *per se*.  None are viable.

22          **First,** Plaintiff's claims for negligent infliction of emotional distress and negligence *per se*

23 must be dismissed because they are not independent causes of action under California law.  *See*

24 *Sinclair for Tucker v. Twitter, Inc.*, 2019 WL 10252752, at *7 (N.D. Cal. March 20, 2019)

25 ("[negligent infliction of emotion distress] is not an independent claim, but is simply a claim of

26 negligence); *J.B.*, 2020 WL 4901196, at *11 (concluding "negligence *per se* is not a separate cause

27 of action").  **Second,** Plaintiff's remaining negligence claims both fail because Plaintiff has not

28 alleged that Twitter owed him any legal duty.  "To state a claim for negligence, Plaintiff must plead

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

**DEFENDANT TWITTER, INC.'S MOTION TO**
**DISMISS PLAINTIFF'S COMPLAINT**
**Case No. 3:21-cv-00485-JCS**

(1) a duty owed by Twitter, (2) a breach of that duty, (3) causation, and (4) damages." *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 WL 5304852, at *8–9 (N.D. Cal. Oct. 24, 2018).[17]   But the Complaint contains no facts suggesting Twitter owed Plaintiff a legally cognizable duty.  To be sure, Plaintiff contends "Twitter had a duty to protect" him because it had "actual knowledge" of the Videos and failed to take it down.  (¶ 143; *see also* ¶¶ 83, 97, 143-44.)  But where a defendant "merely fails to take affirmative action, [the] defendant is not liable [in negligence] absent a special relationship" with the plaintiff.  *AF Holdings, LLC v. Doe*, 2012 WL 4747170, at *5 (N.D. Cal. Oct. 3, 2012) (dismissing negligence claim alleging nonfeasance where no special relationship existed with plaintiff); *Dyroff*, 934 F.3d at 1101 (concluding that "nonfeasance" does not "create[] an ordinary duty of care where none may have existed before").  Plaintiff does not allege any facts from which the Court could conclude that a special relationship existed between Twitter and Plaintiff.  In fact, Plaintiff does not even allege that he is a Twitter user.  And, even if he were a user, courts routinely decline to find special relationships between users and websites. *E.g.*, *Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content."); *Doe v. MySpace*, 474 F. Supp. 2d 843, 846, 852 (W.D. Tex. 2007) (dismissing negligence claims because Myspace did not owe a legal duty to parents of a teenager who was raped to protect their daughter from criminal acts "nor to institute reasonable safety measures on its website").

### 4.     Plaintiff fails to state a claim under Cal. Civ. Code § 1708.85.

In Count IX, Plaintiff alleges Twitter violated California Civil Code section 1708.85, which creates a private right of action against a person "who intentionally distributes" private sexually explicit materials "without [Plaintiff's] consent" if, among other things "the person knew that the other person had a reasonable expectation that the material would remain private."  § 1708.85(a).  However, the statute expressly precludes liability if "[t]he distributed material was previously distributed by another person."  Cal. Civ. Code § 1708.85(c)(6).

The Complaint alleges no facts from which the Court could infer that Twitter "intentionally

---

[17] "A claim of gross negligence requires[] . . . allegations of 'conduct by the defendant involving either want of even scant care or an extreme departure from the ordinary standard of conduct.'" *Id.*

1    distribute[d]" the Videos; rather, it makes a conclusory allegation that "[b]y refusing to remove or

2    block [the Videos], Twitter intentionally distributed" them.  (¶ 163.)  This is insufficient to state a

3    cause of action.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action,

4    supported by mere conclusory statements, do not suffice" to satisfy Rule 8).  The plain language of

5    the statute also precludes liability here.  Accepting the allegations of the Complaint as true, the

6    Videos were distributed first on an entirely different platform—Snapchat.  And, at a minimum, they

7    were previously distributed by two individuals (whom Plaintiff does not allege were the

8    individual(s) who trafficked him) months before Twitter ever became aware of the Videos—

9    @StraightBross and @fitmalesblog.

10   **V.     CONCLUSION**

11        FOSTA exempts civil claims under Section 1595 from CDA § 230 immunity only where a

12   service provider knowingly and affirmatively assists or facilitates a sex trafficking venture.  It does

13   not otherwise change the existing CDA § 230 framework.  And here, Plaintiff does not adequately

14   plead that Twitter knowingly and affirmatively participated in any sex trafficking venture.

15   Accordingly, all of Plaintiff's claims are barred by CDA § 230, and for all of the reasons above,

16   this Court should grant the Motion and dismiss the case against Twitter in its entirety, with

17   prejudice.

18

19
     Dated: March 10, 2021                          COOLEY LLP
20

21
                                                    By: */s/ Michael G. Rhodes*
22                                                      Michael G. Rhodes

23                                                  *Attorneys for Defendant*
24                                                  *Twitter, Inc.*

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS