COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
4401 Eastgate Mall
San Diego, California  92121
Telephone:     (858) 550-6000
Facsimile:     (858) 550-6420

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TWITTER, INC.,<br><br>                    Defendants. | Case No. 3:21-cv-00485-JCS<br><br>**DEFENDANT TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:     July 30, 2021<br>Hearing Time:     9:30 a.m.<br>Judge:     Honorable Joseph C. Spero |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 3

    A.  CDA § 230 ................................................................................................................ 3

        1.  Under CDA § 230, internet platforms are immune from suit based on the failure to remove offensive third-party content. ............................ 3

        2.  FOSTA creates a very limited exception to Section 230's broad grant of immunity in specific cases of criminal misconduct. ................... 4

    B.  Twitter's Commitment to Fight CSE and Sex Trafficking ..................................... 5

    C.  Plaintiffs' Allegations ............................................................................................ 7

III. LEGAL STANDARD ......................................................................................................... 8

IV. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW ............................................. 8

    A.  Twitter Is Immune Under CDA § 230 ................................................................... 8

        1.  Twitter is an interactive computer service provider. ................................. 9

        2.  Plaintiffs seek to hold Twitter liable as the publisher of content supplied by third parties. ........................................................................... 9

    B.  The FAC Does Not Allege Any Actionable Exemption to CDA § 230's Broad Grant of Immunity ...................................................................................... 11

        1.  Twitter did not engage in Plaintiffs' alleged sex trafficking. ................... 12

        2.  Twitter did not knowingly benefit from knowingly facilitating a sex trafficking venture. ............................................................................. 12

            a.  Twitter did not participate in any type of venture with the Perpetrators. ................................................................................. 13

            b.  Twitter did not knowingly receive any benefits because of a sex trafficking venture. .......................................................... 15

            c.  Twitter did not know of the alleged sex trafficking. ..................... 17

    C.  The FAC Does Not State a Claim Under Section 1595. ...................................... 19

        1.  Twitter did not exploit Plaintiffs. ............................................................. 19

        2.  Twitter did not participate in a venture with the Perpetrators. ................. 19

        3.  There are no facts suggesting Twitter should have known of Plaintiffs' alleged sex trafficking. .......................................................... 20

    D.  Plaintiffs' Remaining Claims Are Barred by CDA § 230 ................................... 21

    E.  Plaintiffs Have Not and Cannot Plead Facts to Support the Remaining Claims. .................................................................................................................. 22

        1.  Plaintiffs fail to state a claim under 18 U.S.C. §§ 2258A & 2258B. ........ 22

        2.  Plaintiffs fail to state a California products liability claim. ..................... 22

        3.  Plaintiffs fail to state a claim under any negligence theory. .................... 23

        4.  Plaintiffs fail to state a claim under Cal. Civ. Code § 1708.85. ............... 24

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1

**TABLE OF CONTENTS**
(continued)

2
**Page**

3
       5.      Plaintiffs fail to state a claim under Bus. & Prof. Code § 17200.............. 24

4
V.     CONCLUSION ............................................................................................................. 25

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F.Supp.3d 921 (D. Or. Sept. 8, 2020) ................................................................. 18

*A.B. v. Marriott Int'l, Inc.*,
455 F.Supp.3d 171 (E.D. Pa. 2020) ........................................................................... 20

*A.B. v. Wyndham Hotels & Resorts, Inc. et al.*,
2021 WL 1235241 (D. Or. Mar. 31, 2021) ................................................................ 15

*Abcarian v. Levine*,
972 F.3d 1019 (9th Cir. 2020) ................................................................................... 22

*AF Holdings, LLC v. Doe*,
2012 WL 4747170 (N.D. Cal. Oct. 3, 2012) .............................................................. 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 8, 19, 24

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
2020 WL 4368214 (N.D. Cal. July 30, 2020) ............................................................ 13

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ..................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 8, 16

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*,
727 F.3d 917 (9th Cir. 2013) ....................................................................................... 9

*Brooks v. Eugene Burger Management Corp.*,
215 Cal. App. 3d 1611 (1989) ................................................................................... 23

*Caraccioli v. Facebook, Inc.*,
700 Fed. Appx. 588 (9th Cir. 2017) ........................................................................... 22

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ................................................................................... 22

*David v. Weinstein Co. LLC*,
431 F.Supp.3d 290 (S.D.N.Y. 2019) .......................................................................... 15

*Doe II v. MySpace Inc.*,
175 Cal. App. 4th 561 (2009) .................................................................................... 22

*Doe v. Bates*,
2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ........................................................... 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Doe v. Kik Interactive*,
  482 F.Supp.3d 1242 (S.D. Fla. 2020) ............................................................. *passim*

4

*Domen v. Vimeo, Inc.*,
  991 F.3d 66 (2d Cir. 2021) ................................................................................. 9

5

6

*Dyroff v. Ultimate Software Grp., Inc.*,
  2017 WL 5665670 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019) 10, 11, 24

7

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ................................................................. 3, 9, 10, 11

8

9

*Force v. Facebook, Inc.*,
  934 F.3d 53 (2d Cir. 2019) ............................................................................ 9, 11

10

*Geiss v. Weinstein Co. Holdings LLC*,
  383 F.Supp. 3d 156 (S.D.N.Y. 2019) ............................................. 13, 15, 16, 17

11

*Goddard v. Google, Inc.*,
  640 F. Supp. 2d 1193 (N.D. Cal. 2009) ......................................................... 10

12

13

*Gonzalez v. Google, Inc.*,
  282 F.Supp.3d 1150 (N.D. Cal. 2017) ...................................................... 10, 11

14

*Greencycle Paint, Inc. v. Paintcare, Inc.*,
  2016 WL 1402845 (N.D. Cal. Apr. 8, 2016) ................................................. 25

15

16

*Griff v. Woejeckloski*,
  2017 WL 8185857 (C.D. Cal. March 20, 2017) ............................................. 22

17

*Hernandez v. Avis Budget Grp., Inc.*,
  2017 WL 6406838 (E.D. Cal. Dec. 15, 2017) ................................................ 22

18

19

*Holomaxx Techs. v. Microsoft Corp.*,
  783 F.Supp.2d 1097 (N.D. Cal. 2011) ............................................................. 9

20

*Holt v. Facebook, Inc.*,
  240 F.Supp.3d 1021 (N.D. Cal. 2017) ........................................................... 24

21

22

*Huynh v. Quora, Inc.*,
  2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ............................................. 25

23

*Igbonwa v. Facebook, Inc.*,
  2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) (Spero, J.), *aff'd*, 786 F. App'x 104 (9th Cir.
  2019) ................................................................................................... 3, 8, 9, 10

24

25

*Intellect Art Multimedia Inc. v. Milewski*,
  899 N.Y.S.2d 60 (2009) ................................................................................. 23

26

27

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ......................................... 14, 20, 21, 23

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Jabagat v. Lombardi*,
   2015 WL 11004900 (S.D. Miss. Jan. 30, 2015).........................................................................16

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014)..........................................................................................................8

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
   2013 WL 6816174 (W.D. Ark. Dec. 24, 2013)..................................................................15, 17

*Lawson v. Rubin*,
   2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018)...........................................................................18

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) ....................................................................................25

*M. L. v. Craigslist Inc.*,
   2020 WL 6434845 (W.D. Wash. Apr. 17, 2020)......................................................................21

*M.A. v. Wyndham Hotels & Resorts*, *Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019).................................................................13, 19, 20, 21

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011).....................................................................................21

*Noble v. Weinstein*,
   335 F.Supp.3d 504 (S.D.N.Y. 2018).......................................................................13, 15, 16, 18

*Pennie v. Twitter, Inc.*,
   281 F.Supp.3d 874 (N.D. Cal. 2017) (Spero, J.)............................................................9, 10, 11

*Riggs v. MySpace, Inc.*,
   2009 WL 10671689 (C.D. Cal. Sept. 17, 2009), *reversed in part on other grounds*, 444 Fed.
   Appx. 986 (9th Cir. 2011) ............................................................................................................21

*Riggs v. MySpace, Inc.*,
   444 Fed. Appx. 986 (9th Cir. 2011) .............................................................................................9

*Ripple Labs Inc. v. YouTube LLC*,
   2020 WL 6822891 (N.D. Cal. Nov. 20, 2020)..........................................................................22

*Sinclair for Tucker v. Twitter, Inc.*,
   2019 WL 10252752 (N.D. Cal. Mar. 20, 2019) ........................................................................23

*Soule v. Gen. Motors Corp.*,
   8 Cal. 4th 548 (1994) ...................................................................................................................23

*United States v. Afyare*,
   632 F. App'x 272 (6th Cir. 2016) ..................................................................................13, 14, 15

*United States v. Todd*,
   627 F.3d 329 (9th Cir. 2010).......................................................................................................12

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*United States v. Turkette*,
   452 U.S. 576 (1981) ............................................................................................... 13

*Washington v. Deleon*,
   2019 WL 11691424 (N.D. Cal. July 9, 2019) ........................................................ 13

*Wilson v. Midway Games, Inc.*,
   198 F.Supp.2d 167 (D. Conn. 2002) ...................................................................... 23

*Winter v. G.P. Putnam's Sons*,
   938 F.2d 1033 (9th Cir. 1991) ............................................................................... 23

