# EXHIBIT A

1    Kelly M. Dermody (Cal. Bar No. 171716)
     kdermody@lchb.com
2    Michelle A. Lamy (Cal. Bar No. 308174)
     mlamy@lchb.com
3    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
     275 Battery Street, 29th Floor
4    San Francisco, CA  94111
     Telephone: 415-956-1000
5    Facsimile: 415-956-1008

6    *Attorneys for Amici Curiae*
     *Additional Counsel on Signature Page*

7

8

9

10

11                   UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15   JOHN DOE #1 AND JOHN DOE #2,          Case No. 3:21-cv-00485-JCS

16              Plaintiffs,                **BRIEF OF AMICI CURIAE ANTI-
                                           TRAFFICKING ORGANIZATIONS IN
17   v.                                    SUPPORT OF PLAINTIFFS' OPPOSITION
                                           TO DEFENDANT TWITTER INC.'S
18   TWITTER, INC.,                        MOTION TO DISMISS**

19              Defendants.                Date:     July 30, 2021
                                           Time:     9:30 a.m.
20                                         Judge:    Hon. Joseph C. Spero

21

22

23

24

25

26

27

28

2257284.2                                          BRIEF OF AMICI CURIAE
                                                   CASE NO. 3:21-CV-00485-JCS

1

**TABLE OF CONTENTS**

2
**Page**

3  CORPORATE DISCLOSURE STATEMENT ........................................................................ 1

STATEMENTS OF INTEREST.......................................................................................... 2
4
INTRODUCTION ............................................................................................................. 5
5
ARGUMENT ................................................................................................................... 6
6
      A.    Online Platforms Like Twitter Are Now the Primary Venue for Sexual
           Exploitation. ..................................................................................................... 6
7
      B.    Congress Passed the TVPRA and FOSTA-SESTA to Hold Internet
8            Platforms Accountable for Online Sex Trafficking. ............................................. 7

9           1.    Congress Has for Decades Evinced an Intent to Make the Internet a
                Safer Place for Children. ............................................................................. 7
10
          2.    Congress Passed FOSTA-SESTA in 2018 to Clarify that CDA
                Section 230 Immunity Does Not Extend to TVPRA Claims. ...................... 9
11
CONCLUSION.............................................................................................................. 13
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CORPORATE DISCLOSURE STATEMENT

Amici Curiae 3Strands Global Foundation, AACI, Bay Area Anti-Trafficking Coalition, Bridge Network, Children's Advocacy Institute, Coalition Against Trafficking in Women, Community Solutions, Frederick Douglass Family Initiatives, Human Rights for Kids, Love Never Fails, Organization for Social Media Safety, Rights4Girls, and World Without Exploitation state that they do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in any Amici Curiae.

**STATEMENTS OF INTEREST**

**3Strands Global Foundation** is a national non-profit organization dedicated to ending human trafficking.  3Strands Global Foundation has spent over a decade combatting human trafficking and exploitation through prevention programs.  As a nonprofit our interest and support in this case is clear, 3Strands Global Foundation must protect all vulnerable populations from online sexual abuse and exploitation, and hold accountable those who do not.

**AACI** is a non-profit organization founded in 1973 that serves individuals and families with cultural humility, sensitivity, and respect, and that advocates for and serves the marginalized and ethnic communities in Santa Clara County.  AACI provides a diverse range of health, behavioral health, and wellness services and advocacy to strengthen the resilience and hope of our community members.

**Bay Area Anti-Trafficking Coalition** is a non-profit organization who seeks to disrupt the business of human traffickers by training frontline employees to recognize and report trafficking where they work, move, and sleep.

**Bridge Network** is a California based non-profit organization providing direct services to at-risk youth and survivors of human trafficking.  All children deserve a life free from violence and exploitation; Bridge Network provides a safe space for youth to build healthy relationships and connect to a variety of resources and services.

**Children's Advocacy Institute** (CAI), a non-profit organization founded in 1989, is one of the nation's premiere academic, research, and advocacy organizations working to improve the lives of children and youth, with a special emphasis on child victims of abuse or neglect.  For more than a decade, CAI has utilized its multi-faceted advocacy approach to eliminate the commercial sexual exploitation of children (CSEC) and improve outcomes for victims.

**Coalition Against Trafficking in Women** (CATW), a non-profit founded in 1988, is one of the oldest international organizations dedicated to ending the trafficking and sexual exploitation of women and girls worldwide.  Their global coalition includes women's rights and human rights advocates, front-line services providers, survivor leaders and others committed to ensuring that governments enact and implement laws and policies that effectively prevent,

1    suppress, and punish human trafficking and support survivors.

2    **Community Solutions** is a California non-profit organization that provides a

3    comprehensive spectrum of prevention, intervention, treatment, and residential services to the

4    communities of Santa Clara and San Benito Counties.  Community Solutions provides services

5    and support to help children, families, and individuals overcome the challenges posed by mental

6    health issues, substance abuse, trauma, severe family dysfunction, sexual and domestic violence,

7    and human trafficking.

8    **Frederick Douglass Family Initiatives** (FDFI) is a non-profit organization that advocates

9    for a more equitable world focused specifically on the eradication of racism and human

10   trafficking.  FDFI has created human trafficking prevention programs, advocated for online

11   safety, and supports at risk kids who are vulnerable to sex trafficking.

12   **Human Rights for Kids** is a non-profit organization dedicated to the promotion and

13   protection of children's human rights.  Human Rights for Kids uses an integrated, multi-faceted

14   approach which consists of research, public education, grassroots organizing, policy advocacy,

15   and strategic litigation to advance critical human rights on behalf of the most vulnerable and

16   victimized children in the United States.

17   **Love Never Fails** is a California non-profit dedicated to ending human trafficking.  First

18   founded in 2011, Love Never Fails is committed to empowering all people to express and

19   experience their best sense of humanity.  Their focus is on restoring, educating, and protecting

20   survivors of human trafficking and their community**.**

21   **Organization for Social Media Safety** is a national, non-profit consumer protection

22   organization focused exclusively on social media.  Through a comprehensive approach that

23   includes advocacy, technology development, and education, the Organization for Social Media

24   Safety works to protect against all social media-related dangers like human trafficking,

25   cyberbullying, hate speech, and propaganda.

26   **Rights4Girls** is a non-profit human rights organization working to end sex trafficking and

27   gender-based violence in the United States.  It advances public policy through legislative

28   advocacy, engagement, research, and education.  Rights4Girls advocates for the dignity and rights

1    of young women and girls—so that every girl may live a life free of violence and exploitation.

2        **World Without Exploitation** (World WE) is a non-profit national coalition of 200 anti-

3    trafficking organizations around the United States.  World WE seeks to bring the anti-trafficking

4    movement together to create a world where no person is bought, sold, or exploited.  World WE

5    advances public policy through legislative advocacy, engagement, and education both on the state

6    and federal levels.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Amici Curiae 3Strands Global Foundation, AACI, Bay Area Anti-Trafficking Coalition,

3   Bridge Network, Children's Advocacy Institute, Coalition Against Trafficking in Women,

4   Community Solutions, Frederick Douglass Family Initiatives, Human Rights for Kids, Love

5   Never Fails, Organization for Social Media Safety, Rights4Girls, and World Without Exploitation

6   (collectively, "Amici") submit this brief in support of Plaintiffs' Opposition to Defendant Twitter

7   Inc.'s Motion to Dismiss, ECF No. 55 (Opp'n).  Amici bring decades of experience in education,

8   advocacy, and direct services for survivors of human trafficking, and include among them leaders

9   and advocates who were themselves trafficked as vulnerable children.  Amici are experts on the

10  devastation caused by online sexual exploitation, on the ways in which online platforms like

11  Twitter exacerbate this abuse, and on the measures Congress has taken to end it by holding

12  companies like Twitter accountable.

13      The underlying case of John Doe #1 and John Doe #2 illustrates the tremendous harm and

14  re-victimization that internet companies can cause vulnerable children if the law with respect to

15  Child Sexual Abuse Material (CSAM) is not followed.  As is well recognized, CSAM includes

16  any online content that depicts the sexual abuse and exploitation of children.  Not only are these

17  images criminal, child victims suffer re-victimization each time an image of their sexual abuse is

18  shared and viewed online.  In a recent survey led by the Canadian Centre for Child Protection, 67

19  percent of CSAM survivors said the distribution of their images impacts them differently than the

20  hands-on abuse they suffered "because the distribution never ends and the images are

21  permanent."[1]  Proliferation of CSAM has even led to suicide.[2]  Here, because of Twitter's

22  pernicious disregard for John Doe #1 and John Doe #2, 167,000 or more viewers accessed,

23  downloaded, and shared CSAM documenting their sexual abuse.  Opp'n at 10.

24      Congress passed the Fight Online Sex Trafficking Act and Stop Enabling Sex Traffickers

25  _____

26  [1] National Center for Missing and Exploited Children, *Child Sexual Abuse Material—Overview*,
    available at https://www.missingkids.org/theissues/csam.

27  [2] Julia Prodis Sulek, *Audrey Pott: Boys admit to sexually assaulting teen*, Mercury News (Jan. 14,
    2014) available at https://www.mercurynews.com/2014/01/14/audrie-pott-boys-admit-sexually-
28  assaulting-saratoga-teen-who-committed-suicide/.

2257284.2                              -5-                    BRIEF OF AMICI CURIAE
                                                             NO. 3:21-CV-00485-JCS

1    Act (collectively, FOSTA-SESTA) to address the crisis of sexual exploitation, by holding social

2    media companies like Twitter accountable for their central role in online sex trafficking.

3    Twitter's motion to dismiss asks the Court to ignore this Congressional directive, making the very

4    same arguments that prompted Congress to pass FOSTA-SESTA in the first place.  Amici

5    therefore respectfully submit that Twitter's motion should be denied.

6    **ARGUMENT**

7

8    **A.     Online Platforms Like Twitter Are Now the Primary Venue for Sexual Exploitation.**

9    According to the 2020 Federal Human Trafficking Report issued by the Human

10    Trafficking Institute, online solicitation "has dwarfed other tactics used by traffickers to solicit

11    buyers of commercial sex for over a decade, appearing as the primary form of solicitation in over

12    twice as many criminal cases as any other method each year since 2008."[3]  The internet is now

13    the primary way that traffickers "recruit sex trafficking victims and solicit buyers of commercial

14    sex."[4]  In 2020, 83 percent of trafficking cases involved online platforms as the primary source

15    of solicitation.[5]

16    Alarmingly, even more children than adults are recruited online to be exploited as victims

17    of trafficking.[6]  The U.S. National Center for Missing and Exploited Children directly correlated

18    an 846 percent increase in child sex trafficking reports from 2010 to 2015 to the growing use of

19    the internet to sell children for sex.[7]  Internet platforms—including social media—have

20    substantially exacerbated the distribution of CSAM because they "provide offenders with the

21    unparalleled opportunity to access, possess, and trade child sexual abuse images and material,

22    often anonymously."[8]  To date, the Child Victim Identification Program has identified 322

23    [3] Human Trafficking Institute, *2020 Federal Human Trafficking Report* 3, available at https://www.traffickinginstitute.org/wp-content/uploads/2021/06/2020-Federal-Human-

24    Trafficking-Report-Low-Res.pdf.

25    [4] *Id*. at 4.

     [5] *Id*. at 49.

26    [6] *Id*. at 43.

27    [7] S. Hrg. 115-6, before Subcom. on Investigations (Jan. 10, 2017).

     [8] Canadian Centre for Child Protection, *Survivors' Survey* 2 (2017), available at

28    https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyExecutiveSummary2017_en.pdf.

2257284.2      -6-      BRIEF OF AMICI CURIAE
NO. 3:21-CV-00485-JCS

1   million images and videos that constitute CSAM.[9]

2
        **B.**     **Congress Passed the TVPRA and FOSTA-SESTA to Hold Internet Platforms**
3                     **Accountable for Online Sex Trafficking.**

4   Twitter argues that Congress intended to absolve internet companies of any responsibility

5   for maintaining and promoting sex trafficking through a broad grant of immunity under the

6   Communications Decency Act (CDA) §230.  In fact, this immunity was abrogated by Congress in

7   direct response to websites deploying §230—as Twitter attempts to here—to facilitate and

8   promote the continued sexual exploitation of minors.  In 2018, Congress passed FOSTA-SESTA

9   to unequivocally protect victims of online enterprises that facilitate sex trafficking.  What

10  happened to John Doe #1 and John Doe #2 is sex trafficking, and Twitter had knowledge or

11  constructive knowledge that it was profiting from their abuse on its platform.  This violates

12  FOSTA-SESTA.

13  Twitter's claim of immunity under §230 must also fail, as it is inconsistent with

14  Congress's intent in passing FOSTA-SESTA and the intent of CDA §230 itself.  Furthermore, it

15  is inconsistent with legislative enactments over the course of decades that have sought protection,

16  accountability, and justice for victims of sex trafficking.  If Twitter's reasoning is accepted, it

17  would eviscerate laws protecting sex trafficking victims.  In particular, it would harm vulnerable

18  children—precisely those intended to benefit from the Trafficking Victims Protection

19  Reauthorization Act of 2008 (TVPRA) and FOSTA-SESTA.  The implications of such an

20  interpretation of the law are severe and defy Congress's clear intent.

21
        **1.**     **Congress Has for Decades Evinced an Intent to Make the Internet a**
22                **Safer Place for Children.**

23  Congress passed the Communications Decency Act (CDA) in 1996, when the internet was

24  in its infancy.  As the Congressional record makes clear, Congress intended to protect children

25  from salacious content while ensuring the internet could continue to grow without the burden of

26  overregulation.  141 Cong. Rec. H 8460 (Cox).  Section 230 was enacted to protect "Good

27
[9] National Center for Missing and Exploited Children, *Child Sexual Abuse Material—By the*
28 *Numbers*, available at https://www.missingkids.org/theissues/csam.

1    Samaritan" online service providers who take steps to screen indecent and offensive material. *Id*.

2    Applied correctly, it was only ever intended to protect websites from defamation lawsuits simply

3    for *removing* offensive content on their sites—the very opposite of what Twitter did here. *See*

4    H.R. Rep. 104-458 (1996) ("One of the specific purposes of this section is to overrule . . .

5    decisions which have treated such providers and users as publishers or speakers of content that is

6    not their own because they have restricted access to objectionable material.").

7           Since 1996, the power and scope of the internet has far exceeded any early expectations.

8    And as the internet continues to evolve, it becomes a more and more accessible tool for predators,

9    who use a variety of platforms, including Twitter, to prey on vulnerable children.  To counteract

10   the rapid proliferation of online sexual abuse, Congress has continued to weigh in to protect

11   children from trafficking and exploitation and to ensure accountability for those who knowingly

12   benefit from child sexual abuse.  This began with the Trafficking Victims Protection Act (TVPA)

13   in 2000, which first criminalized sex trafficking.  The law was expanded through the Trafficking

14   Victims Protection Reauthorization Act of 2003 to add new means of curbing trafficking by

15   allowing trafficking victims to bring a civil action against their traffickers in federal district court.

16   P.L. 108-193, § 4(a)(4)(A).  The law was expanded again in 2008, to the TVPRA in its current

17   form, and extended liability to third parties who benefit financially from sex trafficking.  P.L.

18   110-457, Title II, Subtitle C, § 221(2).

19          When Congress passed the TVPRA, it made clear that the law required all parties,

20   including businesses like Twitter, to comply with the law or face civil liability *even if they are not*

21   *themselves a perpetrator*.  Amended Pub. L. No. 110-457, title II, § 221(2) (Dec. 23, 2008).

22   Accordingly, there are two distinct causes of action under the TVPRA: (1) perpetrator claims

23   against a person who directly violates Section 1591; and (2) beneficiary claims against a person

24   or entity who may not be criminally liable as a direct perpetrator, but who "knowingly benefits,

25   financially or by receiving anything of value from participation in a venture which that person

26   knew or should have known has engaged in an act in violation of this chapter."  18 U.S.C.

27   § 1595(a).  Section 1595 specifically expands the scope of liability beyond Section 1591.  This

28   expansion was intended to pave the way for civil suits against online platforms that host sex

1  trafficking and CSAM.

2
### 2.     Congress Passed FOSTA-SESTA in 2018 to Clarify that CDA Section 230 Immunity Does Not Extend to TVPRA Claims.
3

4      Because of the severe overreach by internet providers who platformed traffickers across

5  the internet while claiming immunity under §230, Congress passed FOSTA-SESTA in 2018 to

6  clarify that §230 does not now immunize, and has not ever immunized, website companies from

7  suit for violations of anti-trafficking laws.  FOSTA-SESTA's legislative history makes very clear

8  that Congress was alarmed by the use of §230 as a shield for websites that facilitated or turned a

9  blind eye to trafficking on their websites.  Put simply, FOSTA-SESTA was passed to guarantee

10  victims their day in court, and prevent precisely the motion Twitter now makes here.[10]

11      The history of FOSTA-SESTA shows why Congress acted with urgency.  In 2016, it came

12  to Congress's attention that websites, such as Backpage, were using §230 to shield themselves

13  from criminal or civil liability for hosting and profiting from sex trafficking content.  S. Hrg. 115-

14  6, *Backpage.com's Knowing Facilitation of Online Sex Trafficking* (Jan. 10, 2017).  Congress

15  became so concerned with this misapplication of §230 that it launched an investigation into the

16  problem in 2017.  Contemporaneous House and Senate Reports detail that this concern

17  culminated in the passage of FOSTA-SESTA, through which Congress clarified that §230 "does

18  not prohibit the enforcement against providers and users of interactive computer services of

19  Federal and State criminal and civil law relating to sexual exploitation of children or sex

20  trafficking" because it "was *never* intended by Congress to provide legal protection to websites

21  that unlawfully promote and facilitate prostitution and contribute to sex trafficking."  H.R. Rep.

22  No. 115-572 (2018) (emphasis added).

23      As a result, Congress passed FOSTA-SESTA in 2018, confirming that §230 immunity

24  does not apply to trafficking claims.  FOSTA-SESTA's plain language—as enacted—repeatedly

25  confirms this Congressional intent:

26

27  [10] Twitter argues that "close cases . . . must be resolved in favor of immunity," basing its
argument on §230.  ECF No. 48 (Mot.), p. 8.  As set forth above, Congress rejected this precise
28  argument in passing FOSTA-SESTA.

- FOSTA-SESTA's enacting clause states its purpose as: "to clarify that section 230 . . . does not prohibit the enforcement . . . of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking." Pub. L. No. 115-164 (2018).

- Section 2 states the "sense of Congress" that §230 "was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "clarification of such section is warranted to ensure that such section does not provide such protection to such websites." *Id*.

- Section 4, which contains the amendments to §230, is titled: "Ensuring ability to enforce federal and state criminal and civil law relating to sex trafficking." *Id*.

The bill makes clear that §230 is not a shield for providers and users of interactive computer services against criminal and civil laws relating to sexual exploitation of children or sex trafficking. H. Rep. No. 115-572, pt. 1, at 1. With FOSTA-SESTA, Congress amended §230 to include an express exemption from claims under the TVPRA: "Nothing in this section . . . shall be construed to impair or limit . . . any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. §230(e)(5)(A). Through this exemption, Congress intended to restore victims' access to justice and hold tech companies accountable when they negligently or knowingly ignore trafficking on their websites. 164 Cong. Rec. H 1290, 1295 (Feb. 27, 2018) (McMorris Rodgers).

Twitter characterizes FOSTA-SESTA as applicable "only in extreme cases (like Backpage)." Mot., p. 5. Although the sale of victims facilitated through the personals section of Backpage was one impetus for Congressional investigation, neither the language of FOSTA-SESTA nor its legislative history limits its immunity exemption to a particular entity. In fact, Congress explicitly rejected the notion that FOSTA-SESTA is so limited, noting that FOSTA-SESTA would allow "vigorous criminal enforcement against all bad-actor websites, not just Backpage.com, through the creation of a new federal law and by explicitly permitting states to enforce criminal laws that mirror this new federal law and current federal sex trafficking law." H. Rep. No. 115-572, pt. 1, at 5. Furthermore, Backpage was shut down before FOSTA-SESTA was enacted, confirming that Congress saw a broader need for FOSTA-SESTA than targeting

1  Backpage.[11]  Nothing in the law limited liability to websites that only sell sex.[12]

2       Twitter also argues that FOSTA-SESTA's immunity exemption applies only to cases

3  where the defendant itself engaged in criminal misconduct.  Mot., pp. 4-5.  But Congress was

4  undeniably concerned with websites that were not direct, criminal participants in trafficking, but

5  still benefited financially at the expense of victims.  Senate debate focused on amendments *that*

6  *were ultimately rejected* because they would "protect websites that identify sex trafficking ads

7  and then leave them up in order to continue profiting from them."  164 Cong. Rec. S 1827, 1829

8  (Blumenthal).  Members of Congress were motivated by the testimony of survivors who

9  described their re-victimization at the hands of websites that refused to remove images taken

10  against their will.  164 Cong. Rec. H 1290, 1292-93 (Feb. 27, 2018) (Jackson Lee).  Plaintiffs

11  John Doe #1 and John Doe #2 were re-victimized in just this way.

12       There is simply no indication, as Twitter appears to suggest, that in passing FOSTA-

13  SESTA, Congress intended that a website had to *be a criminal perpetrator* of sex trafficking or

14  else be immune from liability.[13]  Beyond the record, Twitter's position also fails logic, in that it

15  would effectively carve out all third-party beneficiary liability (*i.e.*, the target of the legislation

16  itself).  In fact, the whole purpose of the 2008 amendments to the TVPRA was to add liability for

17  those who benefit from trafficking perpetrated by others.  If §230 were read to permit only

18  Section 1595 claims where the defendant's conduct also violated Section 1591's criminal

19  provisions, then there would be no such thing as standalone beneficiary liability.  Twitter's logic

20  therefore would defeat the purpose of FOSTA-SESTA and allow Twitter the unrestricted ability

21  to negligently or knowingly profit from the sexual abuse of children.  This is not the law.

22       In fact, the Senate recognized and noted the importance of discovery in cases of online sex

23  trafficking when discussing the need for FOSTA-SESTA.  Senator McCaskill observed that

24  internet companies believed they "would be able to win again in court and deny us our

25  [11] The Congressional record references "at least 130 websites selling women and children."  164 Cong. Rec. H 1290, 1292 (Feb. 27, 2018) (Jackson Lee).

26  [12] The Congressional record also references the popular online marketplace Craigslist as a locus
27  of trafficking.  164 Cong. Rec. S1849, at S1850.

[13] Regardless, and even though not required by law, Plaintiffs here do allege that Twitter
28  *knowingly facilitated* sex trafficking, and bring a direct perpetrator claim on that basis.

2257284.2                          -11-                    BRIEF OF AMICI CURIAE
                                                           NO. 3:21-CV-00485-JCS

1    opportunity to look at the documents and to look at the underlying evidence that one should

2    always look at in an investigation."  164 Cong. Rec S 1827, 1830.  This is precisely what Twitter

3    is attempting to do here.  Dismissal on such grounds would undermine the intent of Congress that

4    there be a mechanism for investigating when websites are operating as bad actors.  To cut off the

5    opportunity even to gather discovery into these practices would obliterate the purpose of FOSTA-

6    SESTA, taking away the victims' access to justice and denying Plaintiffs here the chance to prove

7    that Twitter facilitated and benefited from their online sex trafficking.  It would provide a shield

8    to powerful internet companies with broad reach, while leaving the less technologically

9    sophisticated victims of child sex trafficking powerless and exposed online.

10            Indeed, in light of positions like those taken by Twitter, Justice Clarence Thomas recently

11   bemoaned that §230 is still being used to prevent claims from even proceeding to discovery, and

12   implored courts to stop "reading extra immunity into statutes where it does not belong."

13   *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020).  *See also id.* at

14   18 ("Paring back the sweeping immunity courts have read into §230 would not necessarily render

15   defendants liable for online misconduct.  It simply would give plaintiffs a chance to raise their

16   claims in the first place.  Plaintiffs still must prove the merits of their cases, and some claims will

17   undoubtedly fail.").

18            As described above, survivors of sex trafficking are often vulnerable children, and

19   Congress has unequivocally stated its intention that they deserve their day in court.  164 Cong.

20   Rec. S 1827 (Mar. 20, 2018) (Blumenthal).  Where plaintiffs have set forth facts indicating that a

21   website company violated the TVPRA as a third-party beneficiary of trafficking, an immunity

22   claim must fail, and victims must at a minimum be granted the opportunity to discover their

23   case.[14]  In the present case, Plaintiffs allege facts that clearly place Twitter's actions in conflict

24   with the law.  Plaintiffs allege violations of both the direct and beneficiary provisions of the

25   TVPRA, and both should proceed to discovery.

26

27

[14] *Cf., e.g., J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, at 12 (N.D. Cal. Oct. 28,
28   2020).

1

**CONCLUSION**

2      It is critical that this Court reject Twitter's motion to dismiss, in order to ensure that the

3  TVPRA and FOSTA-SESTA have any meaning.  If this case cannot proceed to discovery,

4  children everywhere are unprotected from online sex trafficking and re-victimization.  Amici

5  respectfully submit that the Court should deny the motion to prevent this miscarriage of justice.

6

7  Dated: June 17, 2021            Respectfully submitted,

8
                                  By: /s/ *Kelly M. Dermody*
9                                 _____

10                                     Kelly M. Dermody (Cal. Bar No. 171716)
                                       kdermody@lchb.com
11                                     Michelle A. Lamy (Cal. Bar No. 308174)
                                       mlamy@lchb.com
12                                     Lieff Cabraser Heimann & Bernstein, LLP
                                       275 Battery Street, 29th Floor
13                                     San Francisco, CA  94111
                                       Telephone: 415-956-1000
14                                     Facsimile: 415-956-1008

15                                     Maggy Krell (Cal. Bar No. 226675)
                                       maggykrell@gmail.com
16                                     James Dold
                                       jdold@humanrightsforkids.org
17                                     Suzanne LaPierre
                                       slapierre@humanrightsforkids.org
18                                     Human Rights for Kids
                                       P.O. Box 5960
19                                     Washington, DC 20016
                                       Telephone: (202) 573-7758
20

21                                     Jessica Heldman (Cal. Bar No. 277761)
                                       jheldman@sandiego.edu
22                                     Melanie Delgado (Cal. Bar No. 244131)
                                       mdelgado@sandiego.edu
23                                     Children's Advocacy Institute
                                       5998 Alcala Park
24                                     San Diego, CA 92110
                                       Telephone: 619-260-4806
25                                     Facsimile: 619-260-4753

26                                     *Attorneys for Amici Curiae*

27

28

2257284.2                          -13-                    BRIEF OF AMICI CURIAE
                                                           NO. 3:21-CV-00485-JCS

1

**<u>CERTIFICATE OF SERVICE</u>**

2

     I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of

3

the Court using the CM/ECF system, which will send notification of such filing to all counsel of

4

record who receives CM/ECF notification.

5

6

DATED this 17th day of June 2021   By:      /s/ *Kelly M. Dermody*

7

                                                 Kelly M. Dermody

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2257284.2

-14-