Kelly M. Dermody (Cal. Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Facsimile: 415-956-1008

*Attorneys for Amici Curiae*
*Additional Counsel on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHN DOE #1 AND JOHN DOE #2,

Plaintiffs,

v.

TWITTER, INC.,

Defendants.

Case No. 3:21-cv-00485-JCS

**BRIEF OF AMICI CURIAE ANTI-TRAFFICKING ORGANIZATIONS IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT TWITTER INC.'S MOTION TO DISMISS**

Date: July 30, 2021
Time: 9:30 a.m.
Judge: Hon. Joseph C. Spero

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ..... 1
STATEMENTS OF INTEREST ..... 2
INTRODUCTION ..... 5
ARGUMENT ..... 6
A. Online Platforms Like Twitter Are Now the Primary Venue for Sexual Exploitation. ..... 6
B. Congress Passed the TVPRA and FOSTA-SESTA to Hold Internet Platforms Accountable for Online Sex Trafficking. ..... 7
1. Congress Has for Decades Evinced an Intent to Make the Internet a Safer Place for Children. ..... 7
2. Congress Passed FOSTA-SESTA in 2018 to Clarify that CDA Section 230 Immunity Does Not Extend to TVPRA Claims. ..... 9
CONCLUSION ..... 13

**CORPORATE DISCLOSURE STATEMENT**

Amici Curiae 3Strands Global Foundation, AACI, Bay Area Anti-Trafficking Coalition, Bridge Network, Children's Advocacy Institute, Coalition Against Trafficking in Women, Community Solutions, Frederick Douglass Family Initiatives, Human Rights for Kids, Love Never Fails, Organization for Social Media Safety, Rights4Girls, and World Without Exploitation state that they do not have parent corporations. No publicly held corporation owns 10 percent or more of any stake or stock in any Amici Curiae.

## STATEMENTS OF INTEREST

**3Strands Global Foundation** is a national non-profit organization dedicated to ending human trafficking. 3Strands Global Foundation has spent over a decade combatting human trafficking and exploitation through prevention programs. As a nonprofit our interest and support in this case is clear, 3Strands Global Foundation must protect all vulnerable populations from online sexual abuse and exploitation, and hold accountable those who do not.

**AACI** is a non-profit organization founded in 1973 that serves individuals and families with cultural humility, sensitivity, and respect, and that advocates for and serves the marginalized and ethnic communities in Santa Clara County. AACI provides a diverse range of health, behavioral health, and wellness services and advocacy to strengthen the resilience and hope of our community members.

**Bay Area Anti-Trafficking Coalition** is a non-profit organization who seeks to disrupt the business of human traffickers by training frontline employees to recognize and report trafficking where they work, move, and sleep.

**Bridge Network** is a California based non-profit organization providing direct services to at-risk youth and survivors of human trafficking. All children deserve a life free from violence and exploitation; Bridge Network provides a safe space for youth to build healthy relationships and connect to a variety of resources and services.

**Children's Advocacy Institute** (CAI), a non-profit organization founded in 1989, is one of the nation's premiere academic, research, and advocacy organizations working to improve the lives of children and youth, with a special emphasis on child victims of abuse or neglect. For more than a decade, CAI has utilized its multi-faceted advocacy approach to eliminate the commercial sexual exploitation of children (CSEC) and improve outcomes for victims.

**Coalition Against Trafficking in Women** (CATW), a non-profit founded in 1988, is one of the oldest international organizations dedicated to ending the trafficking and sexual exploitation of women and girls worldwide. Their global coalition includes women's rights and human rights advocates, front-line services providers, survivor leaders and others committed to ensuring that governments enact and implement laws and policies that effectively prevent,

suppress, and punish human trafficking and support survivors.

**Community Solutions** is a California non-profit organization that provides a comprehensive spectrum of prevention, intervention, treatment, and residential services to the communities of Santa Clara and San Benito Counties. Community Solutions provides services and support to help children, families, and individuals overcome the challenges posed by mental health issues, substance abuse, trauma, severe family dysfunction, sexual and domestic violence, and human trafficking.

**Frederick Douglass Family Initiatives** (FDFI) is a non-profit organization that advocates for a more equitable world focused specifically on the eradication of racism and human trafficking. FDFI has created human trafficking prevention programs, advocated for online safety, and supports at risk kids who are vulnerable to sex trafficking.

**Human Rights for Kids** is a non-profit organization dedicated to the promotion and protection of children's human rights. Human Rights for Kids uses an integrated, multi-faceted approach which consists of research, public education, grassroots organizing, policy advocacy, and strategic litigation to advance critical human rights on behalf of the most vulnerable and victimized children in the United States.

**Love Never Fails** is a California non-profit dedicated to ending human trafficking. First founded in 2011, Love Never Fails is committed to empowering all people to express and experience their best sense of humanity. Their focus is on restoring, educating, and protecting survivors of human trafficking and their community**.**

**Organization for Social Media Safety** is a national, non-profit consumer protection organization focused exclusively on social media. Through a comprehensive approach that includes advocacy, technology development, and education, the Organization for Social Media Safety works to protect against all social media-related dangers like human trafficking, cyberbullying, hate speech, and propaganda.

**Rights4Girls** is a non-profit human rights organization working to end sex trafficking and gender-based violence in the United States. It advances public policy through legislative advocacy, engagement, research, and education. Rights4Girls advocates for the dignity and rights

of young women and girls—so that every girl may live a life free of violence and exploitation.

**World Without Exploitation** (World WE) is a non-profit national coalition of 200 anti-trafficking organizations around the United States. World WE seeks to bring the anti-trafficking movement together to create a world where no person is bought, sold, or exploited. World WE advances public policy through legislative advocacy, engagement, and education both on the state and federal levels.

**INTRODUCTION**

Amici Curiae 3Strands Global Foundation, AACI, Bay Area Anti-Trafficking Coalition, Bridge Network, Children's Advocacy Institute, Coalition Against Trafficking in Women, Community Solutions, Frederick Douglass Family Initiatives, Human Rights for Kids, Love Never Fails, Organization for Social Media Safety, Rights4Girls, and World Without Exploitation (collectively, "Amici") submit this brief in support of Plaintiffs' Opposition to Defendant Twitter Inc.'s Motion to Dismiss, ECF No. 55 (Opp'n). Amici bring decades of experience in education, advocacy, and direct services for survivors of human trafficking, and include among them leaders and advocates who were themselves trafficked as vulnerable children. Amici are experts on the devastation caused by online sexual exploitation, on the ways in which online platforms like Twitter exacerbate this abuse, and on the measures Congress has taken to end it by holding companies like Twitter accountable.

The underlying case of John Doe #1 and John Doe #2 illustrates the tremendous harm and re-victimization that internet companies can cause vulnerable children if the law with respect to Child Sexual Abuse Material (CSAM) is not followed. As is well recognized, CSAM includes any online content that depicts the sexual abuse and exploitation of children. Not only are these images criminal, child victims suffer re-victimization each time an image of their sexual abuse is shared and viewed online. In a recent survey led by the Canadian Centre for Child Protection, 67 percent of CSAM survivors said the distribution of their images impacts them differently than the hands-on abuse they suffered "because the distribution never ends and the images are permanent."[1] Proliferation of CSAM has even led to suicide.[2] Here, because of Twitter's pernicious disregard for John Doe #1 and John Doe #2, 167,000 or more viewers accessed, downloaded, and shared CSAM documenting their sexual abuse. Opp'n at 10.

Congress passed the Fight Online Sex Trafficking Act and Stop Enabling Sex Traffickers

---

[1] National Center for Missing and Exploited Children, *Child Sexual Abuse Material—Overview*, available at https://www.missingkids.org/theissues/csam.

[2] Julia Prodis Sulek, *Audrey Pott: Boys admit to sexually assaulting teen*, Mercury News (Jan. 14, 2014) available at https://www.mercurynews.com/2014/01/14/audrie-pott-boys-admit-sexually-assaulting-saratoga-teen-who-committed-suicide/.

Act (collectively, FOSTA-SESTA) to address the crisis of sexual exploitation, by holding social media companies like Twitter accountable for their central role in online sex trafficking. Twitter's motion to dismiss asks the Court to ignore this Congressional directive, making the very same arguments that prompted Congress to pass FOSTA-SESTA in the first place. Amici therefore respectfully submit that Twitter's motion should be denied.

## ARGUMENT

### A. Online Platforms Like Twitter Are Now the Primary Venue for Sexual Exploitation.

According to the 2020 Federal Human Trafficking Report issued by the Human Trafficking Institute, online solicitation "has dwarfed other tactics used by traffickers to solicit buyers of commercial sex for over a decade, appearing as the primary form of solicitation in over twice as many criminal cases as any other method each year since 2008."[3] The internet is now the primary way that traffickers "recruit sex trafficking victims and solicit buyers of commercial sex."[4] In 2020, 83 percent of trafficking cases involved online platforms as the primary source of solicitation.[5]

Alarmingly, even more children than adults are recruited online to be exploited as victims of trafficking.[6] The U.S. National Center for Missing and Exploited Children directly correlated an 846 percent increase in child sex trafficking reports from 2010 to 2015 to the growing use of the internet to sell children for sex.[7] Internet platforms—including social media—have substantially exacerbated the distribution of CSAM because they "provide offenders with the unparalleled opportunity to access, possess, and trade child sexual abuse images and material, often anonymously."[8] To date, the Child Victim Identification Program has identified 322

[3] Human Trafficking Institute, *2020 Federal Human Trafficking Report* 3, available at https://www.traffickinginstitute.org/wp-content/uploads/2021/06/2020-Federal-Human-Trafficking-Report-Low-Res.pdf.

[4] *Id*. at 4.

[5] *Id*. at 49.

[6] *Id*. at 43.

[7] S. Hrg. 115-6, before Subcom. on Investigations (Jan. 10, 2017).

[8] Canadian Centre for Child Protection, *Survivors' Survey* 2 (2017), available at https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyExecutiveSummary2017_en.pdf.

million images and videos that constitute CSAM.[9]

**B. Congress Passed the TVPRA and FOSTA-SESTA to Hold Internet Platforms Accountable for Online Sex Trafficking.**

Twitter argues that Congress intended to absolve internet companies of any responsibility for maintaining and promoting sex trafficking through a broad grant of immunity under the Communications Decency Act (CDA) §230. In fact, this immunity was abrogated by Congress in direct response to websites deploying §230—as Twitter attempts to here—to facilitate and promote the continued sexual exploitation of minors. In 2018, Congress passed FOSTA-SESTA to unequivocally protect victims of online enterprises that facilitate sex trafficking. What happened to John Doe #1 and John Doe #2 is sex trafficking, and Twitter had knowledge or constructive knowledge that it was profiting from their abuse on its platform. This violates FOSTA-SESTA.

Twitter's claim of immunity under §230 must also fail, as it is inconsistent with Congress's intent in passing FOSTA-SESTA and the intent of CDA §230 itself. Furthermore, it is inconsistent with legislative enactments over the course of decades that have sought protection, accountability, and justice for victims of sex trafficking. If Twitter's reasoning is accepted, it would eviscerate laws protecting sex trafficking victims. In particular, it would harm vulnerable children—precisely those intended to benefit from the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA) and FOSTA-SESTA. The implications of such an interpretation of the law are severe and defy Congress's clear intent.

**1. <u>Congress Has for Decades Evinced an Intent to Make the Internet a Safer Place for Children.</u>**

Congress passed the Communications Decency Act (CDA) in 1996, when the internet was in its infancy. As the Congressional record makes clear, Congress intended to protect children from salacious content while ensuring the internet could continue to grow without the burden of overregulation. 141 Cong. Rec. H 8460 (Cox). Section 230 was enacted to protect "Good

---

[9] National Center for Missing and Exploited Children, *Child Sexual Abuse Material—By the Numbers*, available at https://www.missingkids.org/theissues/csam.

Samaritan" online service providers who take steps to screen indecent and offensive material. *Id*. Applied correctly, it was only ever intended to protect websites from defamation lawsuits simply for *removing* offensive content on their sites—the very opposite of what Twitter did here. *See* H.R. Rep. 104-458 (1996) ("One of the specific purposes of this section is to overrule . . . decisions which have treated such providers and users as publishers or speakers of content that is not their own because they have restricted access to objectionable material.").

Since 1996, the power and scope of the internet has far exceeded any early expectations. And as the internet continues to evolve, it becomes a more and more accessible tool for predators, who use a variety of platforms, including Twitter, to prey on vulnerable children. To counteract the rapid proliferation of online sexual abuse, Congress has continued to weigh in to protect children from trafficking and exploitation and to ensure accountability for those who knowingly benefit from child sexual abuse. This began with the Trafficking Victims Protection Act (TVPA) in 2000, which first criminalized sex trafficking. The law was expanded through the Trafficking Victims Protection Reauthorization Act of 2003 to add new means of curbing trafficking by allowing trafficking victims to bring a civil action against their traffickers in federal district court. P.L. 108-193, § 4(a)(4)(A). The law was expanded again in 2008, to the TVPRA in its current form, and extended liability to third parties who benefit financially from sex trafficking. P.L. 110-457, Title II, Subtitle C, § 221(2).

When Congress passed the TVPRA, it made clear that the law required all parties, including businesses like Twitter, to comply with the law or face civil liability *even if they are not themselves a perpetrator*. Amended Pub. L. No. 110-457, title II, § 221(2) (Dec. 23, 2008). Accordingly, there are two distinct causes of action under the TVPRA: (1) perpetrator claims against a person who directly violates Section 1591; and (2) beneficiary claims against a person or entity who may not be criminally liable as a direct perpetrator, but who "knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Section 1595 specifically expands the scope of liability beyond Section 1591. This expansion was intended to pave the way for civil suits against online platforms that host sex

trafficking and CSAM.

**2. Congress Passed FOSTA-SESTA in 2018 to Clarify that CDA Section 230 Immunity Does Not Extend to TVPRA Claims.**

Because of the severe overreach by internet providers who platformed traffickers across the internet while claiming immunity under §230, Congress passed FOSTA-SESTA in 2018 to clarify that §230 does not now immunize, and has not ever immunized, website companies from suit for violations of anti-trafficking laws. FOSTA-SESTA's legislative history makes very clear that Congress was alarmed by the use of §230 as a shield for websites that facilitated or turned a blind eye to trafficking on their websites. Put simply, FOSTA-SESTA was passed to guarantee victims their day in court, and prevent precisely the motion Twitter now makes here.[10]

The history of FOSTA-SESTA shows why Congress acted with urgency. In 2016, it came to Congress's attention that websites, such as Backpage, were using §230 to shield themselves from criminal or civil liability for hosting and profiting from sex trafficking content. S. Hrg. 115-6, *Backpage.com's Knowing Facilitation of Online Sex Trafficking* (Jan. 10, 2017). Congress became so concerned with this misapplication of §230 that it launched an investigation into the problem in 2017. Contemporaneous House and Senate Reports detail that this concern culminated in the passage of FOSTA-SESTA, through which Congress clarified that §230 "does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking" because it "was *never* intended by Congress to provide legal protection to websites that unlawfully promote and facilitate prostitution and contribute to sex trafficking." H.R. Rep. No. 115-572 (2018) (emphasis added).

As a result, Congress passed FOSTA-SESTA in 2018, confirming that §230 immunity does not apply to trafficking claims. FOSTA-SESTA's plain language—as enacted—repeatedly confirms this Congressional intent:

---

[10] Twitter argues that "close cases . . . must be resolved in favor of immunity," basing its argument on §230. ECF No. 48 (Mot.), p. 8. As set forth above, Congress rejected this precise argument in passing FOSTA-SESTA.

- FOSTA-SESTA's enacting clause states its purpose as: "to clarify that section 230 . . . does not prohibit the enforcement . . . of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking." Pub. L. No. 115-164 (2018).

- Section 2 states the "sense of Congress" that §230 "was never intended to provide legal protection to . . . websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims" and that "clarification of such section is warranted to ensure that such section does not provide such protection to such websites." *Id*.

- Section 4, which contains the amendments to §230, is titled: "Ensuring ability to enforce federal and state criminal and civil law relating to sex trafficking." *Id*.

The bill makes clear that §230 is not a shield for providers and users of interactive computer services against criminal and civil laws relating to sexual exploitation of children or sex trafficking. H. Rep. No. 115-572, pt. 1, at 1. With FOSTA-SESTA, Congress amended §230 to include an express exemption from claims under the TVPRA: "Nothing in this section . . . shall be construed to impair or limit . . . any claim in a civil action brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 U.S.C. §230(e)(5)(A). Through this exemption, Congress intended to restore victims' access to justice and hold tech companies accountable when they negligently or knowingly ignore trafficking on their websites. 164 Cong. Rec. H 1290, 1295 (Feb. 27, 2018) (McMorris Rodgers).

Twitter characterizes FOSTA-SESTA as applicable "only in extreme cases (like Backpage)." Mot., p. 5. Although the sale of victims facilitated through the personals section of Backpage was one impetus for Congressional investigation, neither the language of FOSTA-SESTA nor its legislative history limits its immunity exemption to a particular entity. In fact, Congress explicitly rejected the notion that FOSTA-SESTA is so limited, noting that FOSTA-SESTA would allow "vigorous criminal enforcement against all bad-actor websites, not just Backpage.com, through the creation of a new federal law and by explicitly permitting states to enforce criminal laws that mirror this new federal law and current federal sex trafficking law." H. Rep. No. 115-572, pt. 1, at 5. Furthermore, Backpage was shut down before FOSTA-SESTA was enacted, confirming that Congress saw a broader need for FOSTA-SESTA than targeting

Backpage.[11] Nothing in the law limited liability to websites that only sell sex.[12]

Twitter also argues that FOSTA-SESTA's immunity exemption applies only to cases where the defendant itself engaged in criminal misconduct. Mot., pp. 4-5. But Congress was undeniably concerned with websites that were not direct, criminal participants in trafficking, but still benefited financially at the expense of victims. Senate debate focused on amendments *that were ultimately rejected* because they would "protect websites that identify sex trafficking ads and then leave them up in order to continue profiting from them." 164 Cong. Rec. S 1827, 1829 (Blumenthal). Members of Congress were motivated by the testimony of survivors who described their re-victimization at the hands of websites that refused to remove images taken against their will. 164 Cong. Rec. H 1290, 1292-93 (Feb. 27, 2018) (Jackson Lee). Plaintiffs John Doe #1 and John Doe #2 were re-victimized in just this way.

There is simply no indication, as Twitter appears to suggest, that in passing FOSTA-SESTA, Congress intended that a website had to *be a criminal perpetrator* of sex trafficking or else be immune from liability.[13] Beyond the record, Twitter's position also fails logic, in that it would effectively carve out all third-party beneficiary liability (*i.e.*, the target of the legislation itself). In fact, the whole purpose of the 2008 amendments to the TVPRA was to add liability for those who benefit from trafficking perpetrated by others. If §230 were read to permit only Section 1595 claims where the defendant's conduct also violated Section 1591's criminal provisions, then there would be no such thing as standalone beneficiary liability. Twitter's logic therefore would defeat the purpose of FOSTA-SESTA and allow Twitter the unrestricted ability to negligently or knowingly profit from the sexual abuse of children. This is not the law.

In fact, the Senate recognized and noted the importance of discovery in cases of online sex trafficking when discussing the need for FOSTA-SESTA. Senator McCaskill observed that internet companies believed they "would be able to win again in court and deny us our

---

[11] The Congressional record references "at least 130 websites selling women and children." 164 Cong. Rec. H 1290, 1292 (Feb. 27, 2018) (Jackson Lee).

[12] The Congressional record also references the popular online marketplace Craigslist as a locus of trafficking. 164 Cong. Rec. S1849, at S1850.

[13] Regardless, and even though not required by law, Plaintiffs here do allege that Twitter *knowingly facilitated* sex trafficking, and bring a direct perpetrator claim on that basis.

opportunity to look at the documents and to look at the underlying evidence that one should always look at in an investigation." 164 Cong. Rec S 1827, 1830. This is precisely what Twitter is attempting to do here. Dismissal on such grounds would undermine the intent of Congress that there be a mechanism for investigating when websites are operating as bad actors. To cut off the opportunity even to gather discovery into these practices would obliterate the purpose of FOSTA-SESTA, taking away the victims' access to justice and denying Plaintiffs here the chance to prove that Twitter facilitated and benefited from their online sex trafficking. It would provide a shield to powerful internet companies with broad reach, while leaving the less technologically sophisticated victims of child sex trafficking powerless and exposed online.

Indeed, in light of positions like those taken by Twitter, Justice Clarence Thomas recently bemoaned that §230 is still being used to prevent claims from even proceeding to discovery, and implored courts to stop "reading extra immunity into statutes where it does not belong." *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 15 (2020). *See also id.* at 18 ("Paring back the sweeping immunity courts have read into §230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail.").

As described above, survivors of sex trafficking are often vulnerable children, and Congress has unequivocally stated its intention that they deserve their day in court. 164 Cong. Rec. S 1827 (Mar. 20, 2018) (Blumenthal). Where plaintiffs have set forth facts indicating that a website company violated the TVPRA as a third-party beneficiary of trafficking, an immunity claim must fail, and victims must at a minimum be granted the opportunity to discover their case.[14] In the present case, Plaintiffs allege facts that clearly place Twitter's actions in conflict with the law. Plaintiffs allege violations of both the direct and beneficiary provisions of the TVPRA, and both should proceed to discovery.

---

[14] *Cf., e.g., J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, at 12 (N.D. Cal. Oct. 28, 2020).

## CONCLUSION

It is critical that this Court reject Twitter's motion to dismiss, in order to ensure that the TVPRA and FOSTA-SESTA have any meaning. If this case cannot proceed to discovery, children everywhere are unprotected from online sex trafficking and re-victimization. Amici respectfully submit that the Court should deny the motion to prevent this miscarriage of justice.

Dated: June 17, 2021

Respectfully submitted,

By: /s/ *Kelly M. Dermody*

Kelly M. Dermody (Cal. Bar No. 171716)
kdermody@lchb.com
Michelle A. Lamy (Cal. Bar No. 308174)
mlamy@lchb.com
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Facsimile: 415-956-1008

Maggy Krell (Cal. Bar No. 226675)
maggykrell@gmail.com
James Dold
jdold@humanrightsforkids.org
Suzanne LaPierre
slapierre@humanrightsforkids.org
Human Rights for Kids
P.O. Box 5960
Washington, DC 20016
Telephone: (202) 573-7758

Jessica Heldman (Cal. Bar No. 277761)
jheldman@sandiego.edu
Melanie Delgado (Cal. Bar No. 244131)
mdelgado@sandiego.edu
Children's Advocacy Institute
5998 Alcala Park
San Diego, CA 92110
Telephone: 619-260-4806
Facsimile: 619-260-4753

*Attorneys for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notification.

DATED this 17th day of June 2021 By: /s/ *Kelly M. Dermody*
Kelly M. Dermody