COOLEY LLP
MICHAEL G. RHODES (116127)
(rhodesmg@cooley.com)
KYLE C. WONG (224021)
(kwong@cooley.com)
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone:     (415) 693-2000
Facsimile:     (415) 693-2222

LINH K. NGUYEN (305737)
(lknguyen@cooley.com)
JAMIE D. ROBERTSON (326003)
(jdrobertson@cooley.com)
4401 Eastgate Mall
San Diego, California 92121
Telephone:     (858) 550-6000
Facsimile:     (858) 550-6420

Attorneys for Defendant
TWITTER, INC.

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TWITTER, INC.,<br><br>                    Defendants. | Case No. 3:21-cv-00485-JCS<br><br>**DEFENDANT TWITTER, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date:     July 30, 2021<br>Hearing Time:       9:30 a.m.<br>Judge:     Honorable Joseph C. Spero |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1

II. ARGUMENT ....................................................................................................... 2

  A.  The FAC Fails to Plead That Twitter Violated 18 U.S.C. § 1591. ....................... 2

    1.  The FAC Does Not Plead That Twitter Engaged in Sex Trafficking in Violation of Section 1591(a)(1). .................................................. 2

    2.  The FAC Does Not Plead That Twitter Knowingly Facilitated a Sex Trafficking Venture in Violation of Section 1591(a)(2). .......................... 3

      a.  The FAC Does Not Plead that Twitter Participated in Any Type of Venture with the Perpetrators. ........................................... 3

      b.  The FAC Does Not Plead That Twitter Knowingly Benefited From Its Alleged Participation in Plaintiffs' Sex Trafficking. ........................................................................... 7

      c.  The FAC Does Not Plead that Twitter Had Actual Knowledge of What Happened to Plaintiffs. .................................... 9

    3.  FOSTA's Legislative History Shows Congress Intended to Create a Narrow Exception to CDA § 230 For Criminal Misconduct. .................. 10

  B.  CDA § 230's Grant of Immunity Applies to the Alleged Conduct Here. ............. 12

  C.  The FAC Fails to State a Claim Under 18 U.S.C. § 1595. ................................. 14

  D.  Plaintiffs' Remaining Claims Are Barred by CDA § 230. ................................. 16

  E.  The FAC Fails to State a Claim under 18 U.S.C. §§ 2258A & 2258B. ............... 18

  F.  The FAC Fails to State Its Remaining State Law Claims. ................................. 18

    1.  Plaintiffs' Concede They Cannot State a Claim Under Cal. Civ. Code § 1708.85. ............................................................................. 19

    2.  Plaintiffs' Fail to State a Claim for Products Liability. ......................... 19

    3.  Plaintiffs' Fail to State a Claim for Any Negligence Theory. ................ 20

    4.  Plaintiffs' Fail to State a Claim Under The UCL. ............................... 20

III. CONCLUSION ................................................................................................ 21

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

4

**Cases**

5

*A.B. v. Hilton Worldwide Holdings Inc.*,
    484 F. Supp. 3d 921 (D. Oregon 2020)................................................................ 16

6

*Ahmadi Abhari v. Victory Park Cap. Advisors*,
    2020 WL 7346676 (C.D. Cal. Nov. 16, 2020) ...................................................... 5

7

8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 2, 5, 8

9

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
    2020 WL 4368214 (N.D. Cal. Aug. 30, 2020) ...................................................... 6

10

11

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) ............................................................................ 13

12

13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 20, 21

14

*Bistline v. Jeffs*,
    2017 WL 108039 (D. Utah Jan. 11, 2017) .......................................................... 4

15

16

*Bradley Bergeron v. Monex Deposit Co.*,
    2020 WL 6468457 (C.D. Cal. Aug. 18, 2020) ...................................................... 6

17

*Callahan v. Ancestry.com Inc.*,
    2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ........................................................ 21

18

19

*Chetal v. Am. Home Mortg.*,
    2009 WL 2612312 (N.D. Cal. Aug. 24, 2009) ...................................................... 21

20

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) .................................................................. 17

21

22

*Dillard v. Victoria M. Morton Enterprises, Inc.*,
    2008 WL 11388472 (E.D. Cal. Oct. 8, 2008) ...................................................... 20

23

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) ............................................ 14, 16, 17

24

*Doe v. Kik*,
    482 F. Supp. 3d 1242 (S.D. Fla. 2020) ......................................................... 5, 6, 9

25

26

*Doe v. MySpace, Inc.*,
    474 F. Supp. 2d 843 (W.D. Tex. 2007).......................................................... 13, 17

27

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008).......................................................................... 13

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*FCC v. AT&T Inc.*,
   562 U.S. 397 (2011) ............................................................................................................ 2

*Fiol v. Doellstedt*,
   50 Cal. App. 4th 1318 (1996) ........................................................................................... 21

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................................................................... 20, 21

*Geiss v. Weinstein Co. Holdings, LLC*,
   383 F. Supp. 3d 383 (S.D.N.Y. 2019) ..................................................................... 6, 7, 8

*Gibson v. Craigslist, Inc.*,
   2009 WL 1704355 (S.D.N.Y. June 15, 2009) ................................................................ 17

*GN Resound A/S v. Callpod, Inc.*,
   2013 WL 1190651 (N.D. Cal. Mar. 21, 2013) ............................................................... 20

*Goddard v. Google, Inc.*,
   2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ............................................................... 13

*Gonzalez v. Google, Inc.*,
   335 F. Supp. 3d 1156 (N.D. Cal. 2018) ......................................................................... 18

*Gressett v. Contra Costa Cty.*,
   2013 WL 2156278 (N.D. Cal. May 17, 2013) ................................................................. 6

*Hart v. Massanari*,
   266 F.3d 1155 (9th Cir. 2001) ....................................................................................... 13

*Igbonwa v. Facebook, Inc.*,
   2018 WL 4907632 (N.D. Cal. Oct. 9, 2018) ................................................................. 14

*J.B. v. G6 Hospitality, LLC*,
   2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ....................................................... 5, 6, 15

*Jones v. Dirty World Ent. Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ......................................................................................... 13

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
   2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ............................................................... 7

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ................................................................................. 19, 20

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
   425 F. Supp. 3d 959 (S.D. Ohio 2019) ..................................................................... 9, 15

*M.L. v. Craigslist Inc.*,
   2020 WL 6434845 (W.D. Wash. April 17, 2020) .......................................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

**DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Noble v. Weinstein*,
  335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................................... 6

*M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*,
  809 F. Supp. 2d 1041 (E.D. Mo. 2011) ................................................................ 17

*Pennie v. Twitter, Inc.*,
  281 F. Supp. 3d 874 (N.D. Cal. 2017) ................................................................. 17

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ............................................................................... 15

*S.E.C. v. Clark*,
  915 F.2d 439 (9th Cir. 1990) ................................................................................. 4

*S.J. v. Choice Hotels Int'l*,
  473 F. Supp. 3d 147 (E.D.N.Y. 2020) ................................................................... 4

*Scognamillo v. Credit Suisse First Boston LLC*,
  2005 WL 2045807 (N.D. Cal. Aug. 25, 2005) ................................................ 18, 19

*Smith v. United States*,
  508 U.S. 223 (1993) .............................................................................................. 3

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
  1995 WL 323710 (N.Y.Sup.Ct. May 24, 1995) ............................................... 13, 14

*United States v. Afyare*,
  632 F. App'x 272 (6th Cir. 2016) ....................................................................... 4, 6

*United States v. DiTomasso*,
  81 F. Supp. 3d 304 (S.D.N.Y. 2015) .................................................................... 18

*United States v. Espinoza-Cano*,
  456 F.3d 1126 (9th Cir. 2006) ............................................................................... 4

*United States v. Flanders*,
  752 F.3d 1317 (11th Cir. 2014) ............................................................................. 3

*United States v. Martono*,
  2021 WL 39584 (N.D. Tex. Jan. 5, 2021) ............................................................ 12

*United States v. Moss*,
  379 F. App'x 651 (9th Cir. 2010) .......................................................................... 4

*United States v. Todd*,
  627 F.3d 329 (9th Cir. 2010) ................................................................................. 3

*United States v. Tollefson*,
  367 F. Supp. 3d 865 (E.D. Wis. 2019) ................................................................... 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

**DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

## TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Turkette*,
   452 U.S. 576 (1981) ........................................................................................ 4

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ................................................................... 14, 17

**Statutes**

18 U.S.C.
   § 1591 ................................................................................................. *passim*
   § 1595 ................................................................................................. *passim*
   § 1961 ......................................................................................................... 4,5
   § 2252 ........................................................................................................... 16
   § 2255 ..................................................................................................... 16, 18
   § 2258A ........................................................................................................ 18
   § 2258B ........................................................................................................ 18
   § 2421A .................................................................................................. 11, 12

47 U.S.C. § 230 ................................................................................... *passim*

Cal. Civ. Code § 1708.85 ................................................................................. 19

Pub. L. No. 115-164, 132
   Stat 1254 ..................................................................................................... 11
   Stat. 1255 ................................................................................................ 9, 11

**Other Authorities**

164 Cong. Rec S1849-08 ................................................................................ 11

Fed. R. Civ. P. 9(b) ......................................................................................... 21

H.R. Rep. No. 115-572 ...................................................................... 10, 11, 12

U.S. Const.
   Amd. I ..................................................................................................... 16, 17

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## I.   INTRODUCTION

Twitter does not tolerate CSE content on its platform.  Indeed, even the FAC pleads facts and relies on sources that discuss Twitter's efforts to moderate content on its platform, including Twitter's removal and reporting of suspected CSE content.[1]  And, as Plaintiffs concede, the content here was posted on Twitter's platform without its knowledge, consent, or involvement.  With respect to the Videos at issue in this case, Twitter removed them nine days after John Doe #1 reported them.  The sole question presented in this case, therefore, is whether Plaintiffs have alleged sufficient facts such that Twitter can be said to have allegedly engaged in actions that amount to criminal sex trafficking simply because the content was not immediately removed.  Plaintiffs have not.  The FAC has not, and cannot, show Twitter knowingly and affirmatively facilitated, and benefited from, a sex trafficking venture.

And because there is no dispute that unknown third parties posted the Videos on Twitter's platform,  CDA § 230 bars all claims against Twitter that are premised on publication of the Videos unless Plaintiffs can allege facts showing that Twitter's conduct constituted a violation of Section 1591, either because Twitter was one of the perpetrators who engaged in sex trafficking Plaintiffs (*i.e.*, violated Section 1591(a)(1)) or was a criminal beneficiary of Plaintiffs' alleged sex trafficking (*i.e.*, violated Section 1591(a)(2)).  Yet nothing in the FAC shows that Twitter's actions meet the elements of either law.  Twitter could not have violated Section 1591(a)(1) because the FAC only alleges that the Videos were posted on Twitter, not that Twitter was a perpetrator.  Twitter also could not have violated Section 1591(a)(2) because the FAC does not allege that: (i) Twitter shared a common purpose with the Perpetrators and took any steps to further Plaintiffs' alleged sex trafficking; (ii) knowingly received benefits from the alleged sex trafficking; or (iii) had actual knowledge that Plaintiffs' had been trafficked and that the Videos were evidence of that crime.  Absent any such allegations, Plaintiffs cannot establish FOSTA's Section 1595 exclusion and Plaintiffs' lawsuit is barred by CDA § 230.

No content moderation system is perfect.  Twitter has never professed that its system is.

---

[1] All "Mot." references are to Twitter's Motion to Dismiss (the "Motion," ECF No. 48), and all "Opp." references are to Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Opposition," ECF No. 55).  Capitalized terms not defined herein have the meanings ascribed to them in Twitter's Motion.  Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

But the failure of these systems to work properly, or to operate infallibly, is not tantamount to conspiring with sex traffickers.  At bottom, none of the facts alleged supports the imposition of sex trafficking liability on Twitter.  Plaintiffs' horrific and tragic underlying experience was caused by conduct committed entirely by third parties (the Perpetrators) with no involvement of Twitter.

## II.   ARGUMENT[2]

### A.   The FAC Fails to Plead That Twitter Violated 18 U.S.C. § 1591.

The Opposition does not dispute that a Section 1595 claim is exempt from CDA § 230 immunity only "if the conduct underlying the claim constitutes a violation of [S]ection 1591[.]" (Opp. 16 (quoting 47 U.S. Code § 230 (e)(5)(A)).)  Yet, as Twitter's Motion demonstrated, Plaintiffs' Section 1591(a)(1) and Section 1591(a)(2) claims suffer from multiple, independent defects that mandate dismissal.  (Mot. 11-19.)  The Opposition does nothing to change this analysis.

#### 1.   The FAC Does Not Plead That Twitter Engaged in Sex Trafficking in Violation of Section 1591(a)(1).

The Opposition claims that Twitter was a primary violator under Section 1591(a)(1) because it allegedly "possessed, disseminated, and refused to remove sex trafficking content" of Plaintiffs (the Videos) from its platform.  (Opp. 3-5.)  However, the law's text clearly requires the prohibited conduct to apply *to an individual*: Plaintiffs must plead that Twitter "provide[d], obtain[ed], [and] maintain[ed] . . . by any means a *person*" knowing that *the person* "will be . . . cause[d]" to engage in a commercial sex act.  18 U.S.C. § 1591(a)(1).  Plaintiffs claim to have pleaded this element by suggesting, without any statutory support, that a "person" includes videos depicting that individual. (¶ 141 ("Twitter knowingly provided, obtained, and maintained CSAM depicting John Doe #1 . . . and John Doe # 2 together.").)  Plaintiffs' novel interpretation is contradicted by the text of Section 1591(a)(1), finds no support in the case law, and runs counter to the plain meaning of the word "person."  *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011) ("When a statute does not define a term,

---

[2] The Opposition misconstrues Twitter's argument regarding Plaintiffs' burden.  Twitter never said Plaintiffs had to prove their claims at the dismissal stage, but rather that they must plead "sufficient factual matter," which, if taken as true, state a "plausible" claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And here, a "plausible" claim for relief requires the FAC to make sufficient factual allegations that make it reasonable to infer that Twitter's short delay in removing the Videos qualifies as sex trafficking Plaintiffs and/or knowingly benefiting from affirmative facilitation of their alleged sex trafficking.  (Mot. 3-5, 8-12.)  The FAC cannot and does not do this.

Cooley LLP
Attorneys at Law
San Francisco

Defendant Twitter, Inc.'s Reply iso
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

we typically give the phrase its ordinary meaning.").  Moreover, the use of "person" in other parts of Section 1591 clearly refers to an individual, not depictions of that person.  *E.g.*, 18 U.S.C. § 1591(a)(2) ("*person* has not attained the age of 18") and *id.* at § 1591(e)(2) ("coercion" is "threats of serious harm to or physical restraint against any *person*"); *see Smith v. United States*, 508 U.S. 223, 234 (1993) (examining multiple uses of same term throughout statute to determine meaning).[3]

The two cases in the Opposition, *United States v. Flanders*, 752 F.3d 1317, 1330 (11th Cir. 2014) and *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-80 (E.D. Wis. 2019) do not provide otherwise.  (Opp. 4-5.)  In both, the courts determined that each defendant violated Section 1591(a)(1) because they procured a person for commercial sex using electronic means, *i.e.*, they used the internet to communicate with the victims and to pay them to engage in recorded sex acts, similar to what the Perpetrators did here.  *See Flanders*, 752 F.3d at 1330; *Tollefson*, 367 F. Supp. 3d at 878-80.  The issue in those cases revolved around whether Section 1591 covered situations in which the defendant was not physically present during the alleged sex trafficking, not whether the challenged conduct could apply to an object (such as a video) instead of a person.

Furthermore, Twitter pointed out that Section 1591 requires the defendant to know that a victim "will in the future [be] cause[d]" to engage in a commercial sex act, and Plaintiffs cannot meet that element here because they allege that the sex trafficking venture (which Twitter knew nothing about) had already ended long before the Videos surfaced on Twitter.  (Mot. 12 n.10 (quoting *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010).)  By Plaintiffs' own admission, the venture was over at the time Twitter allegedly refused to remove the Videos from its platform, (¶¶ 96, 99), making it impossible for Twitter to know that its alleged failure to act would likely cause Plaintiffs to engage in commercial sex acts in the future.

**2.    The FAC Does Not Plead That Twitter Knowingly Facilitated a Sex Trafficking Venture in Violation of Section 1591(a)(2).**

**a.    The FAC Does Not Plead that Twitter Participated in Any Type of Venture with the Perpetrators.**

Plaintiffs fail to state that Twitter participated in a sex trafficking venture because the FAC contains no allegations showing the existence of any venture between Twitter and the Perpetrators

---

[3]  Merriam-Webster defines "person" as a "human" or "an individual."  *Person*, https://www.merriam-webster.com/dictionary/person (last viewed June 28, 2021).

Cooley LLP
Attorneys at Law
San Francisco

3

Defendant Twitter, Inc.'s Reply iso
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

1   or that Twitter affirmatively acted to further the Plaintiffs' alleged sex trafficking.  (Mot. 13-15.)

2   The Opposition's rejoinders are unavailing.

3       **No Venture.**  Plaintiffs argue they do not need to allege that Twitter was "associated in

4   fact" with the Perpetrators.  (Opp. 11.)  This interpretation ignores the plain statutory text.  Under

5   Section 1591(a)(2), liability hinges on whether the defendant participated in a "venture" with sex

6   traffickers, with "venture" defined as "any group of two or more individuals *associated in fact*."

7   18 U.S.C. § 1591(e)(6); *see United States v. Moss*, 379 F. App'x 651, 652 (9th Cir. 2010)

8   (affirming, on sufficiency grounds, conviction of defendant who participated in a Section

9   1591(a)(2) venture where evidence indicated the defendant "was associated in fact with [the sex

10  trafficker] for financial benefit from commercial sex on an on-going basis").

11      While Section 1591 does not define "associated in fact," that phrase is identical to a term

12  of art in the definition of an "enterprise" in the Racketeering Influenced and Corrupt Organizations

13  Act ("RICO"), 18 U.S.C. § 1961(4), another federal criminal statute that deals with venture liability.

14  It "is a long-established principle of statutory construction that similar statutory language should

15  be construed similarly."  *United States v. Espinoza-Cano*, 456 F.3d 1126, 1135 (9th Cir. 2006);

16  *S.E.C. v. Clark*, 915 F.2d 439, 449 n.17 (9th Cir. 1990) (noting that "similarity of statutes' language

17  is a strong indication" they "should be interpreted *pari pasu*").  Thus, RICO's longstanding

18  construction of "associated in fact" as a "group of persons associated together for a common

19  purpose of engaging in a course of conduct," *United States v. Turkette*, 452 U.S. 576, 583 (1981),

20  informs the meaning of "venture" in Section 1591(a)(2).  *See Bistline v. Jeffs*, 2017 WL 108039, at

21  *10 (D. Utah Jan. 11, 2017) (looking to RICO to interpret "venture" in 18 U.S.C. § 1589, the

22  TVPRA section dealing with slave labor), *rev'd on other grounds*, 918 F.3d 849 (10th Cir. 2019).[4]

23      Plaintiffs were also required to show that the alleged venture's common purpose was to sex

24  traffic them specifically.  (Mot. 12-13.)  Under either Section 1591 or 1595, a plaintiff must allege

25  that the defendant was associated in fact with the *particular* sex trafficking venture involving the

26  plaintiff.  *S.J. v. Choice Hotels Int'l*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) (noting that the

27

28

---

[4] This construction of "venture" is implicit to the *Afyare* court's holding that Section 1591(a)(2) requires proof of a sex trafficking venture and that "[t]wo or more people who *engage in sex trafficking together* are a sex-trafficking venture." *United States v. Afyare*, 632 F. App'x 272, 279-86 (6th Cir. 2016).

Cooley LLP
Attorneys at Law
San Francisco

4

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1    "[t]he statutory text speaks in singular terms" and refers to a "*particular* sex trafficking venture,"

2    as opposed to a "general sex trafficking problem"); *Doe v. Kik*, 482 F. Supp. 3d 1242, 1251 (S.D.

3    Fla. 2020) (requiring plaintiff to "allege[] facts that would plausibly establish" that Defendants

4    "participated in the sex trafficking venture involving her" to state a Section 1591 violation); *J.B. v.*

5    *G6 Hospitality, LLC*, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (requiring plaintiff to

6    allege that defendant "made a tacit agreement with the sex traffickers who victimized Plaintiff" to

7    state a Section 1595 claim).

8        The FAC contains no factual allegations that Twitter was associated in fact, or worked

9    towards any type of common purpose, with the Perpetrators.  (Mot. 13-14.)  It does not allege, for

10   instance, that the Perpetrators Tweeted the Videos or that Twitter has any connection to the

11   Perpetrators.  It does not allege that Twitter knew and communicated with the Perpetrators at all.

12   The Opposition's only response is to state, in conclusory fashion without explanation, that the FAC

13   pleads a continuous relationship between Twitter and the Perpetrators while the Videos were on

14   Twitter's platform.  (Opp. 16 n.34.)  This is not enough to plead a venture.  *See Ashcroft v. Iqbal*,

15   556 U.S. 662, 678-79 (2009) (Courts "are not bound to accept as true a legal conclusion couched

16   as a factual allegation").)  Plaintiffs suggest, with no factual support, that the Perpetrators Tweeted

17   the Videos, but—as shown in the Motion—the FAC never alleges that fact and the Opposition does

18   not contend otherwise.  Furthermore, the FAC concedes that Twitter removed the Videos from its

19   platform, reported the Videos to NCMEC, and suspended the account at issue, which cuts against

20   any inference that Twitter was associated-in-fact with the Perpetrators.  (¶¶ 128-29.)

21       And notably, while the Opposition disputes Twitter's use of "common purpose" to define

22   "venture," Plaintiffs offer no alternative definition nor contend that the FAC meets any such

23   definition.  Indeed, Plaintiffs have alleged no facts that could reasonably be construed as a

24   "venture."  Even assuming the Perpetrators posted the Videos (a fact that has not been alleged), this

25   would be the only alleged interaction between Twitter and the Perpetrators and it "only

26   demonstrates that the parties are associated in a manner directly related to [Twitter's] own primary

27   business activities," which "fails to demonstrate a common purpose."  *See Ahmadi Abhari v.*

28   *Victory Park Cap. Advisors*, 2020 WL 7346676, at *4 (C.D. Cal. Nov. 16, 2020) (analyzing

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1  "associated in fact" under RICO)).  Finding a venture between Twitter and the Perpetrators based

2  on a standard platform-user relationship also makes no sense considering Twitter's userbase, which

3  numbers in the hundreds of millions.  (¶ 23; *see J.B.*, 2020 WL 4901196, at *10 ("Craigslist cannot

4  be deemed to have participated in all ventures arising out of each post on its site.").)

5    **No Active Participation.**  Section 1591(a)(2) also requires a defendant to take "overt acts"

6  in furtherance of the alleged venture.  (Mot. 11-15.)  The Opposition does not contest this and

7  instead argues—without authority—that Twitter's "den[ial] [of] all requests to remove the

8  [Videos]" qualifies as an overt or affirmative act.  (Opp. 12.)  But this theory conflicts with the

9  FAC itself, which is clear that Plaintiffs were allegedly harmed by the failure to **immediately**

10  remove the Videos.  (¶¶ 124-25; *see also* Opp. 1.)  Regardless, such alleged conduct does not

11  qualify as an "overt act" because Twitter's failing to act is not "***affirmative*** conduct."  (Mot. 14-15

12  (quoting *Geiss v. Weinstein Co. Holdings, LLC*, 383 F. Supp. 3d 383, 169 (S.D.N.Y. 2019)).)[5]  In

13  other contexts, courts routinely find that a defendants' inaction or failure to act does not qualify as

14  an "overt act."  *See Bradley Bergeron v. Monex Deposit Co.*, 2020 WL 6468457, at *6–7 (C.D.

15  Cal. Aug. 18, 2020) ("When asserting an aiding and abetting a commodities violation, the plaintiff

16  must allege some ***affirmative*** conduct; that is, there must be evidence that [the] defendant

17  committed an overt act designed to aid in the success of the venture."); *Gressett v. Contra Costa*

18  *Cty.*, 2013 WL 2156278, at *17 (N.D. Cal. May 17, 2013) (plaintiff failed to allege that defendant

19  joined putative conspiracy where defendant merely "neglected to ensure MPD's compliance with

20  its own policy" because such inaction was not an "overt act").  Put simply, the nine-day removal

21  time frame is not tantamount to an affirmative act on Twitter's part.[6]

22

23  [5] The Opposition urges the Court not to follow *Afyare*.  (Opp. 11-12.)  However, *Afyare* is the seminal decision interpreting the term "participation in a venture" under Section 1591(a)(2) and its reasoning has been cited approvingly by numerous courts, including this Court.  *See B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 4368214, at *3 (N.D. Cal. Aug. 30, 2020).  And while the Opposition dispute's Twitter's contention that Section 1591(a)(2) requires active participation in sex trafficking and tries to distinguish *Afyare*, Twitter cited several other cases that agreed with *Afyare*.  For example, Twitter also cited *Kik*, in which the court conclusively held that a plaintiff must plead a violation of Section 1591(a)(2) to abrogate CDA § 230 immunity and Section 1591(a)(2) requires knowing and affirmative participation by the ICS provider in the sex trafficking venture involving the plaintiff.  *See Kik*, 482 F.Supp.3d at 1251.  The Opposition does not address *Kik* at all.

28  [6] Even assuming Twitter's inaction could be deemed an overt act, that act must *further* the sex trafficking venture involving Plaintiffs.  *See Kik*, 482 F. Supp. 3d at 1251 (dismissing complaint because plaintiff failed to plead that Defendants "participated in the sex trafficking venture

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

1

**b.      The FAC Does Not Plead That Twitter Knowingly Benefited From Its Alleged Participation in Plaintiffs' Sex Trafficking.**

2

3       To survive a motion to dismiss, Plaintiffs must allege facts supporting the existence of a

4   "causal relationship" between Twitter's alleged "affirmative conduct furthering the sex-trafficking

5   venture" and Twitter's "receipt of a benefit," as well as Twitter's "actual . . . knowledge of that

6   causal relationship."  (Mot. 15-17 (citing *Geiss*, 383 F. Supp. 3d at 169, and *Kolbek v. Twenty First*

7   *Century Holiness Tabernacle Church, Inc.*, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).)

8   The FAC fails to do so and nothing in the Opposition cures these fatal defects.

9       First, the Opposition wrongly urges the Court to ignore the considered and well-reasoned

10  decisions in *Geiss* and *Kolbek*, not because of some error in their legal analyses, but because of

11  differences in *Kolbek's* procedural posture and with *Geiss's* facts.[7]  (Opp. 8.)  But these differences,

12  even if true, are irrelevant here.  Both the *Geiss* and *Kolbek* courts examined the statutory text to

13  determine whether Section 1591(a)(2) requires the defendant's actual knowledge of a causal link

14  between its affirmative acts furthering the sex trafficking venture and its receipt of a benefit.  *Geiss*,

15  383 F. Supp. 3d at 168-70; *Kolbek*, 2013 WL 6816174, at *16. The specific procedural posture and

16  facts of those cases are irrelevant to the legal holding about what the statute requires.

17      More importantly, however, the Opposition never explains how Twitter could have received

18  a benefit from Plaintiffs' alleged sex trafficking when none of the broad allegations regarding how

19  Twitter makes money are connected to what happened to them.  Further, as Twitter showed, the

20  FAC does not allege that there were any advertisements, or promoted Tweets associated with the

21  Videos, nor does it allege that Twitter obtained (let alone licensed) any data related to the Videos.

22  (Mot. 16.)  The Opposition's only reply is to insist that Twitter monetizes all content and claim that

23  Twitter "continued to distribute the CSAM ***that it had monetized*** after" John Doe #1 and his mother

24  involving her"); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) ("Plaintiff must
    allege specific conduct that furthered the sex trafficking venture.").  But by the time the Videos

25  were posted on Twitter, there was no venture to further because the venture's alleged common
    purpose—the trafficking of Plaintiffs—had ended.  Indeed, Twitter's alleged involvement in failing

26  to take down the Videos occurred long ***after*** the Videos were created (on an entirely different
    platform) and long after Plaintiffs had successfully freed themselves from the Perpetrators.  (¶¶ 96,

27  99.)  Given that Plaintiffs also do not even allege that the Perpetrators posted the Videos or had any
    connection with those who did, (*supra* at 4-5), Plaintiffs have not pleaded that Twitter knowingly

28  acted to further a common purpose it shared with the Perpetrators.
    [7] The Opposition improperly collapses its analysis of the knowing benefit prong under Section 1595
    and Section 1591 together.  (Opp. 6-10.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

reported it.  (Opp. 8-10 (citing ¶¶ 52-54).)  But Plaintiffs allege no facts to support this conjecture,[8] (Mot. 16), and the Court is free to disregard allegations that "are no more than conclusions," which "are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  Thus, there are no "well-pleaded factual allegations" demonstrating that Twitter monetized the Videos.  (*See* Mot. 16.)

Nor does the Opposition provide any other facts that would establish the "causal relationship" between receipt of a benefit and Twitter's "actual knowledge of that causal relationship."  (*See* Mot. 16-17.)  Plaintiffs argue that Twitter was motivated to delay removal of the Videos for nine days because CSE content is "highly sought-after" on Twitter and Twitter "makes significant revenue from the presence, searches, connections, and interactions of such illegal and dangerous material."  (Opp. 9 (citing ¶¶ 37, 71, 84).)  But these allegations are not only incorrect, they are conclusory and unsupported.  To the contrary, Plaintiffs admit that Twitter searches for, reports, and removes CSE content and users who Tweet CSE content from its platform.  (¶¶ 55-57, 64-66, 128-29, 131.)  This cuts against any inference that Twitter knowingly tried to profit from the Videos.[9]  And while Plaintiffs parrot back their conclusory allegations from the FAC, the Opposition fails to explain how they establish the existence of a causal link between Twitter's alleged conduct and any benefit it received, and, importantly, Twitter's knowledge of that link.

In any event, the FAC's allegations fail because they only point to the *absence* of action by Twitter—*i.e.*, that Twitter benefited because of its alleged inaction towards the Videos, and Section 1591(a)(2) requires a Defendant to benefit from "***affirmative conduct*** furthering the sex-trafficking venture."  *Geiss*, 383 F. Supp. 3d at 169.

---

[8] The Opposition contends that the FAC's allegations, which quote some of Twitter's statements on how it generally monetizes its platform, support the conclusion that Twitter monetizes all public posts and interaction on its platform.  (Opp. 8-9.)  But nowhere in any of Twitter's explanations does Twitter say it monetizes *all* public posts and *every* interaction with them.  For example, with respect to its data licensing, Twitter merely says that the data it licenses "consists of public Tweets and their content."  (¶ 33.)  Plaintiffs read the word "all" where there is none.

[9] None of Twitter's arguments relied on the exhibits regarding Twitter's effort to combat CSE content.  While the Opposition makes much ado of the exhibits that accompanied Twitter's Motion, (Opp. 2), it does not identify a single one of Twitter's arguments that relied on the exhibits.  Twitter submitted the exhibits to draw the Court's attention to publicly available information regarding Twitter's efforts to combat CSE content that the FAC ignored, but these facts are in no way required or necessary to the resolution of this Motion.

Cooley LLP
Attorneys at Law
San Francisco

8

Defendant Twitter, Inc.'s Reply iso
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

**c.    The FAC Does Not Plead that Twitter Had Actual Knowledge of What Happened to Plaintiffs.**

Plaintiffs respond to Twitter's argument that the FAC does not allege Twitter's actual knowledge of Plaintiff's sex trafficking by claiming—without citation to authority—that pleading "reckless disregard or constructive knowledge" suffices for a Section 1591(a)(2) violation.  (Opp. 13.)  This contention is meritless.

Courts have repeatedly held that Section 1591(a)(2) requires a defendant to have actual knowledge of the sex trafficking venture involving the plaintiff to constitute a criminal violation.  *E.g.*, *Kik*, 482 F. Supp. 3d at 1251 (dismissing complaint against ICS provider because plaintiff "has not alleged facts that would plausibly establish that Defendants ***knowingly participated in the sex trafficking venture involving her***").   Indeed, the Opposition's interpretation of Section 1591(a)(2) makes no sense given that Section 1591 expressly defines "participation in a venture" as "***knowingly*** assisting, supporting, or facilitating a violation of [Section 1591](a)(1)."  18 U.S.C. § 1591(e)(4).[10]  To be sure, Section 1591 provides for a "reckless disregard" *mens rea* standard for certain other elements of the violation, but that standard "does not lessen [Section 1591(a)(2)'s] scienter requirement of actual knowledge as to *participation* or the *venture's true ends*."  *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969-70 (S.D. Ohio 2019) (emphasis original) ("The term 'participation in a venture' in § 1591 thus imports a state of mind requirement—the participation must be 'knowing.'").

The Opposition fares no better with its claim that Twitter had actual knowledge of Plaintiffs' alleged sex trafficking because John Doe #1 verified his age, he and his mother reported the Videos, comments on the Videos, and someone else had already reported one of the accounts that Tweeted the Videos.  (Opp. 5, 12-14.)  None of these allegations demonstrate that Twitter understood that Plaintiffs were the victims of sex trafficking and the acts depicted in the Videos were commercial sex acts.  (Mot. 18.)  And while the FAC alleges that John Doe #1 emailed saying Plaintiffs "were baited, harassed, and threatened to take these videos," (Opp. 13 (citing ¶ 123)), that is simply

---

[10]  With FOSTA, Congress amended Section 1591 to add Section 1591(e)(4) expressly defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."  Pub. L. No. 115-164, 132 Stat. 1255.  This amendment made clear that actual knowledge of the sex trafficking venture is required.  *See M.A.*, 425 F.Supp.3d at 969.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

insufficient to establish Twitter's actual knowledge of the alleged sex trafficking.  From John Doe #1's email Twitter cannot tell whether Plaintiffs were harassed and baited by friends or an adult, for example, and Twitter cannot tell whether the harassment caused them to engage in the sex acts, film them, or share the Videos with others.[11]  Twitter is alleged to have played no part in this conduct.  Thus, John Doe #1's email would not have informed Twitter of the alleged "*venture's true ends*," *i.e.*, the sex trafficking of Plaintiffs.[12]  *See M.A.*, 425 F.Supp.3d at 970.

Because the exception to CDA § 230 immunity created by FOSTA only applies to Plaintiffs' Section 1595 claim "if the conduct underlying the claim constitutes a violation of [S]ection 1591," 47 U.S.C. § 230(e)(5), and Plaintiffs cannot and do not plead a violation of either Section 1591(a)(1) or (a)(2), Plaintiffs' Section 1595 claim should be dismissed with prejudice.

### 3. FOSTA's Legislative History Shows Congress Intended to Create a Narrow Exception to CDA § 230 For Criminal Misconduct.

The Opposition argues that FOSTA's legislative history demonstrates Congress's intent to create a broad exception to CDA § 230 immunity for civil sex trafficking claims.  (Opp. 16-19.)  Both the text and legislative history of FOSTA, however, reveal Congress carefully balanced the need to combat sex trafficking and websites that actively facilitate it with the continued need to incentivize interactive computer services (like Twitter) to remove content from their platforms without opening them up to crushing liability for third-party content they did not create.

Take, for instance, the House Report on FOSTA, which indicates that Congress acknowledged that the *mens rea* requirement of Section 1591 is "difficult to prove" when it comes to online service providers.  H.R. Rep. No. 115-572, pt. 1, at 3-6.[13]  Yet, in lifting some aspects of

---

[11]  The Opposition argues that Twitter knew the Videos depicted commercial sex acts because "Twitter monetized the distribution of [the Videos]."  However, as explained in Section II.A.2.b., the FAC does not adequately plead that Twitter knowingly monetized the Videos.  The Opposition also contends that the Tweets of the Videos received "considerable engagement," which rendered the sex acts in the Videos commercial sex acts.  (Opp. 13.)  But the Opposition fails to explain how the engagement with the Videos would have benefited the users who Tweeted them or Twitter, given that the FAC is devoid of facts indicating Twitter licensed data related to engagement with the Videos.  (*See supra* at 7-8.)

[12]  John Doe #1 did not send the email telling Twitter that Plaintiffs had been "baited, harassed, and threatened" until after Twitter had already informed him that it did not believe the Videos violated its policies.  (¶ 123.)  Thus, the email could not have informed Twitter's decision.

[13]  The Opposition contends that the House Report's discussion of Section 1591's difficult *mens rea* standard was "describing how hard it is to prove actual knowledge under § 1591(a)(1) claims for advertising."  (Opp. 18.)  But nothing in the House Report limits its discussion those claims.  H.R.

Cooley LLP
Attorneys at Law
San Francisco

10

Defendant Twitter, Inc.'s Reply ISO
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

CDA § 230 immunity, Congress not only left Sections 1591(a)(1) and (a)(2) intact, but also—immediately after acknowledging the high standard for liability under that statute—used Section 1591 as the prerequisite for a plaintiff to pierce CDA § 230 immunity.  *Id.*; Pub. L. No. 115-164, 132 Stat. 1255.  And notably, Congress added Section 1591(e)(4) making clear that "[t]he term 'participation in a venture' means ***knowingly*** assisting" a Section 1591(a)(1) violation over the DOJ's objection that doing so would make it harder for prosecutors to prove a violation.  164 Cong. Rec. S1849-08, S1869; Pub. L. No. 115-164, 132 Stat. 1255.  Thus, Congress deliberately abrogated CDA § 230 immunity only where an ICS provider had actual knowledge of, and committed an affirmative act in furtherance of, the plaintiff's sex trafficking.

At the same time, Congress also created a new, and separate, law that prohibited the promotion or facilitation of prostitution "in reckless disregard of the fact that such conduct contributed to sex trafficking."  Pub. L. No. 115-164, 132 Stat 1254.  Congress believed that the new violation (codified at 18 U.S.C. § 2421A) would be "far more useful to prosecutors" and encourage more criminal investigations of potential bad actor websites.  H.R. Rep. No. 115-572 pt. 1, at 5 ("There had been no criminal investigation up until the Senate investigation to uncover exactly what Backpage was doing, which is what this bill aims to remedy.").  And of FOSTA's entire package of laws, Congress observed:

> H.R. 1865 will allow vigorous criminal enforcement against all bad-actor websites . . . through the creation of a new federal law [*i.e.*, Section 2421A] and by explicitly permitting states to enforce criminal laws that mirror this new federal law and current federal sex trafficking law. With this robust criminal enforcement, victims will have more opportunities to obtain restitution. Furthermore, this enforcement will also provide victims with information that will be sufficient to establish successful civil pleadings, by revealing the extent of content development in which these websites engage. *Id.* at 6.

Thus, Congress carefully weighed competing policy interests to limit CDA § 230's generally broad immunity with surgical precision.  *See* 164 Cong. Rec., at S1852 (statement of Senator Blumenthal ("The purpose of [FOSTA] is . . . narrowly focused: A website [] operator must intend to facilitate prostitution.");  *id.* at S1860 (state of Senator Schumer ("I believe [FOSTA] achieves the important balance between providing a mechanism to hold accountable sex traffickers

Rep. No. 115-572, pt. 1, at 3-6.  The House Report discusses Section 1591 broadly and refers to advertising claims as an example. *Id.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS**

1   while allowing free speech and innovation to continue to thrive.").

2        Moreover, contrary to Plaintiffs' assertion, Twitter did not argue that FOSTA's reach was

3   largely confined to Backpage.  (Opp. 16.)  Rather, FOSTA's legislative history shows that Congress

4   intended to lift CDA § 230 immunity for websites that engage in egregious conduct *similar to*

5   Backpage.  *See* H.R. Rep. No. 115-572 pt. 1, at 3 (condemning websites that "have purposely

6   created platforms designed to facilitate prostitution and sex trafficking" like "Eros, Massage Troll,

7   and cityxguide").[14]  Indeed, the Opposition acknowledges that FOSTA was aimed at websites that

8   "*have done nothing to prevent the trafficking of children*," (Opp. 17-18 (emphasis original)).  And,

9   even according to Plaintiffs' own allegations, Twitter plainly is **not** one of those websites.  Twitter

10  enforces its policies against CSE and other abusive content.  (¶¶ 55-57.)  Twitter provides users a

11  reporting mechanism for CSE content.  (¶ 58.)  Twitter polices its platform, removes CSE content,

12  and bans accounts that violate its CSE policy.  (¶¶ 42-43, 60, 128-29.)  Twitter also makes a

13  substantial number of reports to NCMEC each year flagging CSE content—in 2020, over 65,000.[15]

14  (¶¶ 64-65.)  Providing protection for online companies that are merely unsuccessful in removing

15  all objectional content in accordance with their policies is what CDA § 230 was designed to do,

16  and what the requirements of the FOSTA exception were meant to exclude.  FOSTA was not aimed

17  at platforms like Twitter that police their own platforms and remove harmful content.  S*ee* 164

18  Cong. Rec. at S1859 (statement of Senator Fischer distinguishing Twitter from the websites at

19  which FOSTA is aimed "In its current form, [CDA §] 230 . . . has allowed websites that depend on

20  user content, like Twitter [] to flourish, but it has [also] been misused to effectively provide

21  impunity for bad actors maintaining websites that facilitate sex trafficking.")).

22      **B.    CDA § 230's Grant of Immunity Applies to the Alleged Conduct Here.**

23        The Opposition ignores Twitter's arguments that CDA § 230 provides immunity to ICS

---

[14] The owner of cityxguide was recently indicted for charges that included one count for "promotion and facilitation of prostitution and reckless disregard of sex trafficking in violation of 18 U.S.C. § 2421A."  *United States v. Martono*, 2021 WL 39584, at *1 (N.D. Tex. Jan. 5, 2021).

[15] In comparison, Backpage not only failed to remove advertisements it knew related to child sex-trafficking, it affirmatively acted to help sex traffickers evade detection by law enforcement.  H.R. Rep. No. 115-572 pt. 1, at 5 ("Backpage would automatically delete incriminating words, such as 'amber alert,' from sex ads prior to publication, moderators then manually deleted incriminating language that filters missed, and the website coached its users on how to post 'clean' ads to cover illegal transactions.").

Cooley LLP
Attorneys at Law
San Francisco

12

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

providers like Twitter for claims arising from their decisions to publish or remove content created by third parties.  (Mot. 8-11.)  Instead, the Opposition argues—without supporting authority—that "CDA 230 immunity is only triggered by good faith removal of content."[16]  (Opp. 19-21 (citing 47 U.S.C. § 230(c)(2)).)  That is incorrect.  While Plaintiffs focus on CDA § 230(c)(2), it fails to acknowledge that it is well settled in the Ninth Circuit and elsewhere that CDA § 230(c)(1) immunizes an ICS provider's decision to publish or remove third-party content: "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009) (same); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 406-07 (6th Cir. 2014) (listing the Circuits that endorsed this interpretation of CDA § 230(c)(1)). *Roommates* and *Barnes* are binding precedent.  *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until overruled by a [competent] body.").

Indeed, Congress's purpose in enacting CDA § 230 was to encourage platforms like Twitter to self-police.  Congress passed CDA § 230 to specifically overturn the holding in *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y.Sup.Ct. May 24, 1995), in which the defendant was held liable as a publisher under state law for unlawful messages, generated by third parties, that it "failed to delete" from its message board "*because*" it "voluntarily deleted some messages" but not all.  *Roommates*, 521 F.3d at 1163.  Indeed, as the Ninth Circuit has observed:

> The *Stratton Oakmont* court reasoned that [the defendant's] decision to perform some voluntary self-policing made it akin to a [] publisher, and thus responsible for the [unlawful] messages on its bulletin board. . . Under the reasoning of *Stratton Oakmont*, [however,] online service providers that voluntarily filter some messages become liable for all messages transmitted, whereas providers that bury their heads

---

[16] Even if Plaintiffs were right that only CDA § 230(c)(2) provides immunity to ICS providers (they are not), other courts, including this Court, have found that (c)(2) provides immunity to providers from claims premised on a provider's imperfect or uneven content moderation, like the claims here. *See Goddard v. Google, Inc.*, 2008 WL 5245490, at *6 (N.D. Cal. Dec. 17, 2008) ("The intent of Congress in enacting § 230(c)(2) was to encourage efforts by Internet service providers to eliminate [unlawful] material by immunizing them from liability *where those efforts failed*."); *see also Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 850 (W.D. Tex. 2007), *aff'd*, 528 F.3d 413 (5th Cir. 2008) ("To the extent Plaintiffs seek to hold MySpace liable for ineffective security measures and/or policies relating to age verification, the Court alternatively finds such claims are barred under § 230(c)(2)(A).").  As Twitter's Motion pointed out, there are no well-pled facts in the FAC that suggest Twitter's alleged deviation from its CSE policy was in bad faith rather than mere error. (Mot. 9 n.8.)  The Opposition does not address those arguments.

1
2
3

> in the sand and ignore problematic posts altogether escape liability. . .  In passing section 230, Congress sought to spare [ICS providers] this grim choice by allowing them to perform some editing on user-generated content without [] becoming liable for all . . . unlawful messages that they *didn't* edit or delete.

4   *Id*.  In other words, finding liability against ICS providers when they fail to remove unlawful

5   content from their platforms *because* they voluntarily engage in self-policing, but do so imperfectly,

6   would discourage providers from self-policing and open them up to catastrophic liability.

7       This same reasoning applies to liability against ICS providers premised on a provider's

8   failure to remove unlawful content after receiving notice of its unlawful nature.  *Zeran v. Am.*

9   *Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997) ("Liability upon notice would defeat the [] purposes

10  advanced by § 230 of the CDA.").  ICS providers are immunized even where a plaintiff alleges that

11  the provider had notice of the unlawful content.  *See Doe v. Bates*, 2006 WL 3813758, at *18 (E.D.

12  Tex. Dec. 27, 2006) ("distributor liability," *i.e.*, liability based on whether an ICS provider had

13  notice of the unlawful nature of the content at issue, "is merely a subset, or a species, of publisher

14  liability, and is therefore also foreclosed by § 230"); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632,

15  at *1, *5-7 (N.D. Cal. Oct. 9, 2018) (Spero, J.), *aff'd,* 786 F. App'x 104 (9th Cir. 2019) (Facebook

16  immunized even where Facebook failed to remove defamatory content of which it had notice).

17      Yet Plaintiffs urge the Court to find against Twitter based on claimed failures in its content

18  moderation efforts.  (*E.g.*, Opp. 15 (contending Twitter should be liable for sex trafficking because,

19  as a result of its self-policing, it generally knows that CSE content is on its platform); ¶¶ 61-65

20  (asserting that Twitter should be liable because it allegedly does not report and remove all CSE

21  content on its platform).)  Put differently, the Opposition argues the Court should infer Twitter's

22  intent to facilitate Plaintiffs' sex trafficking from the fact that it tries to remove that very kind of

23  content but failed at first here to remove it.  This is no different from the *Stratton-Oakmont* court's

24  reasoning and should be rejected.

25  **C.    The FAC Fails to State a Claim Under 18 U.S.C. § 1595.**

26      Even if not barred by CDA § 230 (it is),[17] Plaintiffs' Section 1595 claim fail because the

27
28

---

[17] In enacting FOSTA, Congress expressly carved out from CDA § 230 immunity any claims under Section 1595 "if the conduct underlying the claim constitutes a violation of section 1591."  47 U.S.C. § 230.  The Opposition does not explain, let alone address, how this clear wording permits the broader claims authorized under Section 1595 to go forward.

Cooley LLP
Attorneys at Law
San Francisco

14

Defendant Twitter, Inc.'s Reply iso
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS

1    FAC does not plead all the elements of the claim, *i.e.*, that Twitter participated in a venture with

2    the Perpetrator or should have known about Plaintiffs' alleged sex trafficking. (Mot. 19-21.) While

3    the Opposition makes much of the lower "should have known" standard applicable to Section 1595

4    claims, it generally just repeats the FAC's allegations and does not effectively rebut Twitter's

5    arguments. (Opp. 14-16.)

6        Plaintiffs contend the FAC need not plead a "conspiracy between [beneficiary defendants]

7    and the trafficker" to state a Section 1595 claim. (Opp. 14-15.) This is a red herring. Twitter

8    merely pointed out that pleading a "venture" under Section 1595 required Plaintiffs to allege facts

9    demonstrating "a continuous [] relationship between the trafficker and the [defendant] such that it

10   would appear that the trafficker and the [defendant] have established a pattern of conduct or could

11   be said to have a tacit agreement." *J. B.*, 2020 WL 4901196, at *9 (citing *M.A.*, 425 F. Supp. 3d at

12   970)).[18]  In *J.B.*, for example, the Court agreed that under the "should have known" standard for a

13   Section 1595 claim, the plaintiff had to "allege facts supporting the inference that Craigslist made

14   a tacit agreement with the sex traffickers who victimized Plaintiff, and she [did] not do[] so." 2020

15   WL 4901196, at *7-10 (dismissing complaint). Here, the FAC is similarly devoid of allegations

16   indicating the existence of a relationship between Twitter and the Perpetrators. (Mot. 13-14; *see*

17   *supra* at 4-5.) The Opposition does not dispute this. (*See* Opp. 14-15; *see supra* at 5.)

18       Additionally, the FAC alleges no facts showing that Twitter "should have known" that the

19   Videos involved sex trafficking conduct—*i.e.*, the exploitation of children for commercial sex

20   purposes. (Mot. 20-21; *see supra* at 9-10.) The Opposition disputes this, but none of the allegations

21   it points to demonstrate that Twitter should have known that Plaintiffs' had been exploited for

22   commercial sex purposes. For example, the Opposition refers to the hashtags associated with CSE

23

24   ――――――――――――――――

25   [18] The Opposition contends that Twitter's interpretation of *M.A.* is the "precise opposite" of the
     holding in *M.A.* (Opp. 14-15.) Plaintiffs are incorrect. Twitter cited *M.A.* for the proposition that
26   pleading a "venture" requires a plaintiff to allege facts showing a "continuous [] relationship"
     between the beneficiary and the trafficker. (Mot. 13.) The *M.A.* court noted that a "venture" was
     found in another case, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017), because the *Ricchio*
27   plaintiff's allegation about the beneficiary defendant and the trafficker "exchanging high-fives . . .
     while speaking about 'getting this thing going again'" indicated, "among other things, [that] the
28   trafficker and hotel owner had prior dealings," *i.e.*, a "continuous business relationship." The *M.A.*
     plaintiff satisfied this requirement by alleging the hotel defendants "repeatedly rented rooms" to
     people it should have known were engaged in sex trafficking. 425 F.Supp.3d at 970.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

content on Twitter's platform, Twitter's CSE reporting structure, and Twitter's NCMEC reports[19] (Opp. 15), but it never explains how any of these things are relevant to what happened to Plaintiffs. (*See supra* at 9-10.)  Similarly, the Opposition argues that the comments on the Videos and report of the @StraightBross account are also "direct evidence of liability," but neither indicated that the Videos depicted commercial sex acts.  (*See* ¶¶ 101, 121.)  The Opposition's reliance on Twitter's alleged "general knowledge" of CSE content on its platform also fails because such knowledge does not demonstrate Twitter should have known of what specifically happened to Plaintiffs.  *See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937-38 (D. Oregon 2020) (rejecting allegations that defendants "should have known of Plaintiff's trafficking because [they] were generally aware of trafficking occurring at their branded properties").  Finally, Twitter's Motion explained that none of the reports or emails sent to Twitter about the Videos indicated that Plaintiffs had been sex trafficked or that they involved commercial sex acts.  (Mot. 20-21; *see supra* at 9-10.)

### D.   Plaintiffs' Remaining Claims Are Barred by CDA § 230.

The Opposition disputes whether CDA § 230 bars Plaintiffs' claim under 18 U.S.C. § 2255 ("Section 2255") premised on Twitter's alleged violation of 18 U.S.C. § 2252 ("Section 2252"), and advances three faulty arguments in support: (i) child pornography is unlawful speech not protected under the First Amendment; (ii) Twitter relied on *Bates*, an out-of-circuit decision, to argue that claims under Section 2255 remain barred; and (iii) Congress intended to create civil liability for ICS providers for possession and distribution of child pornography.[20]  (Opp. 22-25.)

As an initial matter, CDA § 230's language plainly does not exempt civil claims under Section 2255.  *See M.L. v. Craigslist Inc.*, 2020 WL 6434845, at *9-10 (W.D. Wash. April 17, 2020).  It only exempts Section 1595 claims based on violations of Section 1591, not Section 2255.  47 U.S.C. 230(e)(5) ("Nothing in this section . . . shall be construed to impair or limit . . . any claim in a civil action brought under [S]ection 1595 . . . if the conduct underlying the claim constitutes a

---

[19] The Opposition faults Twitter for its purported low reporting to NCMEC in comparison to Facebook, (Opp. 15), but NCMEC itself notes that "[h]igher numbers of reports can be indicative of a variety of things including larger numbers of users on a platform."  (*E.g.*, *Nat'l Ctr. for Missing and Exploit. Child.*, 2020 Reports by Electronic Service Providers (ESP), https://www.missingkids .org/content/dam/missingkids/gethelp/2020-reports-by-esp.pdf (last visited June 28, 2021).)

[20] The FAC also advanced a claim under 18 U.S.C. § 2255 against Twitter based on its alleged violation of Section 1591.  (¶¶ 164-76.)  Twitter's Motion explained that this claim remain barred by CDA § 230, Mot. 21, and the Opposition does not attempt to defend this claim.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   violation of [S]ection 1591."). Moreover, Plaintiffs have misconstrued FOSTA's legislative history

2   as already discussed (*see supra* at 10-12).

3       Second, whether the First Amendment protects the speech at issue has no bearing on

4   whether an ICS provider is immune under CDA § 230. (*See* Mot. 3, 8.)  Indeed, Congress's purpose

5   in enacting CDA § 230 would not be served if immunity only applied to lawful or protected speech.

6   (*See supra* at 12-14.)  There is also no question that courts routinely find CDA § 230 immunizes

7   ICS providers from claims based on all kinds of unprotected and harmful speech.  *E.g.*, *Pennie v.*

8   *Twitter, Inc.*, 281 F. Supp. 3d 874, 880, 888-92 (N.D. Cal. 2017) (Spero, J.) (ICS providers

9   immunized from claims allegedly arising from third party "speech that aids designated terrorist

10  organizations" in violation of numerous federal statutes).  Were it not this way, ICS providers like

11  Twitter would be subject to overwhelming liability given the "staggering" amount of information

12  communicated via their platforms.  *Zeran*, 129 F.3d at 330-31.

13      And for the same reason, the Opposition's argument that child pornography is not

14  immunized because it is illegal contraband fails.  Courts have been clear that the legality or illegality

15  of the speech is immaterial to whether an ICS provider is entitled to immunity under CDA § 230

16  because all that matters is whether the plaintiff's claim, as here, treats the provider as a speaker or

17  publisher of content provided by a third party.  *E.g., Pennie*, 281 F. Supp. 3d at 879-82, 888-92.

18  Indeed, many of the cases finding CDA § 230 immunity involve unsavory factual circumstances.

19      Third, Plaintiffs dispute Twitter's reliance on *Bates* and its reasoning by asserting that *Bates*

20  was wrongly decided because it applied analysis regarding defamation to child pornography.[21]

21  (Opp. 23.)  However, "[n]othing on the face of the statute supports Plaintiffs' narrow interpretation

22  that [CDA § 230] applies only to . . . defamation."  *Doe v. MySpace*, 474 F. Supp. 2d at 849.

23      Finally, the Opposition argues that Congress did not intend to immunize ICS providers from

24  civil liability for possession and distribution of child pornography.  (Opp. 24.)  For support, it notes

25  that Congress exempted criminal laws relating to the sexual exploitation of children from CDA

26

_____

27  [21] Plaintiffs also urge the Court not to follow *Bates* because it is an out-of-circuit decision.  (Opp. 23-24.)  However, numerous other non-Fifth Circuit courts have cited *Bates* approvingly.  *E.g., M.A. ex rel. P.K. v. Vill. Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1055 (E.D. Mo. 2011); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 965 n.6 (N.D. Ill. 2009); *Gibson v. Craigslist, Inc.*, 2009 WL 1704355, at *4 (S.D.N.Y. June 15, 2009).  Twitter is not aware of a single case – and Plaintiffs cite none – in support of their position.

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

§ 230.  (*Id.* (citing 47 U.S.C. § 230(e)(1).)[22]  Courts have uniformly held, however, that CDA § 230(e)(1) abrogated immunity only for criminal enforcement actions and "excludes civil suits." *E.g.*, *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1169 (N.D. Cal. 2018).  Next, the Opposition asserts that Congress's intent to exclude civil child pornography claims is evidenced by the Protection of Children from Sex Predators Act of 1998, which enacted Section 2255's civil remedy two years after enactment of the CDA.  But if Congress had intended to exempt Section 2255 claims from CDA § 230 immunity, it could have revised 47 U.S.C. § 230(e) (as it has on several occasions) to lift immunity.  It did not.  Instead, Congress kept the exemption narrow.  47 U.S.C. § 230(e)(5).

### E.    The FAC Fails to State a Claim under 18 U.S.C. §§ 2258A & 2258B.

18 U.S.C. §§ 2258A and 2258B do not provide a private right of action for failing to make a report to NCMEC.  Contrary to Plaintiffs' assertion, (Opp. 25-26), which is unsupported by any authority, section 2258B immunizes ICS providers from liability "arising from the ***performance*** of the reporting . . . responsibilities," except in certain enumerated circumstances.  18 U.S.C. § 2258B(a)-(b); *United States v. DiTomasso*, 81 F. Supp. 3d 304, 306 (S.D.N.Y. 2015) (Section 2258B grants a "safe harbor" that immunizes providers "from all liability, civil or criminal, that might otherwise have resulted from the nonconsensual disclosure of a user's electronic information").  In other words, it limits the liability of ICS providers who report child pornography under section 2258A.  It says nothing about creating a private right of action against a provider for not reporting—as the FAC alleges Twitter did here.[23]  (¶¶ 67, 127.)  Moreover, the statute is clear that such a failure is subject only to the statutory fines in section 2258A.  18 U.S.C. § 2258A(e) (identifying maximum fines for initial and subsequent violations).

### F.    The FAC Fails to State Its Remaining State Law Claims.

Plaintiffs' state law claims are barred by CDA § 230.  (Mot. at 21-22.)  Plaintiffs do not disagree save for their products liability claim.  As such, those claims should be dismissed.  *See Scognamillo v. Credit Suisse First Boston LLC*, 2005 WL 2045807, at *12 (N.D. Cal. Aug. 25,

---

[22] CDA § 230(e)(1) states: "No effect on criminal law – Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, or any other Federal criminal law."
[23] The FAC acknowledges that Twitter reported the Videos.  (¶ 129.)  Additionally, the law requires the report to NCMEC be made "as soon as reasonably possible," 18 U.S.C. § 2258A(a), and nothing in the Opposition shows that nine days is unreasonable under the law.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

2005) (dismissing claims because plaintiffs' failure to oppose defendants' arguments is "tantamount to a concession" on those issues). Aside from Plaintiffs' concession, the heart of Plaintiffs' claims is Twitter's alleged distribution of the Videos. (*E.g.*, ¶¶ 194-95 ("Twitter had a duty to protect John Doe #1 and John Doe #2…" and "Twitter breached that duty and continued to disseminate" the Videos); 199-200 (same)). These are exactly the types of claims that are barred under CDA § 230 and Plaintiffs' "creative pleading" does not avoid immunity where "at bottom", the claim "depend[s] on a third party's content." *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1094 (9th Cir. 2021). And even if Plaintiffs' state law claims are not barred by the CDA (they are), Plaintiffs' claims still fail because they are insufficiently pleaded.

### 1. Plaintiffs' Concede They Cannot State a Claim Under Cal. Civ. Code § 1708.85.

The Opposition does not address Twitter's arguments regarding Plaintiffs' claim here and the Court should dismiss the claim with prejudice on this ground alone. *See Scognamillo,* 2005 WL 2045807, at *12 (dismissing claims in part because plaintiffs failed to oppose).

### 2. Plaintiffs' Fail to State a Claim for Products Liability.

The Opposition relies almost entirely on a recent Ninth Circuit decision, *Lemmon v. Snap*, to argue that CDA § 230 does not immunize Twitter from their products liability claim. But *Lemmon* is inapt. The *Lemmon* plaintiffs were the parents of three boys who, shortly before a high-speed accident, used Snapchat's speed filter to record their driving speed. *Lemmon*, 995 F.3d at 1087-88. The parents brought a wrongful death action alleging that Snapchat was negligently designed and encouraged young people to drive dangerously. *Id.* The Ninth Circuit found that CDA § 230 immunity was unavailable because the claims neither "treat[ed] Snap as a 'publisher or speaker' nor relie[d] on 'information provided by another information content provider.'" *Id.* Notably, the speed filter tool could be used without even creating any content.

Here, Plaintiffs' claim treats Twitter as the "publisher or speaker" of content provided by a third party. (¶ 214 ("Twitter intentionally distributed" video content created by a third party).) Moreover, even though the allegation is missing from the FAC, the Opposition identifies Twitter's

Cooley LLP
Attorneys at Law
San Francisco

19

DEFENDANT TWITTER, INC.'S REPLY ISO
MTD PLAINTIFFS' FAC
Case No. 3:21-cv-00485-JCS

"search function" tool[24] as being negligently designed because without it the Videos "would not have had *as prolific* a distribution." (Opp. at 27.) But the plaintiffs in *Lemmon* "d[id] not fault Snap in the least for publishing [the snap]." *Lemmon*, 995 F.3d at 1093. *It was the use of the filter itself* that allegedly encouraged speeding and caused the harm. Here, Plaintiffs only complain of Twitter's search function tools because of its role as a publisher of third-party content that allegedly allowed the Videos to be viewed more than they might otherwise would have been. (Opp. at 27.)

### 3.    Plaintiffs' Fail to State a Claim for Any Negligence Theory.

The Opposition failed to address Twitter's argument that it did not owe Plaintiffs any duty of care. (*See* Mot. 23-24; se*e GN Resound A/S v. Callpod, Inc.*, 2013 WL 1190651, at *5 (N.D. Cal. Mar. 21, 2013) (failing to oppose motion as to a particular issue is construed as a concession that the "claim element [is] not satisf[ied].").

Plaintiffs' negligence *per se* claim does not save their negligence claims. Plaintiffs have not established that Twitter violated any law or statute that would give rise to a presumption of negligence, and Plaintiffs' own authority agrees that negligence *per se* is not an independent claim. Rather, *negligence per se* "establishes a presumption of negligence only when a viable claim for negligence exists." *Dillard v. Victoria M. Morton Enterprises, Inc.*, 2008 WL 11388472, at *5 (E.D. Cal. Oct. 8, 2008).

### 4.    Plaintiffs' Fail to State a Claim Under The UCL.

Plaintiffs' Opposition fails to cure a host of defects as to their UCL claims. First, the Opposition seemingly argues that Plaintiffs have standing to bring a UCL claim because they suffered economic injury as a result of the "monetization and dissemination of Plaintiffs' images and likenesses" by Twitter. (Opp. at 29-30 (citing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 811 (N.D. Cal. 2011).) Not so. In *Fraley*, plaintiffs alleged that Facebook "fail[ed] to compensate them for their valuable endorsement of third-party products and services" when it took their image and name to create "Sponsored Stories." 830 F. Supp. 2d at 790. In comparison, the FAC alleges that advertisements or promoted Tweets are "displayed intermixed between tweets." Yet there is

---

[24] Plaintiffs still do not clearly explain what product they complain of but instead suggest that it does not matter which of Twitter's "multitudinous features" are at issue. (Opp. at 27.) As detailed in Twitter's motion, this is insufficient to state a claim (Mot. at 22-23) nor does it give Defendant "fair notice" of the claim being asserted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Cooley LLP
Attorneys at Law
San Francisco

20

**Defendant Twitter, Inc.'s Reply ISO
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS**

1   no allegation that Plaintiffs' image or name was used to endorse any product or used in any

2   advertisement.  More is needed for standing.  *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at

3   *1 (N.D. Cal. Mar. 1, 2021) (plaintiffs did not establish Article III standing for UCL claim because

4   "use of the plaintiffs' profiles d[id] not imply an endorsement of [] products.").

5          Second, the Opposition clarifies that Plaintiffs' UCL claim is predicated not on Twitter's

6   own actions, but as a result of Twitter's alleged "criminal, aiding and abetting conduct."  (Opp. at

7   29.)  But "[a]iding and abetting requires not only knowledge [of the complained of act], but

8   'substantial assistance o[r] encouragement' of another's tort."  *Chetal v. Am. Home Mortg.*, 2009

9   WL 2612312, at *4 (N.D. Cal. Aug. 24, 2009).  "Mere knowledge that a tort is being committed

10  and the failure to prevent it does not constitute aiding and abetting."  *Fiol v. Doellstedt*, 50 Cal.

11  App. 4th 1318, 1326 (1996).  In addition, like Plaintiffs' other allegations, Plaintiffs' new theory

12  (which was improperly raised for the first time in their Opposition) similarly fails to meet the

13  particularity requirement of Rule 9(b) or to give Defendant "fair notice" of the claim being asserted.

14  *Twombly*, 550 U.S. at 555.  Because Plaintiffs' UCL claim is predicated on an aiding and abetting

15  theory and the FAC alleges no facts that would support a finding that Twitter offered substantial

16  assistance or encouragement to the Perpetrators or the users who Tweeted the Videos, Plaintiffs'

17  UCL claim should be dismissed with prejudice.

18  **III.    CONCLUSION**

19         Congress exempted civil claims under Section 1595 from CDA § 230 immunity only where

20  an ICS provider directly engages in sex trafficking or knowingly and affirmatively facilitates a sex

21  trafficking venture.  Twitter's Motion demonstrated in careful detail that neither of those things

22  happened here, and the Opposition fails to show otherwise.  As such, this suit is barred under CDA

23  § 230. Plaintiffs have already had a chance to amend and have shown that an amended complaint

24  cannot change the outcome. The Court should accordingly grant the Motion and dismiss the case

25  against Twitter in its entirety, with prejudice.

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

21

**Defendant Twitter, Inc.'s Reply iso
MTD Plaintiffs' FAC
Case No. 3:21-cv-00485-JCS**

1  Dated: June 28, 2021                    COOLEY LLP

2

3                                          By: */s/ Michael G. Rhodes*
                                              Michael G. Rhodes
4
                                           *Attorneys for Defendant*
5                                          *Twitter, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO