# EXHIBIT A

1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    KATHLEEN HARTNET (314267)
3   (khartnett@cooley.com)
    KYLE C. WONG (224021)
4   (kwong@cooley.com)
    3 Embarcadero Center, 20th Floor
5   San Francisco, CA 94111-5800
    Telephone:    (415) 693-2000
6   Facsimile:    (415) 693-2222

7   LINH K. NGUYEN (305737)
    (lknguyen@cooley.com)
8   JAMIE D. ROBERTSON (326003)
    (jdrobertson@cooley.com)
9   4401 Eastgate Mall
    San Diego, California 92121
10  Telephone:    (858) 550-6000
    Facsimile:    (858) 550-6420

11

12  Attorneys for Defendant
    TWITTER, INC.

13

14                  UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18  JOHN DOE #1 AND JOHN DOE #2,          Case No. 3:21-cv-00485-JCS

19              Plaintiffs,               **DEFENDANT TWITTER, INC.'S MOTION
                                          FOR RECONSIDERATION OF THE COURT'S
20         v.                             AUGUST 19, 2021 ORDER (ECF NO. 69)**

21  TWITTER, INC.,                        Hearing Date:    TBD
                                          Hearing Time:    9:30 a.m.
22              Defendants.               Judge:    Honorable Joseph C. Spero

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF CONTENTS

Page

NOTICE OF MOTION ....................................................................................................... 1

STATEMENT OF RELIEF SOUGHT ............................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.      INTRODUCTION ................................................................................................... 2

II.     BACKGROUND ..................................................................................................... 3

III.    ARGUMENT ........................................................................................................... 3

        A.    THE COURT HAS INHERENT AUTHORITY TO RECONSIDER THE
              ORDER. ........................................................................................................ 3

        B.    THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT
              SECTION 230(E)(5)(A) DOES NOT REQUIRE PLAINTIFFS TO
              PLEAD THAT TWITTER VIOLATED SECTION 1591 ................................... 4

              1.    NEW AUTHORITY ON THE PROPER STATUTORY
                    CONSTRUCTION OF SECTION 230(E)(5)(A) WARRANTS
                    RECONSIDERATION OF THE ORDER. ................................................ 4

              2.    *J.B.'S* LEGISLATIVE HISTORY ANALYSIS WARRANTS
                    RECONSIDERATION OF THE ORDER. ................................................ 7

              3.    THE ORDER'S INTERPRETATION OF SECTION 230(E)(5)(A)
                    UNDERMINES CONGRESSIONAL INTENT. .................................... 10

        C.    THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT
              FUTURE POSTINGS OF THE VIDEOS CONSTITUTE A FUTURE
              "COMMERCIAL SEX ACT" UNDER SECTION 1591. .................................. 13

        D.    THE COURT SHOULD RECONSIDER ITS CONCLUSION THAT
              PLAINTIFFS ADEQUATELY ALLEGED A "CONTINUOUS
              BUSINESS RELATIONSHIP" BETWEEN TWITTER AND THE
              PERPETRATORS. ........................................................................................ 15

IV.     CONCLUSION ..................................................................................................... 18

Cooley LLP
Attorneys at Law
San Francisco

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abada v. Charles Schwab & Co., Inc*.,
  127 F. Supp. 2d 1101 (S.D. Cal. 2000) ........................................................................ 4

*Amarel v. Connell*,
  102 F.3d 1494 (9th Cir. 1996) ...................................................................................... 4

*B.M. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 4368214 (N.D. Cal. July 30, 2020) ............................................................ 17

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .................................................................................... 13

*Cave Consulting Grp., Inc. v. OptumInsight, Inc*.,
  2020 WL 127612 (N.D. Cal. Jan. 10, 2020) ...................................................... 5, 7, 14

*Colaprico v. Sun Microsystems, Inc.*,
  1991 WL 330923 (N.D. Cal. July 12, 1991) ....................................................... 4, 7, 8

*Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*,
  2004 WL 2600455 (N.D. Cal. Nov. 15, 2004) ........................................................ 4, 10

*Doe By & Through Doe v. Petaluma City Sch. Dist*.,
  949 F. Supp. 1415 (N.D. Cal. 1996) ....................................................................... 4, 5

*Doe v. Kik Interactive, Inc.*,
  482 F. Supp. 3d 1242 (S.D. Fla. 2020) ................................................................... 4, 5

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) ........................................................................ 10, 11, 12

*Goddard v. Google, Inc.*,
  2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) .......................................................... 12

*J.B. v. G6 Hosp., LLC*,
  2020 WL 4901196 (N.D. Cal. Aug. 20, 2020) ........................................... 12, 16, 17, 18

*J.B. v. G6 Hospitality, LLC*,
  2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ..................................................... passim

*J.C. v. Choice Hotels Int'l, Inc.*,
  2020 WL 6318707 (N.D. Cal. Oct. 28, 2020) ........................................................... 17

*Jane Doe v. Reddit, Inc.*,
  Case No. 21-cv-768-JVS (C.D. Cal. Sept. 17, 2021) ..................................... 2, 5, 16, 17

*M.A. v. Wyndham Hotels & Resorts, Inc.*,
  425 F. Supp. 3d 959 (S.D. Ohio 2019) .............................................................. 6, 16, 17

Cooley LLP
Attorneys at Law
San Francisco

i

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
Case No. 3:21-cv-00485-JCS

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
  551 U.S. 224 (2007) ..................................................................................................... 6

*Ricchio v. McLean*,
  853 F.3d 553 (1st Cir. 2017) ..................................................................................... 17

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) ..................................................................................................... 6

*Stratton Oakmont, Inc. v. Prodigy Servs. Co.*,
  1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995) ....................................................... 11

*United States v. Casasola*,
  670 F.3d 1023 (9th Cir. 2012) ..................................................................................... 7

*United States v. Todd*,
  627 F.3d 329 (9th Cir. 2010) .................................................................................. 3, 15

**Statutes**

18 U.S.C.
  § 1591(a) .................................................................................................................... 13
  § 1591(a)(2) ............................................................................................................... 13
  § 1591(e)(3) ............................................................................................................... 14
  § 1595 ........................................................................................................................ 16

47 U.S.C. § 230(b) ......................................................................................................... 7

**Other Authorities**

164 CONG. REC. H1302 (daily ed. Feb. 27, 2018) ..................................................... 10

164 CONG. REC. H1303 (daily ed. Feb. 27, 2018) ..................................................... 10

164 CONG. REC. S1849 (daily ed. March 21, 2018) ................................................... 10

H.R. 1865, 115th Cong. § 4 (as introduced, Apr. 3, 2017) ............................................ 8

H.R. REP. NO. 115-572 (2018) ................................................................................. 9, 10

H.R. REP. NO. 115-583 (2018) ..................................................................................... 10

Hearing on S. 1693 Before the Comm. on Commerce, Sci., and Transp., 115 Cong. 7 (2017) ..... 8

*The Latest Developments in Combating Online Sex Trafficking*, Hearing on S. 1693 Before the
  Subcomm. on Commc'ns and Tech., 115 Cong. 7 (2017) ........................................... 9

Local Civil Rule 7-9 ................................................................................................... 1, 3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT**, at a time to be set by the Court, in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Defendant Twitter, Inc. ("Twitter") will, and hereby does, move under Local Rule 7-9(b), for reconsideration of the Court's August 19, 2021 order denying in part Twitter's motion to dismiss (ECF No. 69, or the "Order").   This motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Linh K. Nguyen in Support of Defendant Twitter, Inc.'s Motion for Leave to File Motion For Reconsideration or, in the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) and its exhibits; the pleadings and papers on file in this matter, including the Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) and accompanying papers; and such other matters as may be presented to the Court at any hearing the Court may choose to hold on this motion.

**STATEMENT OF RELIEF SOUGHT**

Twitter seeks reconsideration of the Order denying Twitter's motion to dismiss Claim Two of the First Amended Complaint (ECF No. 39, or FAC), in which Plaintiffs allege beneficiary liability against Twitter under 18 U.S.C. Sections 1595 and 1591(a)(2).   If the Court denies reconsideration, Twitter alternatively requests the Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) for the reasons explained in Twitter's Motion for Leave to File the Motion for Reconsideration or, in the Alternative, Motion for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

**STATEMENT OF ISSUES TO BE DECIDED**

Twitter respectfully submits that reconsideration should be granted because: (1) Plaintiffs must allege a violation of Section 1591 to trigger the immunity carve-out of Section 230(e)(5)(A); (2) the posting of the Videos by a third party neither constitutes a "commercial sex act" under Section 1591 nor shows that Twitter knowingly caused Plaintiffs to engage in future commercial

Cooley LLP
Attorneys at Law
San Francisco

1

**Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS**

1  sex acts; and (3) Plaintiffs did not plead a continuous business relationship as required to establish

2  a venture between Twitter and Plaintiffs' alleged traffickers under Section 1595.

3  **MEMORANDUM OF POINTS AND AUTHORITIES**

4  **I.    INTRODUCTION**

5         Twitter respectfully requests reconsideration of the Order on the following three grounds.

6         First, persuasive subsequent authority, detailed below, elucidates why the Order

7  erroneously denied Twitter immunity based on the immunity carve-out in Section 230(e)(5)(A).

8  The Order ruled that Plaintiffs are "not subject to the more stringent requirements that apply to

9  criminal violations of that provision" in order to trigger the Section 230(e)(5)(A) carve-out.  (Order

10  at 42.)  Since the Order, however, two other courts in the Ninth Circuit have issued rulings to the

11  contrary reasoning that the carve-out applies only if the "more stringent requirements" for a

12  criminal violation are met: (1) Judge Gilliam in *J.B. v. G6 Hospitality, LLC*, 2021 WL 4079207, at

13  *4-12 (N.D. Cal. Sept. 8, 2021), which reconsidered his earlier decision reaching the opposite

14  conclusion; and (2) Judge Selna in his tentative order in *Jane Doe v. Reddit, Inc*., Case No. 21-cv-

15  768-JVS (C.D. Cal. Sept. 17, 2021), attached as Exhibit B.  Twitter respectfully submits that the

16  extensive statutory construction and legislative history analysis in *J.B.*, which followed briefing by

17  the parties on the issue, warrants this Court's reconsideration of the Order and provides strong

18  support for the conclusion that "the most persuasive reading of [S]ection 230(e)(5)(A) is that it

19  provides an exemption from immunity for a section 1595 claim ***if, but only if***, the defendant's

20  conduct amounts to a violation of section 1591." *J.B*, 2021 WL 4079207, at *12.[1]

21         Second, the Court erroneously ruled that Plaintiffs sufficiently alleged the required element

22  under Section 1591(a) that Twitter knew its conduct would cause Plaintiffs to engage in future

23  "commercial sex acts" for purposes of Section 1591(a)(2).  The Court reached this conclusion by

24  misconstruing Twitter's statements at oral argument as a concession that posting child pornography

25  is itself a "commercial sex act," but Twitter made no such concession and the Court's ruling is

26  contrary to the definition of "commercial sex act" under Section 1591(a)(2), which does not include

27  the posting of depictions of sex acts.  In determining that Plaintiffs sufficiently pled Twitter's

28

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  knowledge, the Court also incorrectly applied *United States v. Todd*, 627 F.3d 329, 334 (9th Cir.

2  2010); Twitter's conduct as pled could not cause Plaintiffs to engage in future commercial sex acts

3  because Plaintiffs allegedly cut off contact with the traffickers long before Twitter was ever

4  involved.

5       Third, the Court incorrectly concluded that Twitter participated in a Section 1595 venture

6  with Plaintiffs' alleged sex traffickers even though there was no "continuous business

7  relationship"—namely, no allegation in the FAC that the Perpetrators ever used Twitter, let alone

8  were the people behind the accounts that posted the Videos on Twitter.

9       In light of the intervening rulings cited herein and errors identified in this motion, Twitter

10  respectfully requests that the Court reconsider the Order's resolution of Claim Two and grant

11  Twitter's motion to dismiss that claim.

12  **II.**    **BACKGROUND**[2]

13       To streamline the Court's review, Twitter incorporates by reference the Background section

14  of the Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an

15  Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

16  **III.**    **ARGUMENT**

17      **A.**    **The Court Has Inherent Authority to Reconsider the Order.**

18       Pursuant to Local Civil Rule 7-9, a party may obtain leave to move for reconsideration of

19  an interlocutory order upon a showing of "reasonable diligence in bringing the motion" and either

20  of the following circumstances:  the "emergence of new material facts or a change of law occurring

21  after the time of such order" or a "manifest failure by the Court to consider material facts or

22  dispositive legal arguments which were presented to the Court[.]"  L.R. 7-9(b)(2), (b)(3).[3]  Twitter

23  has separately sought leave to file this motion pursuant to this Local Rule.  *See* Twitter's Motion

24

25

26  [2] Capitalized terms not defined herein have the meanings ascribed to them in Twitter's Motion to Dismiss and Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion

27  for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).
[3] Local Civil Rule 7-9(b)(1) also allows for a motion for reconsideration to be filed if "a material

28  difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order" and the movant "did not know such fact or law at the time" despite the exercise of reasonable diligence; this provision does not apply here.

Cooley LLP
Attorneys at Law
San Francisco

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1  to Dismiss and Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion

2  for an Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

3      Upon a properly filed motion, Northern District courts grant reconsideration where, among

4  other things, "there has been an intervening change of law" or where it is "necessary to correct a

5  clear error of law[.]" *Doe By & Through Doe v. Petaluma City Sch. Dist.*, 949 F. Supp. 1415, 1417

6  (N.D. Cal. 1996) (reconsidering order on basis that "several new [persuasive] cases . . . have been

7  decided since this Court's order"); *Colaprico v. Sun Microsystems, Inc.*, 1991 WL 330923, at *1

8  (N.D. Cal. July 12, 1991) (considering a "well-reasoned and thoroughly researched" decision from

9  the California Court of Appeal); *Crab Boat Owners Ass'n v. Hartford Ins. Co. of the Midwest*, 2004

10  WL 2600455, at *2 (N.D. Cal. Nov. 15, 2004) (granting reconsideration where the court committed

11  legal error).  The Court has inherent authority to reconsider its previous interlocutory orders.  *See,*

12  *e.g.*, *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000) ("A district

13  court may reconsider and reverse a previous interlocutory decision for any reason it deems

14  sufficient, even in the absence of new evidence or an intervening change in or clarification of

15  controlling law."); *see also Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996).

16  **B.      The Court Should Reconsider Its Conclusion That Section 230(e)(5)(A) Does
Not Require Plaintiffs to Plead That Twitter Violated Section 1591.**

17

18      1.      *New authority on the proper statutory construction of Section 230(e)(5)(A)
warrants reconsideration of the Order.*

19      The Court concluded in the Order that Section 230(e)(5)(A)'s immunity carve-out did not

20  require Plaintiffs to plead that Twitter violated Section 1591.  (Order at 38-41.)  However, the

21  Order's statutory construction was based largely upon the Court's own analysis and disagreement

22  with *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1250-51 (S.D. Fla. 2020), following

23  questions first raised by the Court at oral argument.  The parties' briefing did not directly or at any

24  length address the application of statutory construction doctrines to Section 230(e)(5)(A).

25  Plaintiff's Opposition addressed the statute's meaning in one sentence of a footnote that lacked

26  legal authority, and the parties' briefing discussed the legislative history in a general way, rather

27  than specifically directed at the statutory construction issues addressed by the Order.[4]

28

---

[4] *See* Motion for Leave to File Motion for Reconsideration or, in the Alternative, Motion for an
Order Permitting an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b), at 3-5.

Cooley LLP
Attorneys at Law
San Francisco

4

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

Reconsideration of the Court's construction of Section 230(e)(5)(A) is thus appropriate here in light of Judge Gilliam's recent decision in *J.B. v. G6 Hospitality*, which is a change in law containing a highly pertinent, detailed, and persuasive statutory construction analysis that conflicts with the Order and holds that Section 1591 must be satisfied to trigger Section 230(e)(5)(A)'s immunity carve-out.  The new *J.B.* ruling itself is a reconsideration of Judge Gilliam's earlier order reaching the opposite conclusion.  It also is far more extensive and comprehensive than the *Kik* analysis and takes into consideration factors that neither this Court nor the *Kik* court examined.  *Compare* 2021 WL 4079207, at *5-7, *with Kik*, 482 F. Supp. 3d at 1251.  The new *J.B.* ruling also followed adversarial briefing that raised arguments not presented to the Court in this matter.  This further supports reconsideration given that the Court's reasoning in the Order stemmed from its *sua sponte* consideration of arguments not advanced or briefed by either party.  *See Petaluma City Sch. Dist.*, 949 F. Supp. at 1417; *see Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, 2020 WL 127612, at *2-5 (N.D. Cal. Jan. 10, 2020) (Spero. J) (granting reconsideration based on the movant's argument that the Court granted judgment on an issue not briefed by the parties).  Notably, Judge Selna has issued a tentative order in the Central District *Reddit* case endorsing Judge Gilliam's analysis, and agreeing with Judge Gilliam that this was the "most persuasive reading of Section 230(e)(5)(A)[.]"  (Ex. B at 11.)

Examining the statutory plain language, Judge Gilliam reasoned that "the most straightforward reading [of Section 230(e)(5)(A) is] that the provision provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591."  *J.B.*, 2021 WL 4079207, at *6.  Judge Gilliam rejected the plaintiff's argument that Section 230(e)(5)(A)'s second clause (*i.e.*, "if the conduct underlying the claim constitutes a violation of section 1591 of that title") merely served to limit FOSTA's exemption to Section 1595 claims arising from sex trafficking (as opposed to other claims like forced labor or peonage), and observed that, if that had been Congress's intent, there were far less confusing ways for Congress to draft Section 230(e)(5)(A)'s second clause so that it would encompass that meaning.  *See id.* ("[I]if Congress meant to exempt all claims involving sex trafficking, it could have said 'if the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1   claim arises out of a violation of section 1591,' or 'if the plaintiff is a victim of a violation of section

2   1591.'").

3       Judge Gilliam also held that a narrow interpretation of Section 230(e)(5)(A) is supported

4   by "the specific context in which that language is used." *See id.* (quoting *Robinson v. Shell Oil Co.*,

5   519 U.S. 337, 341 (1997)).  Specifically, Judge Gilliam took note of the nearly identical language

6   used in the second clauses of sections 230(e)(5)(A), (B), and (C), and observed that the language

7   in subparts (B) and (C)—"'if the conduct underlying the charge'—"necessarily refers to the

8   conduct of the [named] defendant" in a criminal prosecution.  *See J.B.*, 2021 WL 4079207, at *6.

9   Judge Gilliam concluded that Section 230(e)(5)(A) should be read in parallel with subparts (B) and

10  (C) because, "[n]otwithstanding the obvious differences between civil claims and criminal

11  charges," the fact that "Congress included nearly identical language in the same subsection, at the

12  same time, strongly suggests that it intended to give the 'conduct underlying' phrases the same

13  meaning." *Id.* (citing *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007)).

14  What is more, as Judge Gilliam noted, this statutory construction doctrine is "'***doubly appropriate***'

15  where a phrase 'was inserted into' two provisions 'at the same time.'" *J.B.*, 2021 WL 4079207, at

16  *6.[5]

17      Judge Gilliam's analysis also observed that FOSTA amended Section 1595 to "authoriz[e]

18  state attorneys general to bring *parens patriae* civil actions against 'any person who violates section

19  1591.'" *Id.* at *7.  He determined that "it would be unreasonable to conclude that Congress would

20  allow state attorneys general to sue only 'direct violators' of section 1591, while allowing private

21  plaintiffs to sue civil defendants who only violated section 1595 based on the application of a

---

[5] "[T]here are exceptions to the general presumption that words have the same meaning in a statute," including when "there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they" should be interpreted differently.  *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019).  No such exception applies here.  In *M.A.*, as the Court observed in its Order (Order at 41 n.4), the court was analyzing the phrase "participation in venture," which is in both Sections 1591 and 1595.  *Id.*  The court concluded that an exception applied because there was material variation in the connection in which the phrase was used in Sections 1591 and 1595, as "the former does not have not have a constructive knowledge element manifested by 'should have known' language."  *Id.*  The *M.A.* court also noted that Section 1591(e)(4) expressly states that the definition of "participation in a venture" in Section 1591 "only appl[ies] to" Section 1591.  *Id.*  Here, unlike the statutory provisions to which the exception was applied in *M.A.*, there is only an immaterial variation in language between sections 230(e)(5)(A), (B), and (C), and nothing in FOSTA indicates the three subparts should be interpreted differently.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

constructive knowledge standard." *Id*. Such a conclusion would violate the interpretive precept that "courts do not construe statutes in a manner that would lead to absurd" or "unreasonable result[s]." *See id*. (quoting *United States v. Casasola*, 670 F.3d 1023, 1029 (9th Cir. 2012)).

Finally, while FOSTA is a remedial statute, Judge Gilliam concluded that his (and Twitter's) interpretation still satisfied FOSTA's "remedial purpose" because it allows sex trafficking victims to "pursue a subset of claims that were previously barred" against ICS providers—namely those that satisfy the requirements of Section 1591 regardless of who created the content at issue. *See J.B.*, 2021 WL 4079207, at *6 (citing Order at 40 (noting that FOSTA is a remedial statute that "should be liberally construed"). Moreover, Judge Gilliam noted that a narrow interpretation of Section 230(e)(5)(A), which is located within CDA § 230, is "facially consistent with the CDA's stated policies 'to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.'" *See J.B.*, 2021 WL 4079207, at *12 (citing 47 U.S.C. § 230(b)).

Given that *J.B.* issued after the Court's Order and is "well-reasoned and thoroughly researched," it is a change in law that merits reconsideration of the Order. *See Colaprico*, 1991 WL 330923, at *1. Further warranting reconsideration here is that the Order pertains to statutory construction issues first raised by the Court at oral argument and thereafter resolved by the Court without further briefing (Order at 39-41), as neither party's papers addressed the canons of statutory construction in light of Plaintiffs' one-sentence in a footnote opposing Twitter's interpretation of § 230(e)(5)(A) without any citation to legal authority. (*See* Opp. at 16 n.35.) This Court has previously granted reconsideration in a similar situation, when it ruled on an issue that was touched on by the parties but not briefed. *See Cave Consulting Grp.*, 2020 WL 127612, at *4-5 (noting reconsideration was appropriate where the Court "acted sua sponte on an issue *not* raised by the parties" even though the parties had presented arguments that "touched on evidence relevant to the [] inquiry" (emphasis in original)).

2.     *J.B.'s legislative history analysis warrants reconsideration of the Order.*

Reconsideration of the Court's order is also appropriate in light of Judge Gilliam's comprehensive analysis of FOSTA's legislative history. As previously noted, the parties' briefing

Cooley LLP
Attorneys at Law
San Francisco

7

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

regarding FOSTA's legislative history largely focused on whether Congress intended FOSTA's exemption only to apply to companies like Backpage or more broadly.  (*See, e.g.*, Mot. at 5; Opp. at 17-18 (arguing "the Congressional record overall does not indicate an intent for the exception to be limited to actors as deliberate and organized as Backpage").)  Based on this limited briefing, the Order concluded that FOSTA's legislative history was inconclusive and did not shed light on whether Section 230(e)(5)(A) required a plaintiff to meet Section 1591's "knowingly" standard. (Order at 41-42.)

    *J.B.* represents a change of law as it is the first comprehensive examination of Section 230(e)(5)(A)'s legislative history, beginning from the initial pieces of legislation all the way through to enactment, making clear that Congress intended Section 230(e)(5)(A) to limit immunity only where the plaintiff adequately alleges the defendant "knowingly" engaged in sex trafficking or "knowingly" facilitated a sex trafficking venture.  *See Colaprico*, 1991 WL 330923, at *1 (granting reconsideration in light of a "well-reasoned and thoroughly researched" intervening ruling).  And, when viewed within the broader history of FOSTA that Judge Gilliam also detailed, it becomes apparent that the numerous statements referenced by the parties and amici in this case are consistent with that conclusion.

    To start, Judge Gilliam noted that FOSTA's evolution began with two separate House and Senate bills, H.B. 1865 and S.B. 1693, both of which "contained more expansive, victim-centered provisions," that excepted **all** Section 1595 claims from CDA § 230 immunity.  *J.B.*, 2021 WL 4079207, at *8.  H.B. 1865 also "broadly defined 'participation in a venture' to 'include[ ] knowing or reckless conduct[.]'"  *Id.* (quoting H.R. 1865, 115th Cong. § 4 (as introduced, Apr. 3, 2017)).  At the legislative hearing on S.B. 1693, witnesses and members of Congress debated whether a constructive knowledge standard was appropriate because while the "knowing standard" is a "high bar," there was "concern about frivolous litigation targeting legitimate, law-abiding intermediaries, [if] civil liability is unbounded by any actual knowledge or participation in trafficking."  *See J.B.*, 2021 WL 4079207, at *8-9 (quoting SESTA, Hearing on S. 1693 Before the Comm. on Commerce, Sci., and Transp., 115 Cong. 7 (2017)).

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

Shortly thereafter, Senator John Thune presented an amended version of S.B. 1693, which "included many of the provisions that would later be incorporated into FOSTA[]." *J.B.*, 2021 WL 4079207, at *8-9.  As amended, S.B. 1693 provided that Section 1595 claims would be exempt from immunity "if the conduct underlying the claim constitutes a violation of [S]ection 1591[.]" *Id.*  It also "amended [S]ection 1595 to add a *parens patriae* provision authorizing state attorneys general to bring civil actions against 'any person who violates [S]ection 1591.'"  *Id.*  A committee report explained that Senator Thune's bill "would eliminate section 230 as a defense for websites that ***knowingly*** facilitate sex trafficking."  *Id.*  This conclusion was supported at a Subcommittee on Communications and Technology of the Committee on Energy and Commerce hearing during which Congresswoman Ann Wagner "indicated that under [Senator Thune's bill], the 'federal civil carve-out ***has been narrowed*** and is now based on the '***knowingly***' mens rea standard.'"  *Id.* at *10 (quoting *The Latest Developments in Combating Online Sex Trafficking*, Hearing on S. 1693 Before the Subcomm. on Commc'ns and Tech., 115 Cong. 7 (2017)).

Congressman Bob Goodlatte later proposed an amended H.B. 1865, which included an additional "federal offense concerning the promotion of prostitution and ***reckless disregard*** of sex trafficking, and exclude[ed] the proposed [civil sex trafficking exemption] to the CDA[.]"  *J.B.*, 2021 WL 4079207, at *10 (citing H.R. REP. NO. 115-572 (2018)).  The new federal offense proposed by Goodlatte, which had a lower *mens rea* and (unlike Section 1591) was ***not*** part of the proposed CDA § 230 carve-out, became part of FOSTA as enacted (codified at 18 U.S.C. § 2421A), included a civil recovery provision, and represented Congress's compromise for keeping the Sections 1595/1591 carve-out from § 230 narrow and pegged to "knowing" conduct.  *See J.B.*, 2021 WL 4079207, at *11.  The committee report on Congressman Goodlatte's proposal "explained that '[p]rostitution and sex trafficking are inextricably linked,' and that a 'new statute that instead targets promotion and facilitation of prostitution is far more useful to prosecutors'" than Section 1591.  *Id.* at *10.  Congresswoman Mimi Walters "later introduced another amendment to [H.B. 1865] that included the enactment of a new federal offense concerning prostitution, but also incorporated elements from [Senator Thune's proposed amendment to S.B. 1693], including the ***narrowed*** federal civil sex trafficking carve-out and the definition of 'participation in a venture.'"

Cooley LLP
Attorneys at Law
San Francisco

9

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

1   *Id.* at *11. A committee report "summarized the Walters amendment as '[a]llow[ing] enforcement

2   of criminal and civil sex trafficking laws against websites that ***knowingly*** facilitate online sex

3   trafficking.'" *Id.* (quoting H.R. REP. NO. 115-583, at 2 (2018)).

4         On February 26, 2018, the House Rules Committee took up both the Goodlatte and Walters

5   amendments, and the combined bill that became known as FOSTA passed the House on February

6   27, 2018, and the Senate on March 21, 2018. *J.B.*, 2021 WL 4079207, at *11. Congresswoman

7   Wagner observed—"consistent with others' previous statements concerning the federal civil sex

8   trafficking carve-out"—that "[n]o website is immune from civil liability for ***knowingly*** facilitating

9   the sale of trafficking victims." *Id.* (quoting 164 CONG. REC. H1303 (daily ed. Feb. 27, 2018)).

10  Congresswoman Walters made the same observation: "[FOSTA] will allow enforcement of

11  criminal and civil sex trafficking laws against websites that ***knowingly*** facilitate online sex

12  trafficking activities." *J.B.*, 2021 WL 4079207, at *11 (quoting 164 CONG. REC. H1302 (daily

13  ed. Feb. 27, 2018)).

14        After conducting this "in-depth" analysis of FOSTA's legislative history, Judge Gilliam

15  concluded that "Congress ***reached a compromise*** by including a ***narrowed*** federal civil sex

16  trafficking carve-out that requires plaintiffs to show the civil defendant's ***knowing*** assistance,

17  support or facilitation, while also enacting a criminal offense (now codified at 18 U.S.C. § 2421A)

18  that, at least in theory, targets bad actor websites and includes a civil recovery provision." *J.B.*,

19  2021 WL 4079207, at *10-11 (citing 164 CONG. REC. S1849, at S1857 (daily ed. March 21,

20  2018)).

21             3.    *The Order's interpretation of Section 230(e)(5)(A) undermines*
22                  *Congressional intent.*

23        It is undisputed that Congress's purpose in enacting CDA § 230 was to encourage platforms

24  like Twitter to self-police. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,

25  521 F.3d 1157, 1163 (9th Cir. 2008) (noting that CDA § 230 was enacted to overturn a court holding

26  that punished the internet platform defendant for its "decision to perform some voluntary self-

27  policing"). Yet the Court's Order, which holds that ICS providers may be held liable for participation

28  in sex trafficking ventures under a negligence standard, directly frustrates and contradicts Congress's

   purpose in enacting CDA § 230. Reconsideration is necessary to correct this error, *see Crab Boat*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

**TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

*Owners Ass'n*, 2004 WL 2600455, at *2, particularly given the legislative history just discussed, which indicates that Congress intended no such result in passing FOSTA. (*See supra* Section III.B.2.)

The catalyst for CDA § 230 was a decision by a New York state court in the 1990s: *Stratton Oakmont, Inc. v. Prodigy Servs. Co.*, 1995 WL 323710 (N.Y. Sup. Ct. May 24, 1995). (Reply at 12-14.) In *Stratton Oakmont*, the defendant was held liable as a publisher for unlawful third-party messages that it "failed to delete" from its message board "*because*" it "voluntarily deleted some messages" but not all. *Roommates*, 521 F.3d at 1163. As Twitter noted, *Stratton-Oakmont* provided a perverse incentive to ICS providers to "bury their heads in the sand and ignore problematic posts altogether [to] escape liability." (Reply at 12-14 (quoting *Roommates*, 521 F.3d at 1163).)

Respectfully, the Court's interpretation of § 230(e)(5)(A) did not give sufficient consideration to this bedrock principle of CDA § 230 jurisprudence—particularly when viewed in light of FOSTA's complete legislative history, which indicates no intent to undermine that principle, but, to the contrary, to protect it. (*See supra* Section III.B.2.) While Section 230(e)(5)(A) was enacted as part of FOSTA as remedial statute, it is located within CDA § 230 and therefore, its interpretation must fit within the existing framework established around CDA § 230's original purpose. *See J.B.*, 2021 WL 4079207, at *12 (interpreting Section 230(e)(5)(A) so that it "is [] facially consistent with the CDA's stated policies" in Section 230(b)); *see also Roommates*, 521 F.3d at 1163-64 (discussing *Stratton-Oakmont* and analyzing plaintiff's claim "[w]ith th[at] backdrop in mind"). Yet interpreting Section 230(e)(5)(A) to subject ICS providers to a negligence standard (Order at 42-47) indisputably recreates that same perverse incentive that Congress sought to avoid. *See Roommates*, 521 F.3d at 1163 (explaining that "[i]n passing section 230, Congress sought to spare interactive computer services" from the "grim choice" between "taking responsibility for all messages" by "perform[ing] some editing on user-generated content" or "deleting no messages at all"). As embodied in Section 230, a negligence standard is unworkable for ICS providers because it does not consider the volume of third-party content that ICS providers like Twitter must moderate. Plaintiffs themselves allege that Twitter has over ***330 million*** users who post hundreds of millions of third-party content every day. (FAC ¶ 23.) There is simply no

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1   practicable way that Twitter—or any company—could moderate hundreds of millions of posts

2   every day, let alone without making mistakes along the away.  Such a standard also conflicts with

3   the purpose underlying CDA § 230: "Congress sought to spare [ICS providers] . . . by allowing

4   them to [police their platform] without [] becoming liable for all . . . unlawful messages that they

5   didn't . . . delete." *Roommates*, 521 F.3d at 1163; *see also Goddard v. Google, Inc.*, 2008 WL

6   5245490, at *6 (N.D. Cal. Dec. 17, 2008) (noting that the "intent of Congress" in enacting CDA

7   § 230 "was to encourage efforts by Internet service providers to eliminate [unlawful] material by

8   immunizing them from liability ***where those efforts failed***").

9       Compounding the Order's undermining of CDA § 230's intent, the Order gave unduly broad

10  interpretation to Section 1595's "should have known" standard, which the Court deemed sufficient

11  to trigger the immunity carve out of Section 230(e)(5)(A).  Specifically, the Order determined that

12  Plaintiffs sufficiently alleged that Twitter participated in a Section 1595 venture with Plaintiffs'

13  alleged sex traffickers even though there is no allegation that the Perpetrators posted the Videos to

14  Twitter's platform or that they even used Twitter.  (*See* Ex. C, Tr. at 31-32 (stating that Plaintiffs

15  do not know who posted the Videos onto Twitter's platform).)  Instead, the Court found it sufficient

16  that Twitter was allegedly aware of sex trafficking content generally on its platform and received

17  notice of specific content that it did not immediately take down.  (Order at 42-44.)  However, as

18  Judge Gilliam recognized in a portion of his prior *J.B.* ruling unaffected by the new order,

19  concluding that an ICS provider "enters into tacit agreements with all traffickers" whose content

20  somehow ends up on the provider's platform "would mean that all web[-]based communications

21  platforms have a legal duty to inspect every single user-generated message before it is

22  communicated to a single person . . . lest such platforms be deemed to have participated in [sex

23  trafficking] venture[s]."  *See J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *9 (N.D. Cal. Aug. 20,

24  2020). According to Judge Gilliam "there [was] no indication that Congress intended to create such

25  a duty [with Section 230(e)(5)(A)], or that it would be reasonable in light of the volume of posts

26  generated by third parties daily."  *Id*.  This conclusion is reinforced by Judge Gilliam's recent

27  analysis of Section 230(e)(5)(A)'s legislative history, which demonstrates that Congress

28  deliberately limited Section 230(e)(5)(A)'s carve-out to conduct that violated Section 1591 because

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

there were concerns about "frivolous litigation targeting legitimate, law-abiding [ICS providers if] civil liability is unbounded by any actual knowledge or participation in [sex] trafficking." *See J.B.*, 2021 WL 4079207, at *8-11. Although Twitter relied heavily on the first *J.B.* order, (Mot. at 14, 20, 21, 23; Reply at 5, 6, 151), the Court's Order did not address this forceful point. Nor did it address the possible "chilling effect" that a broad interpretation of Section 230(e)(5)(A) would have. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003) (noting that ICS providers with "*millions* of users" must deal with such "staggering" amounts of information that just the "specter of tort liability" would "have an obvious chilling effect").

### C. The Court Should Reconsider Its Conclusion that Future Postings of the Videos Constitute a Future "Commercial Sex Act" Under Section 1591.

The Court should also reconsider its conclusion that Plaintiffs' allegations with respect to Claim Two (FAC ¶¶ 144-155) adequately demonstrate that Twitter knew that Plaintiffs would be caused to engage in "commercial sex acts," a requirement under Section 1591(a). 18 U.S.C. § 1591(a). Section 1591(a)(2) punishes applicable behavior only when done "*knowing* . . . that the person has not attained the age of 18 years and *will be caused to engage in a commercial sex act*[.]" 18 U.S.C. § 1591(a)(2). The Order rejected Twitter's argument that Plaintiffs failed to allege that they "would, in the future, be victims of sex trafficking as a result of Twitter's conduct" because the venture "was already over when the Videos were posted on Twitter[.]" (Order at 44 n.6.) Rather, the Order erroneously determined that the posting of child pornography is a "commercial sex act" that Twitter could be responsible for going forward. (*Id.*) Reconsideration of this aspect of the Order is warranted for three reasons.

First, the Court's analysis contains a manifest error of fact: Twitter did not concede that posting child pornography is itself a "commercial sex act" under Section 1591. The Order, which does not cite to the oral transcript on this point, appears to be referencing this exchange:

> **THE COURT:** You don't disagree that the -- you know, leaving aside, for a moment, Twitter's intent with respect to knowledge with respect to the posting, but the posting of child pornography falls within the definition of a conduct that would cause plaintiffs to engage in a commercial sex act, you don't disagree with that?
> **MR. RHODES:** In the abstract, I can see your point. What I'm saying on the facts of this case -- let me give you an analogy.
> **THE COURT:** There are two questions. One is in the abstract and then Twitter's

1  participation.
2  **MR. RHODES:** Yes.
   **THE COURT:** That's a different question.
3  **MR. RHODES:** Yeah. I agree with you.

4  (Ex. C, Tr. at 17:7-20.)  This colloquy is muddled at best and is in no way fairly read as a concession

5  by Twitter that the posting of the Videos on its platform by third parties was a "commercial sex

6  act" under Section 1591 or could cause Plaintiffs to engage in a future commercial sex act.  Indeed,

7  such a proposition would contradict the FAC's allegations that Plaintiffs had cut off contact with

8  the Perpetrators before the Videos were posted on Twitter's platform.  (FAC ¶¶ 94-96.)  In light of

9  these allegations, Twitter vigorously argued that it could not have known that its conduct would

10  cause Plaintiffs to engage in future commercial sex acts.  (Mot. at 12 n.10; Reply at 3.)  Twitter

11  respectfully submits that it cannot be bound on a dispositive issue contrary to its arguments in

12  briefing to the Court based on an ambiguous exchange at oral argument.

13       Second, the Court's analysis contains a manifest error of law: posting a *depiction* of a sex

14  act is not itself a "commercial sex act" constituting "trafficking" under Section 1591.   A

15  "commercial sex act" is defined by Section 1591 as a "*sex act*, on account of which anything of

16  value is given to or received by any person."  18 U.S.C. § 1591(e)(3).  Posting a depiction of a sex

17  act is not the same as a sex act (just as the Order concluded that "maintaining" a depiction of

18  Plaintiffs (i.e., the Videos) was not the same as "maintaining" Plaintiffs for the purposes of a

19  Section 1591(a)(1) violation, (Order at 33)).  Indeed, the Order relies only on Twitter's purported

20  concession for this point and does not provide any legal reasoning or citation to the statutory

21  definition, and the parties did not brief this issue, which the Court ruled on *sua sponte*.  Notably,

22  Title 18 contains other provisions—unlike Section 1591, that are not subject to the Section

23  230(e)(5)(A) carve-out—concerning the dissemination of *depictions* of "sex acts" involving

24  minors, *see, e.g.*, 18 U.S.C. §§ 2252A and 2256(8), including provisions cited by Plaintiffs as a

25  basis for otherwise dismissed claims.  Those other provisions make clear that Congress knows how

26  to outlaw the dissemination of depictions of sex—in addition to sex acts—when it seeks to do so,

27  and that it did not do in Section 1591. This error warrants reconsideration.  *See Cave Consulting*

28  *Grp.*, 2020 WL 127612, at *4-5.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

Finally, reconsideration is warranted because the Order ignores the requirement that under Section 1591(a)(2) the defendant must know that its conduct will cause **Plaintiffs** to engage in *future* commercial sex acts, and the Court did not and could not make that finding.  (Order at 44 n.6.)   To violate Section 1591, a defendant must know that "the *person* [Plaintiffs]…*will be caused*…to engage in a commercial sex act[.]"  18 U.S.C. § 1591(a).  Indeed, in *United States v. Todd*, the Ninth Circuit confirmed that Section 1591 requires the defendant to know that the *specific person* they are accused of sex trafficking will be caused to engage in a future commercial sex act. 627 F.3d at 333-34 (discussing the trafficker's knowledge as to the specific people he was charged with sex trafficking).

Here, however, there is no allegation that Twitter knew that any of its actions would lead to sex trafficking *of Plaintiffs*.  To the contrary, the FAC alleges that Plaintiff John Doe #1 cut off contact with the Perpetrators before Twitter was involved.  (FAC ¶¶ 94-96.)  The Order erroneously concluded that there was "a plausible inference that Twitter's failure to remove the Videos would result in *future* commercial sex trafficking" of Plaintiffs, apparently based on its flawed notion that the posting of a depiction of child pornography by itself is a commercial sex act.  (Order at 44 n.6 (emphasis in original).)  However, there is no allegation that the Videos remaining on Twitter's platform would cause Plaintiffs to engage in a separate, future commercial sex act.  To the contrary, that allegation is not possible here as, according to the FAC, Plaintiffs allegedly had already cut off contact with the traffickers when the Videos were posted.  (FAC ¶ 96.)  That makes this case factually distinct from those Congress sought to bring within FOSTA's CDA § 230 exclusion.  The underlying facts of this case as alleged in the FAC, while abhorrent, simply do not meet the strict requirements necessary to hold third-party ICS providers liable under Section 1591. Reconsideration is warranted of this flawed conclusion.

### D. The Court Should Reconsider Its Conclusion That Plaintiffs Adequately Alleged a "Continuous Business Relationship" between Twitter and the Perpetrators.

As Twitter argued in its Motion to Dismiss, under Section 230(e)(5)(A), Plaintiffs were required to adequately allege that Twitter "knowingly" participated in a Section 1591 venture with the Perpetrators to exempt their Section 1595 claim.  (Mot. at 12-13.)  Yet the Court incorrectly

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1    applied Section 1595's lower *mens rea* standard to determine whether Plaintiffs pleaded that

2    Twitter "participated in a venture" with the Perpetrators.  (Order at 42-44.)  Upon reconsideration,

3    the Court should apply the correct standard under Section 1591(a)(2) and conclude that Plaintiffs

4    fail to allege facts showing that Twitter was "associated in fact" with the Perpetrators and

5    committed an "overt act" that furthered the sex trafficking venture involving Plaintiffs.  (*See* Mot.

6    at 13-15; Reply at 3-6.)

7         Even were the Court not to grant reconsideration of its holding that Section 1595's "should

8    have known" standard applies here notwithstanding Section 230(e)(5)(A), reconsideration should

9    be granted of the Court's conclusion that Plaintiffs sufficiently pleaded Twitter's participation in a

10   venture with the Perpetrators under Section 1595's lower standard.  Under Section 1595, the Court

11   was required to determine whether Plaintiffs adequately alleged that Twitter "participated in a

12   venture" with the Perpetrators.  *See* 18 U.S.C. § 1595.  "[C]ourts defining participation under §

13   1595 have, 'in the absence of direct association,' required 'a showing of a ***continuous business***

14   ***relationship*** between ***the trafficker*** and the [defendant] such that it would appear that ***the trafficker***

15   and the [defendant] have established a pattern of conduct or could be said to have a tacit

16   agreement.'"  *J.B.*, 2020 WL 4901196, at *9 (citing *M.A.*, 425 F. Supp. 3d at 970); *see also* Order

17   at 36 ("District courts, including in this district, have found the statutory analysis in *M.A.* supporting

18   its interpretation of Section 1595 to be persuasive.").  It is therefore irrelevant whether Twitter had

19   a business relationship with the account-holders who allegedly posted the Videos, unless it is

20   alleged that Plaintiffs' perpetrators are those account-holders or have a business relationship with

21   them.  As outlined in Judge Selna's tentative ruling in *Reddit*, this standard requires Plaintiffs to

22   allege facts demonstrating that the defendant "made a business deal with" the Perpetrators or had a

23   "monetary relationship with [the Perpetrators]."[6]  (*See* Ex. B at 12.)

24

---

25   [6] The *Reddit* plaintiffs—like Plaintiffs here—argued that general allegations of child pornography

26   on Reddit's platform indicated Reddit's tacit agreement with sex traffickers, but Judge Selna
     disagreed that it was sufficient under Section 1595's lower *mens rea* standard to plead Reddit's

27   "participation in a venture" with the sex traffickers who exploited the plaintiffs' children.  (Ex. B
     at 12-13.)  Specifically, Judge Selna concluded that plaintiffs asserting a Section 1595 venture were

28   still required to allege facts "showing [] a ***continuous business relationship***" between the specific
     traffickers and Reddit.  (*Id*. at 12-13.)  And because "Reddit [was] not accused of having made a
     business deal with the alleged traffickers—and did not have any monetary relationship with those
     traffickers—the standard for stating a claim under § 1595 ha[d] not been satisfied."  (*Id*.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1   Twitter respectfully submits that reconsideration is appropriate here because although the

2   Court endorsed the Section 1595 venture standard articulated by *M.A.* and numerous other courts

3   (*see* Order at 42), the Court did not apply it properly to the facts at hand—as evidenced by the

4   conflicting recent application of the standard in *Reddit*, under similar facts.  (*See* Ex. B at 12-13.)

5   At oral argument, Plaintiffs' counsel admitted that Plaintiffs "***don't know who***" posted the Videos

6   on Twitter, although Plaintiffs' counsel claimed—without citing to any alleged fact in the FAC—

7   that "***subsequent traffickers***" posted them.  (Ex. C, Tr. at 31:23-32:3.)  Yet the Court still concluded

8   that Plaintiffs adequately alleged Twitter's participation in a Section 1595 "venture" with the

9   Perpetrators based on the FAC's "general allegations that Twitter enables sex trafficking on its

10  platform," as well as allegations that Twitter was "specifically alerted" to the Videos and their

11  nature on "several occasions" and yet "failed or refused" to remove them."    (Order at 43.)

12  However, none of these allegations speak to the ***specific relationship*** between Twitter and the

13  Perpetrators.  (*See* Ex. B at 12-13 (holding that general allegations that Reddit permits sex

14  trafficking content on its platform was insufficient to show a "continuous business relationship"

15  between the traffickers who trafficked plaintiffs' children and Reddit.)  The first allegation relates

16  to Twitter's conduct generally and is insufficient because it "necessarily suggests that [Twitter]

17  enters into tacit agreements with all traffickers" whose content somehow makes its way onto

18  Twitter's platform regardless of whether those traffickers even use Twitter.  *See J.B.*, 2020 WL

19  4901196, at *9 (noting that such an inference is improper when "there is no factual basis pled that

20  makes [it] plausible").  The second allegation relates to interactions between Twitter and Plaintiff

21  John Doe #1 and his mother.  By contrast, in the hotel-related Section 1595 cases, there are

22  allegations of direct and repeated business interactions between the hotel defendants and the

23  plaintiffs' specific traffickers.  *E.g.*, *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (plaintiff

24  alleged a past business relationship between her trafficker and hotel owner); *J.C. v. Choice Hotels*

25  *Int'l, Inc.*, 2020 WL 6318707, at *5 (N.D. Cal. Oct. 28, 2020) (plaintiff alleged her traffickers

26  checked her into the hotels and paid for the rooms in cash over a period of years); *B.M. v. Wyndham*

27  *Hotels & Resorts, Inc.*, 2020 WL 4368214, at *5-6 (N.D. Cal. July 30, 2020) (plaintiff alleged her

28  traffickers "rented two adjoining rooms" at the hotels over a period of years and had a "personal

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

TWITTER, INC.'S MOTION FOR
RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS

1    relationship [with] the front desk employees").

2           Moreover, in analyzing how Twitter's purported failure to immediately remove the Videos

3    contributed to the inference of tacit agreement between Twitter and the alleged traffickers, the

4    Court noted that Twitter refused to remove the Videos for "another seven days" after January 28,

5    2020, when it received Plaintiff John Doe #1's email explaining the Videos' circumstances.  (Order

6    at 43-44.)  The Court also noted at oral argument that Twitter "delayed removing [the Videos] even

7    after the Department of Homeland Security was called." (Ex.C, Tr. at 7:11-13.)  This was incorrect.

8    The referenced email was allegedly sent by Plaintiff John Doe #1 on January 28, 2020, and Twitter

9    allegedly removed Videos **two days** later on January 30, 2020, the **same day** it received the request

10   from DHS.  (FAC ¶¶ 123, 128.)

11          Simply put, the Court's acceptance of general, unsupported, allegations regarding Twitter's

12   conduct towards CSE content and its response to certain alleged complaints regarding the Videos

13   is insufficient to conclude that Twitter had a "business relationship" with the Perpetrators.  There

14   is no allegation that the Perpetrators even use Twitter, let alone that Twitter had a specific business

15   relationship with the Perpetrators.  Thus, the Order amounts to a conclusion that Twitter is

16   participating in ventures with all traffickers whose trafficking content makes its way onto Twitter.

17   Such a conclusion is contrary to CDA § 230. *See J.B.*, 2020 WL 4901196, at *9 (concluding it

18   would be improper to accept allegations that "necessarily suggest[] that [an ICS provider] enters

19   into tacit agreements with all traffickers . . . that use its website").

20   **IV.    CONCLUSION**

21          Based on the foregoing, Twitter respectfully requests the Court reconsider the Order, hold

22   that Section 230(e)(5)(A) requires Plaintiffs to adequately plead that Twitter violated Section 1591

23   to avoid CDA § 230 immunity, and dismiss the FAC in its entirety because Plaintiffs did not

24   adequately allege that Twitter violated Section 1591 or participated in a Section 1595 venture.

25

26

27

28

Cooley LLP
Attorneys at Law
San Francisco

Twitter, Inc.'s Motion for
Reconsideration
Case No. 3:21-cv-00485-JCS

1   Dated: October 4, 2021                              COOLEY LLP

2

3                                                       By: */s/ Michael G. Rhodes*
                                                            Michael G. Rhodes
4

5                                                       *Attorneys for Defendant*
                                                        *Twitter, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28