**NATIONAL CENTER ON SEXUAL EXPLOITATION**
Benjamin W. Bull*
Peter A. Gentala*
Danielle Bianculli Pinter*
Christen M. Price*
1201 F St. NW, Suite 200
Washington, DC, 20004
Telephone: (202) 393-7245
lawcenter@ncose.com

**THE HABA LAW FIRM, P.A.**
Lisa D. Haba*
Adam A. Haba*
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
lisahaba@habalaw.com
adamhaba@habalaw.com

**THE MATIASIC FIRM, P.C.**
Paul A. Matiasic (SBN 226448)
Hannah E. Mohr (SBN 294193)
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
matiasic@mjlawoffice.com

*Attorneys for Plaintiffs*
*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE #1 AND JOHN DOE #2,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. 3:21-cv-00485-JCS<br><br>**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION FOR AN ORDER PERMITTING INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b).**<br><br>Hearing Scheduled: November 19, 2021<br>Hearing Time: 9:30 a.m.<br>Judge: Honorable Joseph C. Spero |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.  THE COURT SHOULD NOT RECONSIDER ITS ORDER
    GRANTING IN PART AND DENYING IN PART TWITTER'S
    MOTION TO DISMISS ................................................................... 2

    A.  The Court's Determination that the "Should Have Known"
        Standard from 18 U.S.C. § 1595 Applies to Plaintiffs'
        Allegations is Correct and Should not be Reconsidered. ............... 3

        1.  The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit*
            decisions do not constitute a change of law. ........................... 3

        2.  The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit*
            decisions do not merit reconsideration ................................... 4

            a.  *J.B.* and *Reddit* do not refute the argument on
                limiting § 1595 claims to sex trafficking. ....................... 4

            b.  *J.B.*'s interpretation relies on a *non sequitur* about
                criminal law standards. ................................................. 6

            c.  *J.B.* and *Reddit* do not seriously consider FOSTA's
                remedial nature. ........................................................... 8

            d.  *J.B.* and *Reddit* do not present legislative history
                refuting alternative interpretations. ................................ 9

        3.  Twitter's re-argued interpretation of FOSTA/SESTA
            clashes with Congress's clear decision to use the "should
            have known" standard for civil trafficking cases................ 10

        4.  The Court's Order Adequately considered Twitter's
            arguments........................................................................... 13

    B.  The Court's Determination that the CSAM Can Constitute
        a "Commercial Sex Act" is Correct and Should Not be
        Reconsidered. ..................................................................... 14

    C.  The Court's determination that the Plaintiffs have adequately
        alleged a relationship with the traffickers who posted the CSAM

material depicting the Plaintiffs is correct and should not be reconsidered. ........................................................... 16

    D.    The Court's determination that Twitter knowingly received a commercial benefit is correct and should not be reconsidered. ........................................................... 17

II.    THE COURT SHOULD NOT GRANT THE REQUEST FOR AN INTERLOCUTORY APPEAL ................................................. 18

    A.  Controlling Question of Law ....................................... 19

    B.  Substantial Ground for Difference of Opinions......................... 21

    C.  Advancement of Termination of Litigation............................ 22

CONCLUSION .................................................................. 23

CERTIFICATE OF SERVICE ................................................. 25

## **TABLE OF AUTHORITIES**

**Cases**

*Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983) .................................................. 19

*Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982) ............................. 19

*Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427 (9th Cir. 1991).................................... 13

*City of San Diego v. Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018)............. 19

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978)........................................................... 18

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ............................................ 18, 19, 21

*Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054
(C.D. Cal. Sept. 3, 2021)................................................................................................... 3, 17

*Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 WL 5372341,
at *4 (N.D. Cal. Sept. 25, 2013)............................................................................................ 2

*Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL
1929250 (N.D. Cal. Apr. 21, 2020) ..................................................................................... 19

*Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (CA7 1972).......................................... 18

*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174 (1988) ...................................................... 12

*Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992)............ 13

*In re Cement Antitrust Litig.*(MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981) ...... 18, 19

*J.B. v. G6 Hospitality*, LLC, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021).................. passim

*Jane Doe et al. v. Reddit, Inc.*, Case No. 21-cv-768-JVS (C.D. Cal. Sep. 17, 2021) ..... passim

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019)...................... 12

*Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL 1383178 (D. Ariz.
Apr. 13, 2021) ...................................................................................................................... 23

*Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) ............... 22

*Sateriale v. RJ Reynolds Tobacco Co.,* No. 2:09-CV-08394-CAS, 2015 WL 3767424,
at *2 (C.D. Cal. June 17, 2015)............................................................................................ 20

*Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2017 WL 5973487.. 18

*Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) .................................................................................... 21

*Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949 (N.D. Cal. 2019) ................. 21

*Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-CV-04719-JST, 2017 WL 3727233 (N.D. Cal. Aug. 30, 2017)................................................................................... 2

*Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244 (M.D. Fla. 2020) ............................... 3

*Twentieth Century–Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir.1981) ........ 3

*U.S. v. Todd,* 627 F.3d 329 (9th Cir. 2009).............................................................. 16

*United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007).................................. 16

*United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, California*, No. C 13-2062 SI, 2014 WL 1350914, at *3–4 (N.D. Cal. Apr. 4, 2014) .......... 19

## **Statutes**

18 U.S.C. § 1595 ........................................................................................ passim

28 U.S.C. § 1291 ............................................................................................ 18

28 U.S.C. § 1292(b) ................................................................................... passim

47 U.S.C. § 230 ........................................................................................ passim

47 U.S.C. § 230(e)(5)(A) ............................................................................ passim

## **Other Authorities**

Black's Law Dictionary (11th ed. 2019) ................................................................. 7

U.S. Sen., Permanent Subcomm. on Investigations, Comm. on Homeland Sec. and Gov't Aff., 114th Cong., Staff Rep. on Backpage.com's Knowing Facilitation of Online Sex Trafficking (2017) ..................................................................... 5

**Rules**

Civil L.R. 7-9(b) ................................................................................................. passim

**Congressional Enactments**

Allow States and Victims to Fight Online Sex Trafficking Act of 2017 Pub. L. No.
115-164, § 4, 132 Stat. 1253 (2018) .............................................................. passim

Stop Enabling Sex Traffickers Act of 2017, S. 1693, 115th Cong. § 2 (2017) ........................ 8

Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4,
117 Stat 2875 (2003).................................................................................. 5, 7, 10

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 112,
114 Stat. 1464 (2000).................................................................................... 10

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub.
L. No. 110–457, 122 Stat. 5044 (2008) .............................................................. 11

**INTRODUCTION**

On August 19, 2021, this Court entered an Order Granting in Part and Denying in Part the Defendant's Motion to Dismiss ("Order" or "the Order"), and determined that "Plaintiffs have stated a claim for civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") on the basis of beneficiary liability and that the claim falls within the exemption to Section 230 immunity created by FOSTA." (Order at 47.) Twitter now seeks reconsideration of the Order, but its arguments fall substantially short of the required standard.

First, Twitter does not establish that a material change of law has taken place. The two recent decisions Twitter cites to are neither controlling, nor persuasive. Rather, they are examples of judges largely following the reasoning from the *Doe v. Kik* decision out of the Southern District of Florida, which this Court—after extensive analysis—disagreed with in its Order. (Order at 38-42.)

Second, Twitter's Motion for Leave to File Motion for Reconsideration ("Motion for Leave") does not establish that this Court's Order constitutes a manifest failure to consider material facts or dispositive legal arguments. This Court's 53-page order dismissed 10 of Plaintiffs' 11 claims. In no way does the Order fail to consider the arguments presented by the parties. On the contrary, it dedicates 22 pages to meticulously recounting them. After careful scrutiny of the arguments and legal issues presented, the Order refused to dismiss Count II, which alleged beneficiary liability under the TVPRA.

Third, Twitter's Motion for Leave substantially re-argues substantive law that was briefed and decided as part of the Court's consideration of the Motion to Dismiss. To the extent Twitter's arguments re-tread issues the Court has already reviewed and decided, Plaintiffs urge the Court to disregard them.

 Twitter also asks the Court to take the rare step of certifying an interlocutory appeal to the Ninth Circuit. This also lacks merit, and the Court should decline this invitation because there is not a conflict of controlling law, or a difference of opinion adequate to justify splitting this case into piecemeal appeals. Interpreting §§ 1591 and 1595, as well as 47 U.S.C. § 230(e)(5)(a) and measuring Plaintiffs' allegations against that statutory framework is well

within the Court's competence. Moreover, an interlocutory appeal will not speed the resolution of this case. In all events, it adds an extra appeal. Review by the Ninth Circuit will not close out all issues, but it will delay their ultimate resolution. In the meantime, two young men who have been severely harmed by Twitter will have their opportunity to prove their case delayed. The Court has determined that Plaintiffs sufficiently plead the allegations and should be allowed to begin discovery. Twitter's attempt to unwind that determination should be denied.

## **ARGUMENT**

### I.   THE COURT SHOULD NOT RECONSIDER ITS ORDER GRANTING IN PART AND DENYING IN PART TWITTER'S MOTION TO DISMISS

Under Civil Local Rule 7-9(b), leave to file a motion for reconsideration is only available on a specific showing of "reasonable diligence in bringing the motion" and either:

> **(2)**  The emergence of new material facts or a change of law occurring after the time of such order; or
> **(3)**  A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.[1]

Parties seeking reconsideration are prohibited from "repeat[ing] any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." LR 7-9(b)(c); *see also Stromberg v. Ocwen Loan Servicing, LLC*, No. 15-CV-04719-JST, 2017 WL 3727233, at *2 (N.D. Cal. Aug. 30, 2017) ("A motion for reconsideration is not a vehicle to re-assert arguments already considered and rejected in an earlier order."). "In general, motions for reconsideration should not be frequently made or freely granted." *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-CV-5780-LHK, 2013 WL

---

[1] Civil L.R. 7-9(b). Twitter's motion is brought pursuant to Civil L.R. 7-9(b)(2) and (b)(3)—but not under Civil L.R. 7-9(b)(1). (Pls. Mot. For Leave at 9, n. 4.)

5372341, at *4 (N.D. Cal. Sept. 25, 2013) (citing *Twentieth Century–Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir.1981)).

### A. The Court's Determination that the "Should Have Known" Standard from 18 U.S.C. § 1595 Applies to Plaintiffs' Allegations is Correct and Should not be Reconsidered.

Twitter's principle contention is that the Court's interpretation of 47 U.S.C. § 230(e)(5)(A) is incorrect, and that the 18 U.S.C. § 1595(a) "should have known" standard does not apply in cases of online or technology-based sex trafficking.

### 1. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit* decisions do not constitute a change of law.

Twitter argues that two subsequent orders by District Courts in entirely separate cases represent a change of law.[2]  In contrast to this position, Twitter also acknowledges that a third order in *Doe v. Mindgeek USA, Inc.* follows this Court's approach and substantially cites the Order.[3]  None of these decisions represent a change of law in the instant case.

First, the decisions are not changes in the controlling law of this case. There has been no development in the controlling law of this case, as the Ninth Circuit has not spoken to the issues in this case beyond what was briefed and argued in the Motion to Dismiss hearing. In the *Reddit* and *JB* decisions, other district courts applied a different interpretation to 47 § 230(e)(5)(A)—while the *Mindgeek* decision agrees with this Court's interpretation. But "another district court interpreting the law differently is not a proper basis for a motion for reconsideration." *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1249 (M.D. Fla. 2020).

---

[2] Mtn. for Leave at 2 (citing *J.B. v. G6 Hospitality*, LLC, 2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) and ) *Jane Doe et al. v. Reddit, Inc.*, Case No. 21-cv-768-JVS (C.D. Cal. Sep. 17, 2021).
[3] *See Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054 (C.D. Cal. Sept. 3, 2021).

**PLS.' OPPOSITION TO DEF.'S MOTION FOR RECONSIDERATION CASE NO. 3:21-CV-00485-JCS**

Reconsideration is only appropriate when this Court, in its discretion, determines that the basis of its decision is no longer sound.

Second, the new *J.B.* decision, which is a partial reconsideration by Judge Gilliam of his prior order, does not constitute a change in law in relation to this Court's analysis. The original *J.B.* decision, which this Court acknowledged in its Order, was not the basis of this Court's analysis and interpretation of 47 U.S.C. § 230(e)(5). (Order at 33-42.) Thus, the Court's reasoning is not in any way undermined by the revised *J.B.* order—rather *J.B.*, like the *Kik* decision, is the interpretive path that the Court has already considered and rejected.

### 2. The *J.B. v. G6 Hospitality* and *Jane Doe v. Reddit* decisions do not merit reconsideration

Not only are *J.B.* and *Reddit* procedurally nonbinding decisions, with no precedential effect on this case, but the decisions also do not substantively merit reconsideration for at least four reasons: (a) *J.B.* and *Reddit* do not refute the argument on limiting § 1595 claims to sex trafficking; (b) *J.B.*'s interpretation relies on a *non sequitur* about criminal law standards; (c) *J.B.* and Reddit do not seriously consider FOSTA's remedial nature; and (d) *J.B.* and *Reddit* do not present legislative history refuting alternative interpretations.

### a. *J.B.* and *Reddit* do not refute the argument on limiting § 1595 claims to sex trafficking.

First, the *J.B.* and *Reddit* decisions do not refute the central plain language argument advanced by the Plaintiffs and adopted by the court in this case. *J.B.* acknowledges that one reading of Section 230(e)(5)(A) is that the phrase "if the conduct underlying the claim constitutes a violation of section 1591" references § 1591 to avoid confusion about whether the provision includes labor as well as sex trafficking, since both can be the subject of § 1595 claims. *See* 2021 WL 4079207 at *9 n.3.

*J.B.* does not address or refute this reading, however, before concluding, the opinion states: "[r]eferencing solely the language itself, the Court finds the most straightforward reading to be that the provision provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." *Id.*

Twitter repeats *J.B.*'s claim that if Congress intended to clarify that, there were less confusing ways for it to have drafted the exception, Def. Mot. for Leave, Exh. A at 5-6 (citing 2021 WL 4079207 at *6). But this does not mean *J.B.*'s interpretation is correct or the most reasonable. The *J.B.* court agreed that Congress could have used the language "if the claim arises out of a violation of 1591" or "if the plaintiff is a victim of a violation of section 1591," if the exception was meant to allow plaintiffs to use §1595's *mens rea* to sue website defendants. 2021 WL 4079207 at *9-10 (internal quotation marks omitted).[4] Indeed, if Congress had intended to revert to the criminal standard for civil liability[5] for a particular subclass of defendants it was already concerned were acting with impunity,[6] Congress would have specified that when it drafted the exception.

Ultimately, *J.B.* did not argue why its interpretation was the most reasonable, and even acknowledged that the plaintiff's view of the exception was not "wholly implausible, particularly because there arguably is some tension between the [*J.B.*] Court's reading of the statute and the constructive knowledge standard set out in section 1595. But the [*J.B.*] Court

---

[4] It is not immediately apparent to Plaintiffs how this example language is clearer than the current version of 47 U.S.C. § 230(e)(5)(A).

[5] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat 2875 (2003).

[6] *See, e.g.*, U.S. Sen., Permanent Subcomm. on Investigations, Comm. on Homeland Sec. and Gov't Aff., 114th Cong., Staff Rep. on Backpage.com's Knowing Facilitation of Online Sex Trafficking (2017) available at https://www.courthousenews.com/wp-content/uploads/2017/02/Backpage-Report.pdf.

does not find that the plain language interpretation, in context, produces an absurd or unreasonable result." *Id.* at *11 (internal citations omitted).[7]

Similarly, the *Reddit* court said: "It is more logical to read the statute as requiring the conduct underlying the claim against the defendant to be the same as the claim in the civil action brought under section 1595." Case No. 21-cv-768-JVS at *12. But the court does not say why; it merely makes that assertion.

In short, neither court's interpretation of Section 230(e)(5)(A) analyzed and refuted the simplest interpretation of the provision: that the § 1591 reference merely intended to clarify that § 1589 and other non-sex trafficking claims are not covered. By contrast, the Order in this case examined this issue and this Court explained its reasoning clearly and with deliberation. Another district court's disagreement, especially in light of the above noted deficiencies in the orders, does not merit reconsideration.

> b. ***J.B.*'s interpretation relies on a *non sequitur* about criminal law standards.**

Second, *J.B.* uses a *non sequitur* to argue that the exception's provisions on criminal law warrant interpreting the civil law provision as containing a heightened, criminal standard. *J.B.* decided that since "conduct underlying the charge" is used in the FOSTA sections addressing criminal conduct under §§ 1591 and 2421A, it should also be read to require § 1591 elements be proven in civil claims involving § 1595:

> In the context of a criminal charge, the underlying conduct necessarily refers to the conduct of the criminal defendant. Notwithstanding the obvious differences between civil claims and criminal charges, it thus is consistent to construe the provisions referencing "the conduct underlying

---

[7] The court's interpretation did not merely create "some tension" between its reading and Section 1595's constructive knowledge standard; it eliminated § 1595's constructive knowledge standard altogether for plaintiffs against website defendants.

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

the" claim or charge, "constitut[ing] a violation of section 1591" to refer to the conduct of the named defendant.

2021 WL 4079207 at *10.

But a charge is not a claim: that is, this is not the same language.[8]  "Charge" is the phrase used in criminal law; "claim" is the phrase used in civil law. In the TVPRA, criminal and civil violations are defined differently.[9]  *Compare* 18 U.S.C. § 1591(a) *with* 18 U.S.C. § 1595(a). Section 230(e)(5)(B)-(C) deals with criminal charges, in the context of a statutory scheme where Congress had already originally permitted and rejected a criminal *mens rea* standard for civil claims.[10]  Furthermore, Congress did not add the civil remedy into the § 1591 text, but instead enacted an entirely separate statute under § 1595, again differentiating the standards.

In other words, the court suggested that one reason to interpret a civil claim provision as requiring plaintiffs meet a criminal law standard is that nearby criminal law provisions with

---

[8] Here are the statutory provisions:

(5)No effect on sex trafficking law
Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit—
(A) any *claim in a civil action brought under* section 1595 of title 18, if the conduct underlying the *claim constitutes* a violation of section 1591 of that title;
(B) any *charge in a criminal prosecution brought under State law* if the conduct underlying the *charge would constitute* a violation of section 1591 of title 18; or
(C) any *charge in a criminal prosecution brought under State law* if the conduct underlying the charge *would constitute* a violation of section 2421A of title 18, and promotion or facilitation of prostitution is illegal in the jurisdiction where the defendant's promotion or facilitation of prostitution was targeted.

47 U.S.C. § 230(e)(5)(A) (emphasis added).
[9] *Compare*, "The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." CLAIM, Black's Law Dictionary (11th ed. 2019), *with* "A formal accusation of an offense as a preliminary step to prosecution." CHARGE, Black's Law Dictionary (11th ed. 2019).

[10] *Compare* Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat. 2875 (2003) at Sec. 4. *with* 18 U.S.C. §1595(a).

similar language require prosecutors to meet a criminal law standard.  This is a *non sequitur*, and does not merit reconsideration.

### c. *J.B.* and Reddit do not seriously consider FOSTA's remedial nature.

Third, the *J.B.* and *Reddit* decisions do not seriously consider the remedial nature of the FOSTA exception in their analysis.  *J.B.* stated that the provision's remedial nature did not merit interpreting it consistent with the rest of the § 1595 jurisprudence, Def. Mot. for Leave, Exh. A at 12 (citing 2021 WL 4079207 at *6, 12), implying that Congress intended to still give special protections to websites credibly accused of facilitating and benefiting from sex trafficking.

*J.B.*'s argument that a narrow exception is most consistent with CDA's overall immunity purpose is misplaced, *see* 2021 WL 4079207 at *12, given that the purpose of the enactment of FOSTA was that the CDA's immunity provisions were being inappropriately deployed to shield websites engaging in and/or benefiting from sex trafficking.[11]

Similarly, *Reddit* stated that the argument "for a broad reading of § 230(e)(5) in light of the remedial nature of the law" was insufficient to overcome the statute's plain language, since "section 230 as a whole is designed to provide immunity to interactive computer service providers." *Id.* (internal citations omitted). Both decisions fail to address why it is more reasonable to interpret § 230(e)(5) to limit civil actions against "websites that facilitate traffickers in advertising the sale of unlawful sex actions" when it was designed to be a "clarification" in order to "ensure that [§ 230] does not provide" "such legal protection, to such

---

[11] Stop Enabling Sex Traffickers Act of 2017, S. 1693, 115th Cong. § 2 (2017).

websites." [12]   The *J.B.* and *Reddit* decisions' disregard for the remedial nature of FOSTA/SESTA is unpersuasive and do not merit reconsideration.

### d. *J.B.* and *Reddit* do not present legislative history refuting alternative interpretations.

The *J.B.* and *Reddit* decisions present no legislative history that refutes the plain language interpretation advanced by the Plaintiffs and adopted by the Court in this case.  *J.B.* provided little legislative history analysis; it cited various parts of the congressional record (including witness testimony from a pro-CDA law professor), and then concluded that the legislative record did not support the plaintiffs' interpretation of § 230(e)(5)(A).  Def. Mot. for Leave, Exh. A at 13 (citing 2021 WL 4079207 at *12-15).  The *Reddit* court simply cited *J.B.*'s legislative history account, asserting without discussion or analysis: "The legislative history comports with the Court's reading of the plain text."  Case No. 21-cv-768-JVS at *12.

But *J.B.*'s legislative analysis was not exhaustive, nor was it quantified, and therefore it cannot be conclusive.  More to the point, *J.B.* did not consistently clarify when its legislative history citations were referring to debate about provisions of § 2421A (criminal), § 1591 (criminal), or § 1595 (civil)—all of which were being discussed during the legislative process for FOSTA/SESTA. [13]  2021 WL 4079207 at *12-20.

Notably, *J.B.* is itself a reconsideration decision.  2021 WL 4079207 at *7.  If *J.B.*'s interpretive conclusions about 230(e)(5)(A) were as obvious as Twitter asserts, the *J.B.* court would have reached them the first time, *see J.B.*, 2020 WL 4901196, at *8-9.  In short, taken together with their noncontrolling nature, limited analysis, and interpretations already

---

[12] *Id.*
[13] *See, e.g.*, *J.B.* 2021 WL 4079207 at *12-13 (discussing Sen. Blumenthal's statement).

considered and rejected by this court, the *J.B.* and *Reddit* decisions do not merit reconsideration in this case.

### 3. Twitter's re-argued interpretation of FOSTA/SESTA clashes with Congress's clear decision to use the "should have known" standard for civil trafficking cases.

When Congress amended 47 U.S.C. § 230 in 2018, it specifically invoked 18 U.S.C. § 1595.[14] The reference in §230(e)(5)(A) to § 1595 is significant because the latter provision has its own unique constructive knowledge requirement, which Congress added as an enhancement to the civil cause of action. A brief recounting of the origin and background of § 1595's "should have known" standard is instructive.

Congress originally enacted the Trafficking Victims Protection Act (TVPA) in 2000. The original version of the TVPA added 18 U.S.C. § 1591 under the section title of "Strengthening Prosecution and Punishment of Traffickers."[15] Section 1591 was a criminal provision with no civil right of action. When the TVPA was reauthorized in 2003, Congress added 18 U.S.C. § 1595, under the subheading "Private Right of Action." The original version of § 1595 referenced specific sections of law, including § 1591, but did not include its own separate *mens rea* standard. That changed in 2008 when Congress amended § 1595 under a section heading entitled "Enhancement of Civil Action." Congress enhanced § 1595 by changing from a "knowing" to a "should have known" standard for civil actions premised on violations of 18 U.S.C. § 1591(a)(2).

---

[14] Allow States and Victims to Fight Online Sex Trafficking Act of 2017 Pub. L. No. 115-164, § 4, 132 Stat. 1253 (2018) (hereinafter "FOSTA/SESTA").

[15] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106–386, § 112, 114 Stat. 1464 (2000).

This chart shows the change:

| 18 U.S.C. § 1595(a) as originally enacted in 2003[16] | 18 U.S.C. § 1595(a) as amended in 2008[17] |
| --- | --- |
| An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. | An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. |

Since 2008, beneficiary-liability trafficking claims brought under § 1595 have been subject to the "should have known" standard rather than the *mens rea* standard in § 1591 (i.e., "knowing" or "reckless disregard of the fact"). This is the legislative foundation Congress built upon when it enacted FOSTA/ SESTA in 2018.

The official overview of the legislation makes its remedial purpose clear:

An Act To amend the Communications Act of 1934 to clarify that section 230 of such Act does not prohibit the enforcement against providers and users of interactive computer services of Federal and State criminal and civil law relating to sexual exploitation of children or sex trafficking, and for other purposes.[18]

---

[16] Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, § 4, 117 Stat. 2875 (2003).

[17] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110–457, § 221, 122 Stat. 5044 (2008).

[18] FOSTA/SESTA, note 5, *supra*.

Congress also detailed the problems it identified with Section 230 that it sought to remedy.

> It is the sense of Congress that—
> (1) section 230 of the Communications Act of 1934 (47 U.S.C. 230;
> commonly known as the "Communications Decency Act of 1996") was
> never intended to provide legal protection to websites that unlawfully
> promote and facilitate prostitution and websites that facilitate traffickers
> in advertising the sale of unlawful sex acts with sex trafficking victims;
> (2) websites that promote and facilitate prostitution have been reckless in
> allowing the sale of sex trafficking victims and have done nothing to
> prevent the trafficking of children and victims of force, fraud, and
> coercion; and
> (3) clarification of such section is warranted to ensure that such section
> does not provide such protection to such websites.[19]

The way Congress accomplished this clarification was by adding 47 U.S.C. § 230(e)(5)(A):

"Nothing in [Section 230] shall be construed to impair or limit any claim in a civil action

brought under section 1595 of title 18 . . . if the conduct underlying the claim constitutes a

violation of section 1591 of that title."

Congress's change to Section 230 in FOSTA/SESTA should be read *in pari materia* with

the section 1595's "should have known standard."[20] Indeed, if Congress wanted to abandon the

"should have known" standard for civil actions against an Interactive Computer Service ("ICS")

alleged to have benefited from a trafficking venture, it could have clearly done so by not

referencing section 1595 at all. Congress's decision to invoke both sections 1591 and 1595

demonstrates its intention that the existing legislative framework from the two statutes should

---

[19] *Id.*
[20] *See generally*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85 (1988) ("We generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *And see*, *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2019) ("It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law.'") (cleaned up).

be applied in the online context, including 1595's tailored knowledge requirement for beneficiary-liability actions.

The interpretation of Section 230(e)(5) that Twitter urged in its motion to dismiss—and now re-argues here—wrongly assumes Congress sought to disturb the statutory framework for civil sex trafficking claims. But Section 230(e)(5) should be read in harmony with 18 U.S.C. § 1595.[21] Moreover, Section 230(e)(5) should not be read to render any part of Section 1595 without meaning or superfluous.[22] In its Order, this Court was right to reject Twitter's interpretation of FOSTA/SESTA because it assumes, without support, that Congress sought to backtrack from the "should have known" standard that Congress specifically added to Section 1595 in order to enhance its effectiveness for trafficking victims. Twitter's arguments are merely repetitive of the issues argued in their original Motion to Dismiss and rejected by this Court.

### 4.  The Court's Order Adequately considered Twitter's arguments

Twitter repeatedly argues that at the Motion to Dismiss hearing the Court *sua sponte* raised questions concerning the interpretation of 47 U.S.C. § 230(e)(5)(A).[23] This is risible. Twitter raised that statutory interpretation question in its own motion and briefing. Plaintiffs responded to the argument in their opposition.[24] There was substantial discussion and argument

---

[21] *See Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir. 1992) ("To the extent that statutes can be harmonized, they should be. . . .") (cleaned up).

[22] *See Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991) (statutes should be read "as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

[23] Mtn. for Leave at 4, 5, and 10; Mtn. for Reconsid'n at 5, 7, 14.

[24] *Compare* Twitter's MTD at *with* Pls. MTD Resp. in Opp. At 16, n. 35. It is not material that Plaintiffs' response was concise, or even in a footnote. The issue was joined in response and Twitter was free to address it in its reply. Indeed, the scope of Plaintiffs' response was consistent with the discussion between the Court and the parties at the hearing.

concerning how FOSTA/SESTA should be interpreted at the Motion to Dismiss hearing. Twitters' claim that "the Court's questions about statutory construction at the oral argument were the first time these issues were raised in earnest" simply fails to square with the course of litigation. (Mtn. for Leave at 5.) The briefing, argument, and the Court's ultimate Order may not have unfolded or turned out the way Twitter preferred—but there was no manifest failure by the Court to consider Twitter's legal arguments.

Twitter cites this Court's order in the *Cave Creek Consulting Group* decision as an example where reconsideration was granted on the basis of the parties not having a chance to argue or brief an issue that was not raised by them. (Mtn. for Reconsid'n at 7.). That decision is not analogous to the instant motion for reconsideration. First, this Court's decision in *Cave Creek Consulting Group* did not turn on L.R. 7-9(b)(3). Instead, it turned on the fact that Rule 56(f) specifically speaks to the required process for grants of summary judgment on the court's own initiative. *Cave Creek Consulting Group*, 2020 WL 127612 at *5. There is not a corollary process for motions to dismiss. Second, Twitter cannot be surprised by the statutory-interpretation questions in this case. Plaintiffs' claims clearly invoke the FOSTA/SESTA exception to § 230, and as Twitter acknowledges, it raised the issue it its original motion to dismiss. (Mtn. for Leave at 4.) Under these circumstances, the Court's decision concerning the motion to dismiss is not a manifest failure to consider Twitter's legal arguments.

### B. The Court's Determination that the CSAM Can Constitute a "Commercial Sex Act" is Correct and Should Not be Reconsidered.

Twitter attempts to re-argue its position that the posting and re-posting of CSAM cannot constitute a "commercial sex act" within the meaning of § 1591. (Mtn. for leave at 10-11; Mtn. for Reconsid'n at 13-14.) The Court should again reject this argument. First, it finds no basis in

a "change of law" theory: Neither the revised *J.B.* order, the *Reddit* order, nor the *Mindgeek* order addresses the issue.[25] As discussed above, these decisions are not controlling, nor do they constitute a change of law under L.R. 7-9(b)(2) as to this issue.

Twitter's argument for reconsideration under L.R. 7-9(b)(3) also fails on its merits. Twitter asserts without authority that the definition of "commercial sex act" "does not include the posting of depictions of sex acts." (Mtn. for Leave at 10.) Congress, however, has assigned that term a very broad definition: "any sex act, on account of which anything of value is given to or received by any person."[26] Moreover, when it enacted the TVPA, Congress expressed its concern over "sexual exploitation of persons. . . involving activities related to prostitution, pornography, sex tourism, and other commercial sexual services."[27]

Twitter has not presented a single authority for its interpretation that pictures and videos of sexual abuse always fall outside the scope of "commercial sex act." Images capturing sexual abuse, like any other sex act, can be a form of trafficking – they only differ in that they can be replayed or reviewed over and over again, revictimizing the victim with each viewing. As one court has found in the context of a TVPA criminal prosecution:

> Essentially, the defendant's interpretation of the term "commercial sex act" would limit the purview of [§1591] to prostitution and exclude pornography. The court finds no support for this contention.
> ….
> The statutory language provides no basis for limiting the sex acts at issue to those in which payment was made for the acts themselves; rather, the use of the phrase "on account of which" suggests that there merely needs to be a causal relationship between the sex act and an exchange of an item of value. If Congress had intended to limit the commercial sex acts reached by the statute to prostitution, it could have easily drafted the statute

---

[25] The *J.B.* decision makes no mention of the issue, while the *Reddit* decision specifically notes that it did not reach the issue. (Pls. Mtn. for Leave, Ex. B at 13, n. 7.)
[26] 18 U.S.C. 1591(e)(3).
[27] TVPA, *supra* note 15 at sec. 102 (Congress's "Purposes and Findings") (emphasis added).

**PLS.' OPPOSITION TO DEF.'S**
**MOTION FOR RECONSIDERATION**
**CASE NO. 3:21-CV-00485-JCS**

accordingly.[28]

The Court should reject Twitter's argument—and re-argument—of this issue.[29]

### C. The Court's determination that the Plaintiffs have adequately alleged a relationship with the traffickers who posted the CSAM material depicting the Plaintiffs is correct and should not be reconsidered.

Twitter argues "there is no allegation that the traffickers were behind the user accounts who posted the Videos to Twitter or that they even use Twitter." (Mtn. for Leave at 11.) This is not a new argument, nor was this argument unavailable to Twitter during the initial briefing; rather, it is another re-argument of the issues already addressed by this Court, although not to Twitter's liking.

This argument fundamentally misunderstands the trafficking events in this case. The person or persons who originally threatened Plaintiffs at the time the CSAM was created are traffickers. (FAC ¶¶ 90-5.) Whoever posted the CSAM to Twitter also committed sex trafficking in violation of § 1591.[30] The only material issue is that once Twitter knew about the CSAM being distributed on its platform, it had a duty to act to prevent further commercial sex acts from taking place and being monetized on its platform. Moreover, as the Court correctly

---

[28] *United States v. Marcus*, 487 F. Supp. 2d 289, 306 (E.D.N.Y. 2007), *vacated on other grounds*, 538 F.3d 97 (2d Cir. 2008), *rev'd*, 560 U.S. 258, 130 S. Ct. 2159, 176 L. Ed. 2d 1012 (2010), and *aff'd in part, vacated in part, remanded*, 628 F.3d 36 (2d Cir. 2010).

[29] Twitter re-asserts its arguments concerning the *U.S. v. Todd* decision and claims that the Court has "ignore[d]" its holding. (Mtn. for Leave at 10.) But the Court, in its discretion, is not required to respond to every argument raised by the parties. It is merely required to consider them; and the Court's citation to *Todd* in its summary of the arguments of the parties in its Order sufficiently indicates that it has in fact considered Twitter's arguments concerning the case.

[30] The individuals who posted CSAM depicting Plaintiffs to the Twitter platform were traffickers. In their FAC, the Plaintiffs alleged the Twitter user names of the two user accounts that they reported to Twitter (FAC at ¶ 115 (@Straightbross and @fitmalesblog)) as well as a third user (¶ 124 screen capture of a post by "Muscle Scally Twinks"). Additionally, the CSAM was re-tweeted at least 2,223 times. (*Id.*—screen capture showing the number of retweets).

observed, Plaintiffs' § 1591(a)(2) claim is about the timing of CSAM material being posted to Twitter, not about when it was originally created. (Order at 44, n. 6.)

### D. The Court's determination that Twitter knowingly received a commercial benefit is correct and should not be reconsidered.

This issue was directly addressed in the recent *Doe v. Mindgeek USA, Incorporated* decision. The *Mindgeek* Court held that a commercial benefit is interpreted broadly as "*any sex act* on account of which anything of value is given or received by *any person*." This includes the posting of child pornography, which constitutes a sex act. *Doe v. Mindgeek USA Inc.*, No. SACV2100338CJCADSX, 2021 WL 4167054, at *7 (C.D. Cal. Sept. 3, 2021) (emphasis in original).

> Plaintiff sufficiently alleges a commercial sex act here. She alleges her ex-boyfriend posted child pornography (the sex act). She also alleges Defendants received "thing[s] of value" in return for posting child pornography. "Defendants financially benefitted from Jane Doe's trafficking in the form of increased traffic and advertising revenue." *Id.* (cleaned up).

This reasoning is entirely consistent with this Court's analysis. In its Order, this Court found that Plaintiffs alleged that Twitter monetizes content, including CSAM, that it monetized the videos depicting the exploitation of Plaintiffs. (Order at 45.) The Order also found that the exploitive videos received substantial user engagement and that "these allegations support a plausible inference that the Videos of Plaintiffs generated advertising and attracted users, both of which benefited Twitter." (*Id.*) This conclusion is consistent with the plain language of §1591 and Congress's intent to address internet platforms that knowingly benefit from sexual exploitation.

## II. THE COURT SHOULD NOT GRANT THE REQUEST FOR AN INTERLOCUTORY APPEAL

The appellate jurisdiction of the courts of appeals is limited to "final decisions of the district courts." 28 U.S.C. § 1291. "Thus, parties may appeal only from orders which "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Couch v. Telescope Inc.*, 611 F.3d 629, 632 (9th Cir. 2010) (cleaned up). Notwithstanding this "final judgment rule, Congress made a "narrow exception"—28 U.S.C. § 1292(b).

"A district court may certify an order for interlocutory review where the order involves (1) a "controlling question of law," (2) where there are "substantial grounds for difference of opinion," and (3) an immediate appeal may "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Ninth Circuit "has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases...." *In re Cement Antitrust Litig.*(MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981) (cleaned up). Cases should only be certified where "allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id*. at 1026. The Party seeking an interlocutory appeal "has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (citing *Fisons, Ltd. v. United States,* 458 F.2d 1241, 1248 (CA7 1972)). "In seeking interlocutory appeal, a movant therefore has a heavy burden to show that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608-JCS, 2017 WL 5973487, at *2 (N.D. Cal. May 5, 2017) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

"Certification under § 1292(b) requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010). The purpose of allowing such appeals is to resolve a legal issue that would end the litigation at hand as well as "other actions in the district." *United States v. Real Prop. & Improvements Located at 2441 Mission St., San Francisco, California,* No. C 13-2062 SI, 2014 WL 1350914, at *3–4 (N.D. Cal. Apr. 4, 2014). Because the requirements of § 1292(b) are jurisdictional, even where a District Court finds the standards have been met, the Ninth Circuit is required to undertake its own determination whether the standards have been met. *Couch,* 611 F.3d at 633.

### A.  Controlling Question of Law

"The precedent in this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases, and that the "controlling question of law" requirement be interpreted in such a way to implement this policy." *In re Cement Antitrust Litig. (MDL No. 296),* 673 F.2d 1020, 1027 (9th Cir. 1981), *cause dismissed sub nom. Arizona v. U.S. Dist. Ct. for the Dist. of Arizona*, 459 U.S. 961 (1982), and *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983). In order for a legal question to be controlling, there must be a showing that the "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.*

"Courts in the Ninth Circuit have determined that mixed questions of fact and law are not appropriate for interlocutory appeal under § 1292(b)." *City of San Diego v. Monsanto Co.*, 310 F. Supp. 3d 1057, 1065 (S.D. Cal. 2018). "A "mixed question of law and fact or the application of law to a particular set of facts" by itself is not appropriate for permissive interlocutory review." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2020 WL 1929250,

at *3 (N.D. Cal. Apr. 21, 2020). "The antithesis of a proper § 1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts." *Sateriale v. RJ Reynolds Tobacco Co.,* No. 2:09-CV-08394-CAS, 2015 WL 3767424, at *2 (C.D. Cal. June 17, 2015) (cleaned up).

In its Order, this Court determined that Plaintiffs' claim for beneficiary liability under §§ 1595 and 1591(a)(2) "is not subject to the more stringent requirements that appy to criminal violations of the provision." (Order at 42.) If, however, this determination was overturned on appeal it would not necessarily be dispositive of Plaintiffs' entire case. After this Court ruled that § 1595's "should have known" standard applied, it analyzed the allegations in the FAC against that standard. The Court's order did not reach or address the question of whether Plaintiffs' allegations meet the regular "knowing" or "reckless disregard" standards § 1591(a)(2). Plaintiffs have sufficiently pled these facts in the FAC.[31]

Indeed, the allegations in the FAC meet the actual knowledge standard. Twitter was provided proof of CSAM depicting John Doe #1 and John Doe #2 on its platform. It was told that both boys were 13 years old at the time the CSAM was created, and it was also provided with proof that John Doe #1 was still a child at the time he submitted the report. (FAC §§ 111-14.) With this knowledge, Twitter wrote to John Doe #1 telling him that it had "reviewed the content, and didn't find a violation of our policies." It also told him that "no action will be taken at this time." (FAC § 120.) Twitter's decision not to take the CSAM down ensured its continued distribution and monetization on its platform. These allegations are sufficient to state a plausible

---

[31] (Pls. FAC at ¶¶ 144-150 (Count II); ¶¶ 101-132 (alleging actual knowledge of Plaintiffs' trafficking as indicated by correspondence with Twitter, and including a prior report to Twitter of CSAM distribution by one of the traffickers submitted by a third party).)

claim for relief under § 1591's "knowing" or "reckless disregard" standards. Thus, even if an interlocutory appeal resulted in reversal on the knowledge standard, the alleged facts must still be applied to that legal standard. It also means that an interlocutory appeal sought by Twitter would not necessarily materially affect the outcome of the case.

### B.  Substantial Ground for Difference of Opinions

"Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Couch* at 633. In this case, no circuit courts have ruled on the issue at hand, and no questions have arisen under foreign law.  Applying the law differently does not necessarily create substantial grounds for interlocutory review. *Id*. Furthermore, "a "dearth of cases" does not give rise to a substantial ground for difference of opinion." *Id*. at 634. "[J]ust because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Id.* (footnotes omitted). *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010); *see also Stiner v. Brookdale Senior Living, Inc.*, 383 F. Supp. 3d 949, 958 (N.D. Cal. 2019) (Counsel's "argument that the Court misapplied the existing law to the facts alleged … is insufficient to show a "substantial ground for difference of opinion."). *Spears v. Washington Mut. Bank FA*, No. C-08-00868 RMW, 2010 WL 54755, at *2 (N.D. Cal. Jan. 8, 2010) ("The mere fact that the Ninth Circuit has not yet ruled on this issue is insufficient to establish a substantial ground for difference of opinion.").

Interpreting and applying federal statutes is the role of the district courts. In its Order, this Court interpreted 47 U.S.C. § 230(3)(5) to permit civil actions against online platforms according to § 1595's "should have known" standard. As such, Twitter has not and cannot meet its burden.

### C. Advancement of Termination of Litigation

The Court has determined that Plaintiffs have met their burden to plausibly allege a violation of § 1591(a)(2). Twitter now seeks to forestall discovery on that claim with this motion. Twitter's desire to delay and avoid discovery is different from an interlocutory appeal that would advance the termination of litigation. "Where the Court concludes certification would actually delay the resolution of the litigation, certification is not appropriate." *Rieve v. Coventry Health Care, Inc.*, 870 F. Supp. 2d 856, 880 (C.D. Cal. 2012) (citation omitted).

This Court should reject Twitter's attempts to delay the progress of this litigation. First, the Ninth Circuit would likely agree with this Court, in which case the litigation would have been delayed, not advanced. Second, certification would not advance the conclusion of this litigation because, as Twitter acknowledges: "[i]f the Ninth Circuit finds that the CDA § 230 immunity carve-out in Section 230(e)(5)(A) requires a showing that the ICS provider's conduct constitutes a violation of Section 1591, the court must still address whether Plaintiffs established 'participation in a venture' under the more stringent Section 1591 standard." (Mtn. for Leave at 16, n. 19.) Either way, adding an interlocutory appeal will likely have the effect of prolonging the resolution of this case, by placing all case progress on hold while the parties await action by the Ninth Circuit. As one district judge recently concluded:

> According to the most recently published statistics, the median disposition of a civil case in the Ninth Circuit Court of Appeals is 15.3 months.[*] Even

assuming a shorter duration for interlocutory appeals, the Court can say
with near certainty that an interlocutory appeal in this case would delay,
rather than advance, the termination of this litigation.

*Reilly v. Wozniak*, No. CV-18-03775-PHX-MTL, 2021 WL 1383178, at *2 (D. Ariz. Apr. 13,
2021). The path Twitter requests elongates this litigation by interposing an extra appeal
followed by additional litigation. The Court should reject the request.

<u>**CONCLUSION**</u>

For all these reasons, Plaintiffs request that the Court deny to the Motion for Leave to
File a Motion for Reconsideration and deny the Motion for an Order Permitting an Interlocutory
Appeal.

Respectfully submitted this 18th day of October, 2021.

By:      /s/ *Paul A. Matiasic*
Paul A. Matiasic
Hannah E. Mohr
**THE MATIASIC FIRM, P.C.**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
*matiasic@mjlawoffice.com*

Lisa D. Haba*
Adam A. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Dr., Suite 207
Longwood, FL 32779
Telephone: (844) 422-2529
*lisahaba@habalaw.com*
*adamhaba@habalaw.com*

Benjamin W. Bull*
Peter A. Gentala*
Dani Bianculli Pinter*
Christen M. Price*
**NATIONAL CENTER ON SEXUAL**

**EXPLOITATION**
1201 F St, NW, Suite 200
Washington, DC 20004
Telephone: (202) 393-7245
*lawcenter@ncose.com*

***Attorneys for Plaintiffs***

*\*Admitted Pro Hac Vice*

**PLS.' OPPOSITION TO DEF.'S
MOTION FOR RECONSIDERATION
CASE NO. 3:21-CV-00485-JCS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email address denoted on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of October, 2021.

       /s/ *Hannah E. Mohr*
Paul A. Matiasic
Hannah E. Mohr
**THE MATIASIC FIRM, P.C.**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 675-1089
*matiasic@mjlawoffice.com*
*mohr@mjlawoffice.com*