*Woodhull Freedom Found. v. United States*,
   334 F.Supp.3d 185 (D.D.C. 2018), *rev'd on other grounds,* 948 F.3d 363 (D.C. Cir. 2020)..18

*Worldwide Media, Inc. v. Twitter, Inc.*,
   2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ....................................................... 23

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ................................................................................... 3

**Statutes**

18 U.S.C.
   § 1591 ....................................................................................................................... 4
   § 1591(a) ......................................................................................................... 2, 5, 12
   § 1591(a)(1) ......................................................................................................... 7, 12
   § 1591(e)(3) ............................................................................................................ 18
   § 1591(e)(4) ............................................................................................................ 14
   § 1591(e)(6) ............................................................................................................ 13
   § 1595 ....................................................................................................................... 4
   § 1595(a) ................................................................................................................. 19
   § 2258A .................................................................................................................. 22

47 U.S.C.
   § 230(c)(1) ................................................................................................................ 3
   § 230(e)(3) ................................................................................................................ 3
   § 230(e)(5)(A) ..................................................................................................... 4, 11

Cal. Civ. Code
   § 1708.85(a) ........................................................................................................... 24
   § 1708.85(c)(6) ....................................................................................................... 24
   § 1708.85(h) ........................................................................................................... 21

Pub. L. No. 115-164, 132 Stat. 1253 ............................................................................... 4

**Other Authorities**

164 Cong. Rec. S1849-08, S1852-60 (daily ed. Mar. 21, 2018) ........................... 4, 5, 18

H.R. Rep. No. 115-572, pt. 1 (2018) ....................................................................... 4, 5, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT
Case No. 3:21-cv-00485-JCS**

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that on July 30, 2021, at 9:30 a.m., or as soon thereafter as the motion may be heard in Courtroom F, 15th Floor of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Twitter, Inc. ("Twitter") will and hereby does move to dismiss the causes of action in Plaintiff John Doe #1 and John Doe #2's ("Plaintiffs") First Amended Complaint filed on April 7, 2021 (ECF No. 39) (the "FAC"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings on file in this matter, oral argument of counsel, and such other materials and argument as may be presented in connection with the hearing of the motion.

**STATEMENT OF RELIEF SOUGHT**

Twitter respectfully seeks an order dismissing the FAC's causes of action with prejudice for failure to state a claim upon which relief can be granted.

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Twitter is entitled to immunity from all of Plaintiffs' claims under Section 230 of the Communications Decency Act ("CDA § 230"), 47 U.S.C. § 230.

2.     Whether the FAC fails to state a claim for violation of 18 U.S.C. § 2258A, violation of California Business and Professions Code § 17200, California products liability, negligence, gross negligence, negligence per se, and negligent infliction of emotional distress, and under 18 U.S.C. § 1595 and Cal. Civ. Code § 1708.85.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

## I.    INTRODUCTION

According to Plaintiffs' First Amended Complaint ("FAC"), in 2017 when Plaintiffs were minors, they suffered appallingly at the hands of unknown individuals ("Perpetrators"), who manipulated them into making and sharing explicit pictures and videos of themselves. The FAC describes a series of horrific, despicable acts by the Perpetrators. But this case ultimately does not seek to hold the Perpetrators accountable for the suffering they inflicted on Plaintiffs. Rather, it seeks to hold Twitter liable because when a compilation of that explicit content (the "Videos") was later posted on Twitter's platform, Twitter allegedly did not act quickly enough to remove it.

Twitter has zero tolerance for child sexual exploitation ("CSE") content on its platform. Twitter vigorously combats CSE through a combination of methods, including review of user reports and the use of proprietary technology to proactively identify and remove such material. During the six-month period from January to June 2020, Twitter suspended 438,809 accounts for violating its policies prohibiting CSE material, and proactively identified approximately 399,316 of those accounts using its own technological means.

But, unfortunately, given the sheer volume of Tweets posted every day on Twitter's platform (hundreds of millions of Tweets posted by over 190 million daily users), it is simply not possible for Twitter—or the individuals who enforce its Rules and policies—to find and remove all offending content immediately or accurately in all cases. Congress recognized the inherent challenges of large-scale, global content moderation for platforms, including the potential for limitless liability based on a platform's alleged "knowledge" of offensive content if it chose to try to screen out that material but was unable to root out all of it. To encourage platforms to moderate and remove offensive content without risking incurring potentially ruinous legal costs, in 1996 Congress enacted Section 230 of the Communications Decency Act ("CDA § 230"), granting online platforms like Twitter broad immunity from legal claims arising out of the failure to remove content. Given that Twitter's alleged liability here rests on its failure to remove content quickly enough from its platform, dismissal of the FAC with prejudice is warranted on this ground alone.

While Congress has provided for very narrow exceptions to its otherwise broad grant of immunity under CDA § 230, Plaintiffs have not alleged facts that would qualify for the limited

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

statutory exception under 47 U.S.C. § 230(e)(5)(A). In 2018, Congress passed the Fight Online Sex Trafficking Act ("FOSTA") to combat several notorious websites that were designed to promote prostitution and facilitate sex trafficking. FOSTA created a narrow exception to CDA § 230 immunity that permits trafficking victims to pursue civil claims under 18 U.S.C. § 1595 ("Section 1595") against an interactive computer service provider where the provider violates 18 U.S.C. § 1591 ("Section 1591"), by directly engaging in sex trafficking, or "knowingly . . . benefit[ing] . . . from participation in a [sex trafficking] venture." 18 U.S.C. § 1591(a)(1)-(2). The language of the exception was carefully targeted to remove civil immunity for the few criminal websites that, unlike Twitter here, were deliberately and knowingly assisting and profiting from reprehensible crimes. FOSTA's language, its legislative history, and the pre-existing case law on Section 1591 all point to the same conclusion: civil claims can only proceed against sex traffickers and those who knowingly benefit from their affirmative participation in a sex trafficking venture. Congress never intended for online platforms like Twitter that proactively act against such activity to be sued for their inadvertent failure to remove content.

Plaintiffs have now amended their pleading, but like its predecessor, the FAC does not come close to meeting the specific and exacting criminal standard of Section 1591. While the FAC adds new allegations regarding Twitter's general efforts to remove CSE material from its platform, it still lacks any facts showing that Twitter affirmatively participated in any kind of venture with the Perpetrators, let alone a sex trafficking (i.e., commercial sex) venture. Although the FAC alleges that John Doe #1 and his mother reported the Videos to Twitter, it does not allege, as required to establish a violation of Section 1591, any facts establishing that Twitter knew that Plaintiffs were victims of sex trafficking or that the Videos were evidence of this crime. Nor does the FAC allege any connection between the Perpetrators and Twitter or that Twitter received any benefits because of the Videos. And, most importantly, it remains unchanged that Twitter did remove the Videos and suspend the accounts that had posted them.[1] That the offending content was not taken down immediately does not make Twitter liable under any applicable law.

---

[1] Twitter understands that the fact that anyone is able to view this type of material for any length of time can impact victims of the type of crimes at issue here. Twitter agrees that the Perpetrators should be held accountable for their crimes involving Plaintiff.

Cooley LLP
Attorneys at Law
San Francisco

2

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

1    Twitter strives to prevent the proliferation of CSE, but it is not infallible. Mistakes or delays,

2    however, do not make Twitter a knowing participant in a sex trafficking venture, as Plaintiffs here

3    have alleged. Plaintiffs do not (and cannot) allege, as they must, that Twitter ever had any actual

4    connection to the Perpetrators, took any part in their crimes, or benefitted from them. Thus, even

5    accepting all of Plaintiffs' allegations as true, there is no legal basis for holding Twitter liable for

6    the Perpetrators' despicable acts.

7    The FAC cannot show that Twitter violated Section 1591 and therefore it is immune from

8    all of Plaintiff's claims under CDA § 230. Even if Twitter was not immune under CDA § 230, the

9    FAC contains a number of other significant pleading deficiencies that mandate dismissal.

10    Accordingly, Twitter respectfully asks this Court to dismiss the FAC with prejudice.

11   **II.      BACKGROUND**

12        **A.      CDA § 230**

13            **1.      Under CDA § 230, internet platforms are immune from suit based on
                       the failure to remove offensive third-party content.**

14

15    Congress enacted CDA § 230 to ensure that interactive computer service ("ICS") providers

16    would never have to choose "between taking responsibility for all messages and deleting no

17    messages at all," which presents such providers a "grim" and illusory choice. *Fair Hous. Council*

18    *of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162-63 (9th Cir. 2008). To that

19    end, CDA § 230 creates broad immunity for claims against ICS providers based on content created

20    by users: "No provider . . . of an interactive computer service shall be treated as the publisher or

21    speaker of any information provided by another information content provider." 47 U.S.C. §

22    230(c)(1). In other words, CDA § 230 bars all causes of action that seek to hold ICS providers like

23    Twitter liable for not removing content created by a third-party. *Igbonwa v. Facebook, Inc.*, 2018

24    WL 4907632, at *5-7 (N.D. Cal. Oct. 9, 2018) (Spero, J.), *aff'd*, 786 F. App'x 104 (9th Cir. 2019).

25    Congress also expressly preempted all state laws that are inconsistent with this immunity. 47 U.S.C.

26    § 230(e)(3). This broad immunity assures ICS providers that they can self-police without fear that

27    failing to remove offensive content would subject them to overwhelming liability. *Zeran v. Am.*

28    *Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir. 1997); *Roommates*, 521 F.3d at 1162-63.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

1

**2.      FOSTA creates a very limited exception to Section 230's broad grant of immunity in specific cases of criminal misconduct.**

2

3    In 2018, Congress enacted FOSTA in response to reports about the proliferation of a small

4 but growing number of websites that were deliberately facilitating prostitution and sex trafficking,

5 but using CDA § 230 to shield themselves from liability for their misconduct. Pub. L. No. 115-164,

6 132 Stat. 1253; *see* H.R. Rep. No. 115-572, pt. 1, at 3-5 (2018) ("[O]nline classified sites like

7 Backpage.com, Eros, [and] Massage Troll…have gone beyond merely hosting advertisements, []

8 and have purposely created platforms designed to facilitate prostitution and sex trafficking."). Most

9 infamously, the site known as Backpage "had knowingly concealed evidence of criminality by

10 systematically editing its 'Adult' ads [by] automatically delet[ing] incriminating words [and] then

11 manually delet[ing] incriminating language that filters missed." *Id*. Worse still, Backpage's

12 business model relied almost entirely on advertisements "designed to sell children for sex." *See* 164

13 Cong. Rec. S1849-08, S1852-60 (daily ed. Mar. 21, 2018).

14    To prevent sites like Backpage from misusing CDA § 230's broad grant of immunity,

15 FOSTA created a very narrow exception: CDA § 230 was amended to permit suit under 18 U.S.C.

16 § 1595, which creates a private right of action for victims of sex trafficking, ***but only*** "if the conduct

17 underlying the claim constitutes a violation of [S]ection 1591," the criminal statute prohibiting sex

18 trafficking. 47 U.S.C. § 230(e)(5)(A); *Doe v. Kik Interactive*, 482 F.Supp.3d 1242, 1251 (S.D. Fla.

19 2020) ("FOSTA permits civil liability for websites only if the conduct underlying the claim

20 constitutes a violation of section 1591."). This limitation is crucial as Section 1591 has more

21 stringent *mens rea* and required elements to meet than Section 1595. *Compare* 18 U.S.C. § 1591

22 (prohibiting "***knowingly***. . . benefit[ting], financially or by receiving anything of value" from

23 "***knowingly*** assisting, supporting, or facilitating" a sex trafficking venture) *with* 18 U.S.C. § 1595

24 (applying to "whoever knowingly benefits, financially or by receiving anything of value from

25 participation in a venture which that person knew or ***should have known*** has engaged in an act in

26 violation of this chapter").[2] The FOSTA exception therefore only applies to sex traffickers and

27

28

---

[2] All "¶" references are to the FAC, ECF No. 39, and all "Wong Decl." references are to the Declaration of Kyle C. Wong in Support of Defendant Twitter, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint filed herewith. Unless otherwise noted, all emphasis is added, and internal quotation marks and citations are omitted.

those who "knowingly. . . benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in [sex trafficking]," 18 U.S.C. § 1591(a), and only limits CDA § 230 immunity for those websites that knowingly engage in sex trafficking or knowingly facilitate sex trafficking ventures on their platforms,[3] and does not otherwise change the existing CDA § 230 framework. *Kik*, 482 F.Supp.3d at 1249-51 ("Congress only intended to create a narrow exception to the CDA for 'openly malicious actors' . . . where it was plausible for a plaintiff to allege actual knowledge and overt participation.").

The legislative record is clear that Congress intended to revoke immunity only in extreme cases (like Backpage) where the ICS provider knowingly and affirmatively facilitated sex trafficking. 164 Cong. Rec., at S1860-62 (statement of Senator Durbin ("[FOSTA] is a narrowly crafted bill that would ensure that Section 230 . . . does not provide legal immunity to websites like Backpage that knowingly facilitate sex trafficking"); *id.* (statement of Senator Schumer ("Key to my support is my understanding that this legislation would not allow nuisance lawsuits against technology companies.")). Crucially, Congress made it clear that, "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim." *See* H.R. Rep. No. 115-572, at 5. And, immunity is lost only where "the website operators knew that the [posts] involved sex trafficking." *Id.*; *see* 164 Cong. Rec., at S1853 (statement of the U.S. Department of Justice (the "DOJ") ("Under [Section 1591] prosecutors must prove that the defendant knowingly benefitted from participation in a sex trafficking venture, knew that the [post] related to commercial sex, and knew that the [post] involved a minor.").

## B.     Twitter's Commitment to Fight CSE and Sex Trafficking

Twitter operates a global communications platform that allows hundreds of millions of people around the world to join an open conversation where users view and share content about global and local events. (¶¶ 23-29.) People primarily engage on the platform by reading and posting "Tweets," which are short messages, that can be reposted or "retweeted." (¶¶ 26-27.) Users can include hashtagged keywords (#) in their Tweets to facilitate searching for information on the same

---

[3] Section 1595, on the other hand, creates civil liability (outside of the CDA § 230 context), for those who knew *or should have known* that they were participating in a sex trafficking venture. FOSTA, which contains no "should have known" language, in comparison narrows the range of permissible suits against interactive computer services.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1  topic. (*See* ¶¶ 72-77, 82.) Hundreds of millions of Tweets are posted each day. (¶ 23.)

2        Twitter's purpose is to serve the public conversation—it believes that violence, harassment,

3  and other similar behavior discourage people from expressing themselves, and ultimately diminish

4  the value of global public conversation. Accordingly, Twitter has established the Twitter Rules to

5  help ensure that everyone can participate in the public conversation freely and safely. (*See* ¶¶ 45-

6  48, 55-57.) Everyone who signs up for an account agrees to abide by the Twitter Rules and all

7  incorporated policies. Twitter's Rules unequivocally prohibit CSE material on the platform, stating

8  "[w]e have a zero-tolerance child sexual exploitation policy on Twitter."[4] (FAC Ex. A at 1.)

9        Twitter's zero-tolerance policy identifies sharing any material that "features or promotes"

10 CSE content as "one of the most serious violations of the Twitter Rules." (*Id.*) To ensure that the

11 over 190 million individuals who use its platform on a daily basis comply with its prohibition

12 against CSE, Twitter utilizes multiple tools, including reports by the public (a Twitter account is

13 not required to report CSE content, *id.* at 2), moderators who review reports of abuse and CSE

14 content, innovative technology and algorithms that proactively identify abusive content, and online

15 education and information sharing to combat online abuse.[5] (*See* ¶¶ 42-43, 55-57; Wong Decl.,

16 Exs. 1, 2.) In the period from January to June 2020 alone, Twitter suspended 438,809 accounts for

17 violating its CSE Rules. (*Id.* at Ex. 3.) 91% of those accounts were proactively identified by

18 employing internal proprietary tools and industry hash sharing initiatives. (*Id.*) Twitter is also a

19 member of the Technology Coalition, founded in 2006, which provides funding, advice, and

20 resources to the tech industry on online safety tools for children. (*Id.* at Ex. 4.) The Coalition

21 recently announced an initiative, Project Protect, which includes, *inter alia*, "establish[ing] a multi-

22 million dollar Research and Innovation Fund to build crucial technological tools . . . to eradicate

23

24 ──────────────
[4] Twitter's Rules also prohibit use of the service for or in furtherance of any unlawful purpose, including human trafficking. (Ex. 8.)

25 [5] Plaintiffs fault Twitter for reporting less CSE content to the National Center on Missing and Exploited Children ("NCMEC") than Facebook in 2019 and 2020. (¶¶ 64-67.) However, not only

26 is Facebook larger than Twitter (Facebook reportedly has 1.7 billion daily active users), the numbers listed for Facebook in NCMEC's yearly report also include reports made by its "related

27 platforms and companies." *E.g.*, Nat'l Ctr. for Missing and Exploit. Child., *2020 Reports by Electronic Service Providers (ESP)*, https://www.missingkids.org/content/dam/missingkids/get

28 help/2020-reports-by-esp.pdf (last visited May 7, 2021). This means that Facebook's number includes reports by Whatsapp, a messaging app that reportedly has over a billion daily active users, and Instagram, a picture and video sharing app that reportedly has 500 million daily active users.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

[child sexual exploitation and abuse]." (*Id.* at Ex. 5.)

### C.   Plaintiffs' Allegations

The FAC alleges that in 2017, when Plaintiffs were minors, they were tricked into sending nude photos of themselves to the Perpetrators using Snapchat, an online messaging application. (¶¶ 87-89.) According to the FAC, the Perpetrators used the photos to blackmail Plaintiffs into sending explicit videos of themselves to the Perpetrators.[6] (¶ 90.) John Doe #1, whose phone was used to send the Videos, subsequently cut off communication with the Perpetrators. (¶¶ 94-96.) The FAC alleges that one or two years later, on or about January 19 or 20, 2020, Plaintiffs learned that the Videos had been posted on Twitter. (¶¶ 105, 107.) John Doe #1 and his mother reported the Videos to Twitter using Twitter's reporting process three times beginning on January 21, 2020. (¶¶ 112-17.) They also emailed Twitter about the Videos. (¶¶ 114, 119, 123.) On January 28, 2020, Twitter informed him that it had reviewed the Videos, and did not find a violation. (¶ 120.) Sometime after, John Doe #1's mother allegedly contacted an agent of the United States Department of Homeland Security ("DHS"), who sent Twitter a takedown request. (¶ 128.) Immediately after Twitter received the request from DHS, on or about January 30, 2020—*i.e.*, nine days after receiving the first report from John Doe #1—Twitter removed the Videos and suspended the Twitter accounts that had posted them.[7] (*Id.*)

The FAC does not allege that Twitter played any role in the Perpetrators' misconduct. There is no allegation that Twitter was involved in creating the Videos, or that it knowingly provided any assistance to the Perpetrators who tricked Plaintiffs into creating the Videos. In fact, the FAC alleges that Plaintiffs were exploited at least a year **before** the Videos surfaced on Twitter, and there is no alleged connection between Twitter and the Perpetrators. The Videos were initially published on a different platform (Snapchat), and Twitter is not alleged to have taken any affirmative step to disseminate the Videos. No facts are alleged showing that any Twitter employee had actual

---

[6] Defendant assumes, for the purposes of its Motion to Dismiss only, that this alleged conduct qualifies as a primary sex trafficking violation. *See* 18 U.S.C. § 1591(a)(1).

[7] The FAC implies that Twitter did not suspend the accounts until after January 30, 2020 (¶¶ 128-29), but that is inaccurate. The @StraightBross account was banned on January 28, 2020, because of a different report. Twitter also blocked the @BrossStraight account, which appears to be a reconstitution of the @StraightBross account. (Wong Decl., Ex. 6.) Twitter's Rules prohibit creating a new account to evade permanent suspension, and will ban accounts that attempt to circumvent its enforcement actions when detected. (*Id.* at Ex. 7.)

knowledge that an adult had coerced Plaintiffs into engaging in commercial sex acts, and that the Videos were evidence of this crime. And, finally, the FAC does not allege that the Perpetrators were the Twitter users who posted the Videos. There is simply no allegation that Twitter took any affirmative act to facilitate the conduct of the Perpetrators. Plaintiffs allege only that there were complaints about the Videos, that the Videos violated Twitter's Rules, and that Twitter failed to take action to remove the Videos when it first became aware of them. But Plaintiffs have not asserted—and cannot assert—any non-conclusory allegation that Twitter's failure to remove the Videos was a knowing and affirmative act to aid a sex trafficking venture, rather than mere error.

## III.   LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" under Rule 8. *Id.* Although the court accepts factual allegations as true, this is "inapplicable to legal conclusions." *Id.* When stripped of "conclusory statement[s]," the complaint must do more than "create[] a suspicion of a legally cognizable right of action"; it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 561 (2007). Otherwise, the complaint must be dismissed. *Id.*

## IV.   PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW

### A.   Twitter Is Immune Under CDA § 230

CDA § 230 shields ICS providers like Twitter from liability for lawsuits based on decisions to publish or remove third-party content. The law confers immunity where three elements are met: (1) the defendant is an ICS provider; (2) the cause of action treats the defendant as the publisher or speaker of the content in question; and (3) someone other than the defendant provided or created the content at issue. *Igbonwa*, 2018 WL 4907632, at *5. Consistent with Congress's intention to broadly protect online platforms from suit, "close cases . . . must be resolved in favor of immunity." *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 408 (6th Cir. 2014). Courts regularly dismiss complaints with prejudice when the allegations show that the defendant is immune under CDA § 230. *E.g.*, *Igbonwa*, 2018 WL 4907632, at *7-*8 (dismissing plaintiff's claims with

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

prejudice); *Pennie v. Twitter, Inc.*, 281 F.Supp.3d 874, 892 (N.D. Cal. 2017) (same) (Spero, J.).

### 1.   Twitter is an interactive computer service provider.

Twitter is a "provider . . . of an interactive computer service" within the meaning of Section 230(c)(1). *See, e.g., Pennie*, 281 F.Supp.3d at 888. The FAC does not allege otherwise.

### 2.   Plaintiffs seeks to hold Twitter liable as the publisher of content supplied by third parties.

There is no question that third parties created the Videos and posted them to Twitter. (¶¶ 87-92, 99.) The FAC does not suggest that Twitter is anything other than an online platform through which third parties can post information.[8] *See Igbonwa*, 2018 WL 4907632, at *6 (websites that merely provide a "means by which third parties can post information" are not content developers).

It is similarly apparent that Plaintiffs' suit seeks to hold Twitter responsible "as the publisher or speaker" of the Videos. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-03 (9th Cir. 2009) ("[P]ublication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content."). All of Plaintiffs' claims are premised on the allegation that Twitter took too long to remove the Videos after John Doe #1 reported it. (¶¶ 101-128.) But merely failing to remove third-party content, even if abhorrent, is precisely what CDA § 230 immunizes. *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) ("Facebook's alleged failure to delete content from Hamas members' Facebook pages" falls "within the heartland of what it means to be the publisher of information under Section 230."); *Roommates*, 521 F.3d at 1170-71 ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). Accordingly, the second and third elements

[8]The FAC makes a number of allegations based on "information and belief," including that (i) "Twitter selectively removes" some content that violates its policies while allowing other such content to remain (¶ 50; *see also* ¶ 78), and (ii) "Twitter has not adequately used the technology that is within its power to control and effectively remove CSAM from its platform" (¶ 63), among others. (*See* ¶¶ 62, 67-69, 131.) But "[c]onclusory allegation such as these are insufficient to state a claim against [Twitter]." *See Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (rejecting plaintiff's bare "information and belief" pleading as "naked assertions"); *Holomaxx Techs. v. Microsoft Corp.*, 783 F.Supp.2d 1097, 1105 (N.D. Cal. 2011) (same). And, regardless, "selective" removal of content does not transform Twitter into an information content provider. *Riggs v. MySpace, Inc.*, 444 Fed. Appx. 986, 987 (9th Cir. 2011) (claims "arising from MySpace's decisions to delete…user profiles on its social networking website yet not delete other profiles…were precluded by" CDA § 230). Nor can "bad faith" be inferred just from Twitter's "imperfect exercise of content-policing discretion." *Domen v. Vimeo, Inc.*, 991 F.3d 66, 73 (2d Cir. 2021).

Cooley LLP
Attorneys at Law
San Francisco

9

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

1    of CDA § 230 immunity are met and this suit is barred.[9]

2         Plaintiffs cannot revive their claim by contending that Twitter is a content provider because

3    it gives users a search engine tool, which allows users to search for posts using hashtags, suggests

4    searches to users, and displays search results next to targeted advertisements. (¶¶ 31-35, 39, 72-84.)

5    Plaintiffs fail to connect these platform tools to the harm they suffered; there are no allegations that,

6    for instance, specific hashtags were used on any post involving the Videos or that any suggested

7    searches led users to view the Videos. Courts have, moreover, uniformly held that such neutral

8    tools are protected by CDA § 230 immunity.

9         **Hashtag Searching.** Courts routinely hold that ICS providers' "provision of neutral tools

10   to carry out what may be unlawful or illicit searches" by a user is immunized by CDA § 230. *E.g.*,

11   *Pennie*, 281 F.Supp.3d at 882; *Roommates*, 521 F.3d at 1169-72. This is the case even where "a

12   particular tool facilitate[s] the expression of information" and the "service provider *knows* that third

13   parties are using such tools to create illegal content." *Goddard v. Google, Inc.*, 640 F.Supp.2d 1193,

14   1197-98 (N.D. Cal. 2009). Indeed, "absent substantial affirmative conduct on the part of the website

15   creator *promoting the use of such tools for unlawful purposes*," the provision of neutral tools "is

16   fully protected by CDA immunity." *Roommates*, 521 F.3d at 1174 n.37. In *Goddard*, the court

17   found that Google's keyword search tool was neutral where users could choose keywords to search,

18   and Google did not "require advertisers to engage in illegal conduct." 640 F.Supp.2d at 1197-99.

19   So too here. The FAC does not allege that Twitter promotes or requires the use of hashtags for

20   improper purposes. In fact, it makes clear that hashtag searches rely on how users use hashtags.

21   (¶¶72-73.) Thus, Plaintiffs' claims as to the hashtag tool are barred.

22        **Search Suggestions.** Similarly, "making recommendations to website users and alerting

23   them to posts are ordinary, neutral functions of social-network websites." *E.g.*, *Dyroff v. Ultimate

24   Software Grp., Inc.*, 2017 WL 5665670, at *8-10 (N.D. Cal. Nov. 26, 2017) (dismissing

25   complaint), *aff'd*, 934 F.3d 1093 (9th Cir. 2019). In *Dyroff*, the plaintiff claimed that Ultimate

26

---

[9] Courts regularly dismiss claims based on allegations like Plaintiff's—*i.e.*, that a service provider
27   failed to remove certain third-party content—as barred by CDA § 230. *E.g.*, *Igbonwa*, 2018 WL
4907632, at *5-7 (barring claims against Facebook for not removing defamatory content posted by
28   a third party); *Gonzalez v. Google, Inc.*, 282 F.Supp.3d 1150, 1164-71 (N.D. Cal. 2017) (barring
claims against Google for "fail[ing] to do enough to remove [harmful] content").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

Software contributed to illegality because it used "algorithms and tools to collect [and] analyze" user data to "recommend and steer vulnerable users, like [plaintiff's] son, to forums frequented by drug users and dealers." 2017 WL 5665670, at *8. The court, however, disagreed because those website functionalities—*i.e.*, "algorithmic recommendations of related groups[]"—were based on "users' voluntary inputs that create[d] the content on" the website. *Id*. at *10. Twitter's alleged search suggestions function in the same manner. The FAC claims that Twitter makes suggestions based on "what the user enters into Twitter's search bar" and makes "suggestions for other hashtags that are related to [what the user inputted] and users that use the [same] hashtag." (¶¶ 80-82.) Because Twitter's algorithmic search suggestions are based on user-generated content, any claims based on this functionality are also barred by CDA § 230.

 ***Targeted Advertisements.*** An ICS provider's use of a targeted ad algorithm is also protected when there are no facts that would "suggest that [the] ad algorithm is anything but content neutral." *Gonzalez*, 282 F.Supp.3d at 1168-70. The FAC is clear that Twitter's displayed advertisements are based solely on "*user-defined* criteria." *See Roommates*, 521 F.3d at 1169 (emphasis original). Plaintiffs allege that "Twitter display[s] ads about things [a user has] already shown interest in" by analyzing the "[user's] activity on Twitter" and "the information [the user] provide[s] to Twitter." (¶ 32.) Thus, to the extent Plaintiff's claims are based on Twitter's use of targeted ads, they are squarely within the category of claims barred by CDA § 230. *E.g.*, *Pennie*, 281 F.Supp.3d at 890 (dismissing claim premised on Twitter's use of targeted ads that were allegedly "based on what is known about the viewer and what the viewer is looking at"); *Force*, 934 F.3d at 65 (CDA § 230 barred claims based on "Facebook's advertising algorithms [that] allow advertisers to target ads to its users who are likely most interested in those ads").

## B. The FAC Does Not Allege Any Actionable Exemption to CDA § 230's Broad Grant of Immunity

 Congress has lifted CDA § 230 immunity only in limited, narrow circumstances, including where the ICS provider itself violates Section 1591. 47 U.S.C. § 230(e)(5)(A); *Kik*, 482 F.Supp.3d at 1249-51. Section 1591 punishes (1) primary violators who directly engage in sex trafficking; and (2) secondary participants who "***knowingly*** . . . benefit[], financially or by receiving anything of

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

value, from participation in a venture" with a primary violator. 18 U.S.C. § 1591(a). "Participation in a venture" is expressly defined as "knowingly assisting, supporting, or facilitating [sex trafficking]." *Id.* at § 1591(e)(4).

Plaintiffs claim that Twitter is both a primary violator and a secondary participant under Section 1591. (¶¶ 133-55.) Neither claim has merit.

### 1.      Twitter did not engage in Plaintiffs' alleged sex trafficking.

Nothing in the FAC supports that Twitter is a sex trafficker, i.e., a primary violator of Section 1591. To plead a primary violation, a plaintiff must allege that the defendant "provide[d], obtain[ed], [and] maintain[ed] . . . a *person*" knowing that he or she "will be . . . cause[d]" to engage in a commercial sex act.[10] 18 U.S.C. § 1591(a)(1). Here, Plaintiffs allege only that "Twitter knowingly provided, obtained, and maintained the *Videos*," not Plaintiffs. (¶ 141.) This does not meet the definition of a primary sex trafficking violation. *See* 18 U.S.C. § 1591(a)(1).

### 2.      Twitter did not knowingly benefit from knowingly facilitating a sex trafficking venture.

Plaintiffs also contend that Twitter is a secondary participant under Section 1591, which requires Plaintiffs to plead that Twitter "knowingly . . . benefit[ed] . . . from participation in a venture which has engaged in [sex trafficking] in violation of [Section 1591(a)(1)]." 18 U.S.C. § 1591(a)(2). FOSTA amended Section 1591 to expressly define "participation in a venture" as "*knowingly* assisting, supporting, or facilitating" a primary violation. *Id.* § 1591(e)(4). Here, the FAC appears to contend that Twitter "knowingly" participated in a venture with the Perpetrators based on either (i) Twitter's initial failure to find a violation of its policies after reviewing the Video, or (ii) Twitter's nine-day delay in removing the Videos. (¶¶ 112-29, 144-55.) Regardless of the theory, such conduct does not constitute a violation of Section 1591(a)(2) for three reasons. *First*, Plaintiffs do not allege the existence of any type of venture between Twitter and any party that has a common purpose, much less facts suggesting "that [Twitter] actually participated in a

---

[10] For both a primary and secondary violation, Section 1591 also requires a defendant to know that the victim "will *in the future* [be] cause[d] . . . to engage in prostitution." *See United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010). Plaintiffs cannot plead that Twitter had such knowledge as the FAC alleges that Plaintiffs had cut off contact with the Perpetrators before the Videos were posted on Twitter's platform. (¶¶ 94-96.)

CooLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

sex-trafficking venture" that had the common purpose of trafficking Plaintiffs. *United States v. Afyare*, 632 F. App'x 272, 283-86 (6th Cir. 2016) (emphasis original); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *3 (N.D. Cal. July 30, 2020) (analyzing the elements of a Section 1591 violation and following *Afyare*). **Second**, there are no facts indicating Twitter received a benefit "because of" the alleged sex trafficking venture, let alone that Twitter knowingly received it. *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019). **Third**, the FAC does not contain any allegation that Twitter had actual knowledge that Plaintiffs were victims of sex trafficking or that it knew the Videos contained evidence of this. (*See* ¶¶ 152-54; *Noble v. Weinstein*, 335 F.Supp.3d 504, 523-24 (S.D.N.Y. 2018) (quoting *Afyare* and concluding that a defendant must know of the specific primary violation to be liable as a secondary participant under Section 1591).)

### a.   Twitter did not participate in any type of venture with the Perpetrators.

The FAC fails to plausibly allege (1) the existence of any type of venture between Twitter and the Perpetrators or (2) that Twitter made a single affirmative act to further Plaintiffs' alleged sex trafficking.

***No Venture.*** Plaintiffs do not allege a single fact to support the existence of a venture between Twitter and the Perpetrators. A "venture" is defined as "any group of two or more individuals ***associated in fact***." 18 U.S.C. § 1591(e)(6).[11] Courts have interpreted this to mean in the context of Section 1595 claims—which has a lower *mens rea* standard than Section 1591—that a plaintiff must "at least" allege facts indicating a "continuous [] relationship" between each member of the venture "such that it would appear [they] have established a pattern of conduct or could be said to have a tacit agreement." *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 970-71 (S.D. Ohio 2019). In *M.A.*, for example, the court found a "venture" because the plaintiff alleged she saw the beneficiary defendant and her trafficker "exchanging high-fives . . . while speaking about 'getting this thing going again.'" 425 F.Supp.3d at 970-71. The FAC here,

---

[11] "Associated in fact" is a term of art, and in the context of civil claims premised on violations of the Racketeering Influenced and Corrupt Organizations Act, it means a group of people who associate together, whether "formal[ly] or informal[ly]," for a "common purpose." *Washington v. Deleon*, 2019 WL 11691424, at *5-*6 (N.D. Cal. July 9, 2019); *United States v. Turkette*, 452 U.S. 576, 583 (1981) (noting that "associated in fact" means "a group of persons associated together for a common purpose of engaging in a course of conduct").

in contrast, does not allege any facts showing a continuous relationship that would establish a pattern of conduct or a tacit agreement between Twitter and any other person. For instance, Plaintiffs do not claim that the Perpetrators Tweeted the Videos. (¶ 99 (alleging that the Videos "surfaced" on Twitter).) Nor do they allege that the Perpetrators used Twitter in any way to further their illicit behavior. And, they do not claim that whoever posted the Videos on Twitter knew about or had anything to do with the sex trafficking that led to the creation of the Videos. The absence of any fact connecting Twitter in any way with anyone who knew about the underlying crime—which, again, is the exploitation that resulted in the creation of the Videos—is fatal to Plaintiffs' ability to plead the existence of a venture involving Twitter even under the lower standard of Section 1595. *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20, 2020) (rejecting Section 1595 claim where "there [was] no factual basis pled" that made it plausible that a venture existed between Craigslist and plaintiff's traffickers).[12]

　　　　***No Active Participation.*** Twitter is not liable as a secondary participant under Section 1591 because it did not "knowingly assist[], support[], or facilitate[] a [primary] violation." 18 U.S.C. § 1591(e)(4). As the Sixth Circuit, in a seminal decision, described:

> [C]onsider a hypothetical defendant who joins a soccer team with some sex traffickers, who sponsor the team financially [] using the money they generate from sex trafficking activities. And assume that the sex traffickers do not conceal the source of this money from the rest of the team. . . Ignoring the reprehensible amorality of our hypothetical defendant, who knowingly participates on a soccer team funded by sex trafficking money, the question is whether Congress criminalized his conduct in § 1591(a)(2). The district court thought not and. . . would require that a defendant actually participate and commit some "overt act" that furthers the sex trafficking aspect of the venture. . . We agree with the district court and find that § 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship.

*Afyare*, 632 F. App'x at 286. Thus, the law does not punish a defendant for participation in a lawful venture with sex traffickers, or knowingly but passively receiving the financial benefits of sex trafficking. Rather, liability arises only when a defendant makes "some ***overt act that furthers the sex trafficking aspect of the venture.***" *Afyare*, 632 F. App'x at 286 ("[T]he statute did not

---

[12] Even if Plaintiffs had alleged that the Perpetrators posted the Videos on Twitter, that by itself is still insufficient to plead the existence of a venture between the Perpetrators and Twitter. *See J.B.*, 2020 WL 4901196, at *10 ("Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site."). For instance, no one would say that Twitter has "participated in a restaurant venture" just because it permits a restaurant to post a Tweet promoting its menu.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

criminalize a defendant's mere negative acquiescence."); *Geiss*, 383 F.Supp.3d at 169 ("participation" requires "affirmative conduct furthering the sex-trafficking venture"); *Kik*, 482 F.Supp.3d at 1251 (Section 1591 "requires . . . active participation in sex trafficking"); *Noble*, 335 F.Supp.3d at 524 ("Because guilt, or in this case liability, cannot be established by association alone, Plaintiff must allege specific conduct that furthered the sex trafficking venture").

The FAC alleges no facts suggesting that Twitter actively participated in Plaintiffs' alleged exploitation or took any overt act to further it. The only parties alleged to have affirmatively participated in the exploitation of Plaintiffs are the Perpetrators. (¶¶ 87-96.) Twitter was not involved in creating the Videos; indeed, Plaintiffs concede the Videos were created years earlier on an entirely different platform. (*Id.*) There is no allegation that Twitter took any affirmative acts to disseminate the Videos. Nor is there any allegation that Twitter helped to develop or create the Tweet that included the Videos. Plaintiffs' claim is instead based solely on Twitter's alleged failure to remove the Videos. (*E.g.*, ¶ 102 (alleging that Twitter "did not take action against the @StraightBross account"); *see also* ¶¶ 112-24, 129.) Indeed, Plaintiffs repeatedly and incorrectly fault Twitter for not doing enough to remove abusive content on its platform and prevent the use of its neutral tools for illegal purposes even though Plaintiffs never allege a connection between those tools and what happened to Plaintiffs. (¶¶ 42-50, 55-84.) Such "negative acquiescence" does not, as a matter of law, constitute a violation of Section 1591. *Afyare*, 632 F. App'x at 286 (to find otherwise would "create a vehicle to ensnare conduct that the statute never contemplated"); *A.B. v. Wyndham Hotels & Resorts, Inc. et al.*, 2021 WL 1235241, at *7 (D. Or. Mar. 31, 2021) ("[T]he [law] does not impose an affirmative duty to police and prevent sex trafficking."); *cf. David v. Weinstein Co. LLC*, 431 F.Supp.3d 290, 307 (S.D.N.Y. 2019) (allegation that defendant "failed to act to prevent harm" were "insufficient to show that [defendant] engaged in any affirmative act"). This pleading failure is fatal to Plaintiffs' claim here.

### b. Twitter did not knowingly receive any benefits because of a sex trafficking venture.

Section 1591 also requires "a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual . . . knowledge of that causal relationship." *Geiss*, 383 F.Supp.3d at 169; *Kolbek v. Twenty First Century Holiness Tabernacle*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

*Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013). Applying this element, courts have required that any "benefit" gained by the defendant be derived from "participation in the sex trafficking act itself," not just a general commercial benefit from the operation of one's business. *See, e.g.*, Noble, 335 F.Supp.3d at 524 (defendant who worked with Harvey Weinstein was not liable where the defendant merely "benefited financially" from Weinstein's "promotion of films and other business-related activities"). The FAC, however, fails to show that Twitter received any benefits from the Video, let alone received benefits because of its participation in Plaintiffs' alleged exploitation.

**No benefit.** There is no factual allegation that Twitter monetized or benefited from the Videos. The FAC does not allege that Twitter promoted any Tweets containing the Videos, posted ads next to the Videos, or licensed any data related to the Videos. In fact, the FAC makes no effort to connect any of the allegations regarding Twitter's revenue streams to the Videos. Instead, the FAC assumes that Twitter must have monetized the Videos and thereby received benefits from Plaintiffs' alleged sex trafficking venture because Twitter monetizes all the content on its platform. (¶¶ 52-54.) These conclusory and speculative allegations, however, are unsupported (and untrue). For instance, while the FAC acknowledges that Twitter "monetizes its platform by selling advertisements, selling access to its API, and through data licensing," and purports to describe how it works (¶¶ 30-41),[13] none of those details indicate Twitter monetizes *every* Tweet and interaction on its platform, let alone the specific Tweets and interactions with the Videos. *See Twombly*, 550 U.S. at 557 ("[N]aked assertion[s] . . . without some further factual enhancement [] stops short of the line between possibility and plausibility."). As such, the FAC's vague and conclusory implication that Twitter monetizes all content and therefore must have monetized the Videos fails to show Twitter received any benefit. *See Jabagat v. Lombardi*, 2015 WL 11004900, at *4 (S.D. Miss. Jan. 30, 2015) ("conclusory allegation[] that Defendants knowingly benefited financially" was a "mere recitation of the elements of the cause of action" and was "insufficient").

**No Causal Connection.** The FAC also fails to plausibly plead that Twitter knowingly generated revenue "*because of*" its alleged failure to remove the Videos. *See Geiss*, 383 F.Supp.3d

---

[13] Plaintiffs mischaracterize how Twitter monetizes its platform, but Twitter will not dispute these alleged facts for the purposes of its Motion to Dismiss.

Cooley LLP
Attorneys at Law
San Francisco

16

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

at 169-70 (emphasis original) (dismissing complaint because plaintiff failed to allege a direct causal connection between the defendants' conduct and their receipt of benefits). In *Geiss*, the court acknowledged that defendant TWC undoubtedly received benefits from Harvey Weinstein's continued employment as his films and influence generated revenue for the company. But the "controlling question" was "whether H[arvey] Weinstein provided any of those benefits to TWC *because of* [its] facilitation of [his] sexual misconduct." *Id.* (dismissing Section 1591 claim because the "FAC pleads no facts that would plausibly support such a conclusion").

The FAC here merely references Twitter's advertising and data licensing revenues; it does not allege a single fact to establish any causal link between either of those revenue streams and Twitter's handling of the Videos, much less that Twitter was aware of that link. (¶¶ 30-41, 52-54, 79; *Geiss*, 383 F.Supp.3d at 169 (Section 1591 violation requires the defendant to have "actual . . . knowledge of that causal relationship").) The FAC does not allege, for example, that Twitter knew that the Videos were related to sex trafficking and placed them next to ads or allowed them to become a promoted Tweet. Nor does it allege that the Videos showed up in any search results next to promoted texts or ads. Likewise, there is no allegation establishing a causal link between the Videos and any of Twitter's data licensing revenue. *See Kolbek*, 2013 WL 6816174, at *16 (dismissing Section 1591 claim where plaintiffs "offer no evidence of a causal relationship between the sex [trafficking] and the [benefits]"). Plaintiffs thus fail to allege that Twitter knowingly benefitted from Plaintiffs' alleged sex trafficking as Section 1591 requires.

### c.    Twitter did not know of the alleged sex trafficking.

In enacting FOSTA, Congress acknowledged that the *mens rea* requirement of Section 1591 is "difficult to prove" when it comes to online service providers. H.R. Rep. No. 115-572, pt. 1, at 3-6. This is because Section 1591 expressly requires a defendant to "***knowingly*** assist[], support[], or facilitat[e]" a violation of Section 1591(a)(1). 18 U.S.C. §1591(e)(4). Thus, Plaintiffs must show that Twitter knew specifically that Plaintiffs had been sex trafficked, and deliberately assisted the sex trafficking. *Kik*, 482 F.Supp.3d at 1251 (dismissing claim where plaintiff did not allege "facts that would plausibly establish that Defendants knowingly participated in the sex trafficking venture involving her").

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

The FAC, however, contains no facts plausibly alleging that Twitter had actual knowledge of Plaintiffs' prior interactions with the Perpetrators. While John Doe #1 and his mother reported the Videos to Twitter through its platform's reporting process (¶¶ 112-113, 115-17), there is no allegation that any of these submissions informed Twitter that Plaintiffs were victims of sex trafficking. *See Noble*, 335 F.Supp.3d at 524 (dismissing Section 1591(a)(2) claim because there were no "specific factual allegations that plausibly allege [defendant] knew of [primary violator's] alleged violation of Section 1591 in Cannes"); *Lawson v. Rubin*, 2018 WL 2012869, at *12-14 (E.D.N.Y. Apr. 29, 2018) (dismissing Section 1591(a) claim because the complaint did "not allege that [defendant] was present for any of the alleged assaults, was told about them before or after they occurred, or knew that any of the plaintiffs were afraid of the [trafficker]"). There is also no allegation that John Doe #2 ever reported the Videos. Nor is there any allegation that the Videos would have, on their face, indicated to Twitter (or a reasonable viewer) that Plaintiffs had been trafficked and the Videos involved commercial sex. (*See* ¶ 114 (alleging only that the Videos depicted two teenagers engaging in sexual acts).)

Plaintiffs allege that John Doe #1 and his mother wrote emails to Twitter stating that John Doe #1 had been "harass[ed] and [] threatened" (¶ 114), "a victim in a sex abuse situation" (¶ 119), and "baited, harassed, and threatened" (¶ 123). Section 1591, however, requires Plaintiffs to plead Twitter's actual knowledge that the Videos related to commercial sex.[14] *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.Supp.3d 921, 940 (D. Or. Sept. 8, 2020) ("The TVPRA targets ***commercial sex activity*** where children are victimized."); 164 Cong. Rec., at S1869 (statement of the DOJ: "Under current [Section 1591] law prosecutors must prove that the defendant . . . ***knew that the [post] related to commercial sex***, and knew that the advertisement involved a minor."). Because "there are no facts in the [FAC] supporting an inference of the *mens rea* standard necessary to peel back Section 230's protections," Plaintiff's claims against Twitter must fail.[15] *Woodhull Freedom*

---

[14] "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

[15] To the extent Plaintiffs rely on allegations regarding Twitter's general knowledge that sex trafficking occurs on its platform, that is also unavailing. *Kik*, 482 F.Supp.3d at 1251 (allegation "that Defendants knew that other sex trafficking incidents occurred on Kik. . . does not satisfy FOSTA's requirement that the conduct underlying the claim violate 18 U.S.C. § 1591"); *A.B.*, 484 F.Supp.3d at 937-38 (allegations that defendants "knew or should have known of Plaintiff's trafficking because [they] were generally aware of trafficking occurring at their branded properties"

Cooley LLP
Attorneys at Law
San Francisco

18

DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

*Found. v. United States*, 334 F.Supp.3d 185, 203 (D.D.C. 2018), *rev'd on other grounds,* 948 F.3d 363 (D.C. Cir. 2020).

### C.    The FAC Does Not State a Claim Under Section 1595.

Even if Twitter was not immune under CDA § 230 for alleged violations of 18 U.S.C. § 1595 (it is), *see Kik*, 482 F.Supp.3d at 1248-51 (concluding that Kik was immune where plaintiff did not plead a violation of Section 1591), that claim still fails because the FAC does not plead all the elements of the claim. A victim of sex trafficking may sue either the primary "perpetrator" or a "benefi[ciary]" of sex trafficking. 18 U.S.C. § 1595(a). Under the "beneficiary" theory, a plaintiff must allege: (1) the defendant "knowingly" benefitted, financially or "by receiving anything of value"; (2) from "participat[ing] in a venture"; (3) that the "person [or entity] knew or should have known has engaged in an act in violation of this chapter." *M.A. v.*, 425 F.Supp.3d at 964. Plaintiffs fails to allege that Twitter was the "perpetrator" who exploited them, "participated in a venture" with the Perpetrators, or "should have known" of Plaintiffs' alleged sex trafficking.

#### 1.    Twitter did not exploit Plaintiffs.

Plaintiffs cannot state a viable Section 1595 claim against Twitter for "perpetrator" liability because, as explained above, Twitter did not exploit Plaintiffs. (*See supra* at 12.) Not a single fact in the FAC supports this claim, and so it must fail. *See Iqbal*, 556 U.S. at 678.

#### 2.    Twitter did not participate in a venture with the Perpetrators.

Twitter did not associate in any way with the Perpetrators, much less participate in a venture with them. Under a "beneficiary" theory, a plaintiff bringing a Section 1595 claim must show that the defendant "participat[ed] in a venture. . . [that] engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). This means Plaintiffs must "at least" allege facts indicating a "continuous [] relationship" between each member of the venture "such that it would appear [they] have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F.Supp.3d at 970-71. However, there are no facts indicating that Twitter had any kind of relationship or contact with the Perpetrators, let alone anything that comes close to resembling a "continuous relationship" or "tacit agreement" with them. (*See supra* at 13-14.) Instead, the FAC implies that Twitter enters

was insufficient). Furthermore, Twitter takes active steps against sex trafficking. (¶¶ 55-57; Exs. 1, 2, 3, 5.)

into tacit agreements with all sex traffickers who use its platform. (¶¶ 52-79.) Such an allegation, however, is not "reasonable in light of the volume of posts generated by third parties daily" on Twitter's platform. *See J.B.*, 2020 WL 4901196, at \*9 (allegation that "Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website" was insufficient—"Plaintiff must allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff."). Plaintiffs' failure to plead the existence of a venture between Twitter and the Perpetrators is fatal to Plaintiffs' Section 1595 claim. *See id*. at \*9-\*10.

### 3.    There are no facts suggesting Twitter should have known of Plaintiffs' alleged sex trafficking.

As with their failure to plead Twitter's knowledge as required under Section 1591, Plaintiffs also cannot state a Section 1595 claim because the facts fail to satisfy even Section 1595's lower "should have known" standard. While constructive knowledge is sufficient under Section 1595 (compared to Section 1591), a plaintiff still must allege facts showing the defendant should have known about what specifically happened to the plaintiff. *M.A.*, 425 F.Supp.3d at 968; *A.B. v. Marriott Int'l, Inc.*, 455 F.Supp.3d 171, 189-91 (E.D. Pa. 2020). Although the FAC alleges that John Doe #1 and his mother provided some details about what happened to Plaintiffs (¶¶ 115, 119, 123), those allegations are far less clear than the allegations courts have found to meet Section 1595's constructive knowledge standard.

In *A.B.*, for example, the plaintiff defeated a motion to dismiss because she alleged specific facts that put hotel employees on notice that she was a victim of sex trafficking. 455 F.Supp.3d at 189-91 (among other warning signs were (1) a "constant stream of male visitors" to her room; (2) the rooms "were littered with multiple broken objects, used condoms, and other sex paraphernalia"; (3) hotel staff "observed A.B. with signs of visible injury on more than one occasion"; and (4) "attacks on A.B. by her trafficker were constant and loud enough for hotel patrons and staff to hear"). In *M.A.*, the plaintiff alleged the defendant was on notice because she alleged, among other things, that (1) she was "routinely escorted by her trafficker in view of the front desk after her trafficker paid in cash for the reserved room," (2) "hotel staff ignored her" "desperate pleas and screams for help" when she was "being beaten or choked" at the hotel properties, (3) the "trafficker[s] often request rooms near exit doors," and (4) the trash cans in plaintiff's rooms were

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

**DEFENDANT TWITTER, INC.'S MOTION TO
DISMISS PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

"[f]requently" full of "an extraordinary number of used condoms." 425 F.Supp.3d at 967.

Here, as with the alleged Section 1591 violation, there is no factual allegation to support that Twitter "should have known" that the Videos involved sex trafficking conduct—*i.e.*, the exploitation of children for commercial sex purposes. (*See supra* at 17-18.) There is no allegation that those viewing the Videos would perceive that they depicted commercial sex acts involving post-pubescent minors.[16] (*Id.*) And none of the reports or emails sent to Twitter about the Videos indicated that Plaintiffs had been sex trafficked or that they involved commercial sex acts. (*Id.*) To the extent Plaintiffs rely on allegations that Twitter was generally aware that sex trafficking occurred on its platform, they also fail to establish Twitter's constructive knowledge that the Videos involved sex trafficking. (*See supra* at 18-19 n.15). Last, the mere passage of nine days between the offending Tweet and the content takedown is not enough to show that Twitter "should have known." Such a delay in removing the content says nothing about what Twitter did or did not know about the content of the Videos. Without facts that would "have alerted [Twitter] to [Plaintiffs'] situation," the FAC cannot state a Section 1595 claim. *See M.A.*, 425 F.Supp.3d at 968.

### D.     Plaintiffs' Remaining Claims Are Barred by CDA § 230.

Plaintiffs' remaining claims are barred by CDA § 230. Every court that has analyzed FOSTA's scope have found that "FOSTA removes CDA immunity **only** for claims under [S]ection 1595." *E.g.*, *Kik*, 482 F.Supp.3d at 1249; *M. L. v. Craigslist Inc.*, 2020 WL 6434845, at *9-10 (W.D. Wash. Apr. 17, 2020). Accordingly, the rest of Plaintiffs' claims are barred by CDA § 230. *Doe v. Bates*, 2006 WL 3813758, at *18-20 (E.D. Tex. Dec. 27, 2006) (CDA § 230 barred Section 2255 claim based on a violation of Section 2252A); *M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1054-55 (E.D. Mo. 2011) (CDA § 230 barred Section 2255 claim based on a violation of Section 1591); Cal. Civ. Code § 1708.85(h) ("Nothing in this section shall be construed to alter or negate any . . . immunities of an interactive service provider under [CDA §] 230."); *J.B.*, 2020 WL 4901196, at *7 (negligence and negligence per se); *Riggs v. MySpace, Inc.*,

---

[16] Plaintiffs note that the term "twinks" was used to describe Plaintiffs and cite to the term's Wikipedia definition. (¶ 126 n.35.) The full sentence Plaintiffs quote states that the term "twink" is "gay slang for a young man in his late teens to early twenties whose traits may include: general physical attractiveness; little to no body or facial hair; a slim to average build; and a youthful appearance that may belie ***an older chronological age***." (*Id.*)

Cooley LLP
Attorneys at Law
San Francisco

21

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

2009 WL 10671689, at *3 (C.D. Cal. Sept. 17, 2009), *reversed in part on other grounds*, 444 Fed. Appx. 986 (9th Cir. 2011) (gross negligence); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (invasion of privacy); *Caraccioli v. Facebook, Inc.*, 700 Fed. Appx. 588, 590 (9th Cir. 2017) (public disclosure of private facts and intrusion upon seclusion); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 575 (2009) (product liability); *Ripple Labs Inc. v. YouTube LLC*, 2020 WL 6822891, at *6 (N.D. Cal. Nov. 20, 2020) (violation of Bus. & Prof. Code § 17200 ("UCL")).

### E.    Plaintiffs Have Not and Cannot Plead Facts to Support the Remaining Claims.

#### 1.    Plaintiffs fail to state a claim under 18 U.S.C. §§ 2258A & 2258B.

Plaintiffs seek to bring claims under 18 U.S.C. §§ 2258A & 2258B (Count III), but that criminal statute does not provide a private cause of action. 18 U.S. Code § 2258A; *Abcarian v. Levine*, 972 F.3d 1019, 1025-26 (9th Cir. 2020) ("[I]f the statutory language *itself* does not display an intent to create a private remedy, then a cause of action does not exist." (emphasis original)).

#### 2.    Plaintiffs fail to state a California products liability claim.

Plaintiffs' products liability claim (Count V) must be dismissed because they do not allege physical injury or property damage resulting from their use of a defective product. *See Hernandez v. Avis Budget Grp., Inc.*, 2017 WL 6406838, at *5 (E.D. Cal. Dec. 15, 2017) (products liability claim requires "factual allegations regarding any physical injuries or property damage"). Plaintiffs' "conclusory" allegation that they "were harmed by these defects in Twitter's products" (¶ 190), is insufficient. *See Hernandez*, 2017 WL 6406838, at *5 (rejecting similar allegation).

Moreover, Plaintiffs fail to identify any *product* that is allegedly defective. Plaintiffs allege that "Twitter created *its platform, API, and related products*, and ***distributes them*** and has placed ***these products*** into commerce." (¶ 178.) Plaintiffs then allege that "***the product in question never left Twitter's possession***." (¶ 184.) It is also unclear how many products Plaintiffs are alleging are defective, and whether the product is Twitter, Twitter's software, "related products," or some combination thereof. (*Compare* ¶ 187 ("Twitter's products are defective) *with* ¶ 188 ("Twitter is a product").) Because Plaintiffs fail to identify any product, the claim fails. *See Griff v. Woejeckloski*, 2017 WL 8185857, at *3 (C.D. Cal. March 20, 2017) (dismissing claim where plaintiff failed to "allege that any product . . . is defective" and where defendant was primarily providing a service).

If Plaintiffs are alleging that Twitter's platform design is defective, this claim also fails. To bring a defective design claim, Plaintiffs must allege that: (1) Twitter manufactured, distributed, or sold a product; (2) the product did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way; and (3) Plaintiffs were injured by the product and the product's failure to perform safely was a substantial factor in causing Plaintiffs' harm. *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 560 (1994). The "language" and "purposes served" by products liability is "geared to the tangible world," not the intangible world of internet platforms that provide spaces for the exchange of thoughts, communications, and expression. *E.g.*, *Winter v. G.P. Putnam's Sons*, 938 F.2d 1033, 1034-35 (9th Cir. 1991) (harm from ideas and expressions in books does not give rise to products liability); *Intellect Art Multimedia Inc. v. Milewski*, 899 N.Y.S.2d 60, at *7 (2009) (concluding that a website is not a product). Rather, "[t]he basis of strict liability is the furnishing of defective *goods*." *Brooks v. Eugene Burger Management Corp.*, 215 Cal. App. 3d 1611, 1624-25 (1989) (apartment complex design was not a good for purposes of products liability); *see, .e.g.*, *Wilson v. Midway Games, Inc*., 198 F.Supp.2d 167, 172-73 (D. Conn. 2002) (interactive video game not product and collecting cases). As such, Plaintiffs' products liability claim premised on Twitter's platform fails.

### 3. Plaintiffs fail to state a claim under any negligence theory.

In Counts VI-IX, Plaintiffs bring four species of negligence claims—negligence, gross negligence, negligence *per se*, and negligent infliction of emotional distress. None are viable.

***First***, Plaintiffs' negligence *per se* and negligent infliction of emotional distress claims are not independent causes of action. *See J.B.*, 2020 WL 4901196, at *11 ("negligence *per se* is not a separate cause of action"); *Sinclair for Tucker v. Twitter, Inc.*, 2019 WL 10252752, at *7 (N.D. Cal. Mar. 20, 2019) (NIED is a negligence claim). ***Second***, the remaining negligence claims fail because Plaintiffs have not alleged that Twitter owed them any duty. *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 WL 5304852, at *8-9 (N.D. Cal. Oct. 24, 2018) (for negligence, plaintiffs must plead duty and breach).[17] But the FAC contains no facts suggesting Twitter owed Plaintiffs a legally

---

[17] "A claim of gross negligence requires[] . . . allegations of 'conduct by the defendant involving either want of even scant care or an extreme departure from the ordinary standard of conduct.'" *Worldwide Media, Inc.*, 2018 WL 5304852, at *8-9.

Cooley LLP
Attorneys at Law
San Francisco

23

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

cognizable duty. To be sure, Plaintiffs contend "Twitter had a duty to protect" them because it knew of the Videos and failed to take them down. (¶ 194; ¶¶ 112, 128, 194-95.) But where a defendant "merely fails to take affirmative action, [the] defendant is not liable [in negligence] absent a special relationship" with the plaintiff. *AF Holdings, LLC v. Doe*, 2012 WL 4747170, at *5 (N.D. Cal. Oct. 3, 2012) (dismissing negligence claim alleging nonfeasance where no special relationship existed with plaintiff); *Dyroff*, 934 F.3d at 1101 ( "nonfeasance" does not "create[] an ordinary duty of care where none may have existed before"). There are no facts suggesting a special relationship existed between Twitter and Plaintiffs. Plaintiffs do not allege that they used Twitter. And, even if they did, courts routinely decline to find special relationships between websites and their users. *E.g.*, *Dyroff*, 934 F.3d at 1101 ("No website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content.").

### 4. Plaintiffs fail to state a claim under Cal. Civ. Code § 1708.85.

In Count X, Plaintiffs allege Twitter violated California Civil Code section 1708.85, which creates a private right of action against a person "who intentionally distributes" private sexually explicit materials "without consent" if, among other things "the person knew that the other person had a reasonable expectation that the material would remain private." § 1708.85(a). The FAC alleges no facts from which the Court could infer that Twitter "intentionally distribute[d]" the Videos; rather, it makes a conclusory allegation that "[b]y refusing to remove or block [the Videos]," Twitter intentionally distributed" them. (¶ 214.) This does not state a cause of action. *Iqbal*, 556 U.S. at 678. Moreover, liability is precluded if the "material was previously distributed by another person," Cal. Civ. Code § 1708.85(c)(6), and here, the Videos were distributed first on a different platform—Snapchat—by two individuals (whom Plaintiffs do not allege were the individual(s) who trafficked them) months before Twitter ever became aware of the Videos—@StraightBross and @fitmalesblog. (¶¶ 87-89, 99, 100.) Count X must also be dismissed.

### 5. Plaintiffs fail to state a claim under Bus. & Prof. Code § 17200.

Plaintiffs lack standing to bring a UCL claim (Count XIII) under any of the UCL's three "prongs". (¶¶ 231, 234.) To allege standing, Plaintiffs must (1) allege a loss of money or property, i.e., an *economic injury*, and (2) show that the unfair business practice caused the loss. *Holt v.*

Cooley LLP
Attorneys at Law
San Francisco

24

Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

*Facebook, Inc.*, 240 F.Supp.3d 1021, 1035 (N.D. Cal. 2017). Plaintiffs fail to allege they lost money or property, much less that Twitter caused the loss. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019) (dismissing UCL claim where plaintiffs used a "free service").

Nor have Plaintiffs alleged an unfair business practice. To the extent Plaintiffs' claim is predicated on the "unlawful" prong, Plaintiffs' failure to allege a statutory violation (*supra* at 11-19) is fatal. *Greencycle Paint, Inc. v. Paintcare, Inc.*, 2016 WL 1402845, at *9 (N.D. Cal. Apr. 8, 2016). To the extent Plaintiffs' claim is premised on an alleged misrepresentation (¶ 230), it fails to meet Rule 9(b) because Plaintiffs do not allege with particularity a misrepresentation by Twitter. *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (plaintiffs must state "the who, what, when, where, and how" of the misrepresentation.) The claim also fails for lack of actual reliance. Plaintiffs do not allege they ever used Twitter, saw or read its policies, or that seeing those policies resulted in an economic injury. *Id.* at 1243 (collecting cases dismissing UCL claim where plaintiffs failed to allege they "actually saw and relied on alleged misrepresentations").

## V.   CONCLUSION

FOSTA exempts civil claims under Section 1595 from CDA § 230 immunity only where a service provider knowingly and affirmatively facilitates a sex trafficking venture. No such thing happened here. Plaintiffs have not and cannot plead that Twitter knowingly and affirmatively participated in any sex trafficking venture or benefited from one. As such, this suit is barred under CDA § 230. The Court should accordingly grant the Motion and dismiss the case against Twitter in its entirety, with prejudice.

Dated: May 7, 2021                         COOLEY LLP


                                           By: */s/ Michael G. Rhodes*
                                              Michael G. Rhodes

                                           *Attorneys for Defendant*
                                           *Twitter, Inc.*

Cooley LLP
Attorneys at Law
San Francisco

25

**Defendant Twitter, Inc.'s Motion to
Dismiss Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS**